# Exhibit E

**(Immediately Follows This Page)**

# BUILDING LOAN NOTE

Up to $35,500,000.00                                                          Dated: As of January 23, 2019
                                                                                            New York, New York

**BUILDING LOAN NOTE** (hereinafter, the "**Note**") made as of the 23rd day of January, 2019, by **4452 BROADWAY MAZAL LLC**, a Delaware limited liability company, having an address at c/o HAP Investments LLC, 3 East 54th Street, 15th Floor, New York, New York 10022 (the "**Maker**"), for the benefit of **4452 BROADWAY 1 LLC**, a Delaware limited liability company, its successors and/or assigns, as their interests may appear (hereinafter, the "**Payee**"), having offices at 825 Third Avenue, 37th Floor, New York, New York 10022.

**FOR VALUE RECEIVED**, Maker promises to pay to the order of Payee, at 825 Third Avenue, 37th Floor, New York, New York 10022, or at such other place as Payee may designate to Maker in writing from time to time, the principal sum of up to THIRTY FIVE MILLION FIVE HUNDRED THOUSAND and 00/100 DOLLARS ($35,500,000.00), or so much as advanced pursuant to the terms of that certain Building Loan Agreement dated the date hereof made between Maker and Payee (the "**Building Loan Agreement**") together with interest thereon at the Interest Rate (or the Default Rate if applicable), calculated in the manner hereinafter set forth from and including

        A.    Interest only at the Interest Rate on the Principal Balance shall be due monthly and shall be paid monthly in arrears, commencing on March 1, 2019, and monthly thereafter on the first (1st) day of each month (the "**Payment Date**") until the Maturity Date (each such monthly payment, a "**Monthly Payment**").

        B.    Thereafter, on the Maturity Date, the entire outstanding principal balance of this Note, together with all accrued and unpaid interest through the Maturity Date at the Interest Rate, and all other sums payable to the holder of this Note (whether pursuant to this Note, the Mortgage or Other Security Documents (as hereinafter defined)) shall become due and payable.

1.    For the purposes of this Note, these terms shall be defined as follows:

        a.    The term "**Alternative Rate**" shall mean, in the event LIBOR is no longer available or charging of interest that is calculated based upon LIBOR would violate applicable law or regulation, then in Payee's sole discretion, the Alternative Rate shall be used instead of the Libor Based Rate, which shall mean either the Prime Based Rate (as hereinafter defined) or the ARRC Based Rate, as hereinafter defined (in Payee's sole discretion as to whether Prime Based Rate or the ARRC Based Rate shall be used).

        b.    The term "**ARRC Based Rate**" shall mean the sum of (i) Seven and 00/100 Percent (7.00%) per annum plus (ii) the ARRC Rate (as hereinafter defined); *provided, however,* that in the event (A) the Initial Required Contractor Buyout (as defined in that certain Building Loan Agreement dated as of the date hereof by and between

        Maker and Payee (the "**BLA**")) has not occurred on or prior to the Initial Construction Deadline Date (as defined in the BLA) or (B) the Borrower Equity Requirement (as defined in the BLA) has not been deposited with Lender as and when required pursuant to Section 2.5(a) of the BLA, the ARRC Based Rate shall mean the sum of (i) Eight and 00/100 Percent (8.00%) per annum plus (ii) the ARRC Rate.

c.    The term "**ARRC Rate**" shall mean such replacement of LIBOR as may be approved by the Alternative Reference Rates Committee (ARRC) (or comparable organization) and approved and/or published by the Federal Reserve; <u>provided, however</u>, in no event shall the ARRC Rate be less than 2.51900%).

d.    The term "**Business Day**" shall mean a weekday, Monday through Friday, except a legal holiday or a day on which banking institutions in New York, New York are authorized by law to be closed.

e.    The term "**Debt**" shall mean all principal, interest and other sums of any nature whatsoever, which may or shall become due to Payee in accordance with the provisions of this Note, the Mortgage or Other Security Documents.

f.    The term "**Initial Maturity Date**" as used in this Note shall mean July 23, 2021.

g.    The term "**Interest Period**" shall mean, initially, the period commencing on (and including) the Closing Date and ending on (and including) the last day of the calendar month in which the Closing Date occurs. Thereafter, each Interest Period shall commence on (and include) the first day of each calendar month immediately following the last day of the previous Interest Period and end on (and include) the last day of such calendar month.

h.    The term "**Interest Rate**" as used in this Note shall mean interest at the annual rate equal to the greater of Seven and 00/100 Percent (7.00%) per annum plus LIBOR (collectively, the "**Initial LIBOR Based Rate**") (or the Alternative Rate, as applicable), and (iii) Nine Percent (9.00%) per annum (the "**Initial Fixed Base Rate**"); <u>provided, however,</u> that in the event (A) the Initial Required Contractor Buyout or any of the other terms and conditions set forth in Section 2.2 and Section 2.3 of the BLA (including, without limitation, Section 2.3(j)) have not occurred or been satisfied on or prior to the Initial Construction Deadline Date or (B) the Borrower Equity Requirement has not been deposited with Lender as and when required pursuant to Section 2.5(a) of the BLA, the term "**Interest Rate**" as used in this Note shall mean interest at the annual rate equal to the greater of Eight and 00/100 Percent (8.00%) per annum plus LIBOR (collectively, the "**Revised LIBOR Based Rate**", and together with the Initial LIBOR Based Rate, the "**LIBOR Based Rate**") (or the Alternative Rate, as applicable), and (iii) Ten and 00/100 Percent (10.00%) per annum (the "**Revised Fixed Base Rate**", and together with the Initial Fixed Base Rate, the "**Fixed Base Rate**"), in each case adjusted for each Interest Period based upon the greater of the LIBOR Based Rate (or the Alternative Rate, as applicable) and the Fixed Base Rate at 11:00 a.m. (E.S.T.) two

(2) Business Days prior to the Reset Date (as defined below) applicable to such Interest Period (or the date hereof with respect to the first Interest Period hereunder), which Interest Rate shall be applicable from the date of this Note to the Maturity Date, except as otherwise expressly provided herein

i. The term **"Initial Term"** as used in this Note shall mean the date hereof through and including the Initial Maturity Date.

j. The term **"LIBOR"** shall mean the London Interbank Offered Rate (as defined below) for U.S. dollar deposits being delivered in the London interbank eurodollar market of one (1) month maturity (One Month LIBOR) as reported in the Money Rates Section of the Wall Street Journal (or such other commercially available source providing quotations of such London Interbank Offered Rate as may be designated by Payee from time to time) as of 11:00 a.m., E.S.T., on a Business Day (or if not so reported, then as determined by Payee from another recognized source of interbank quotation), rounded up to the nearest one-eighth of one percent (1/8%). A certificate made by an officer of Payee stating the LIBOR in effect on any given day, for the purposes hereof, shall be conclusive evidence of the LIBOR in effect on such day. The LIBOR is a base reference rate of interest adopted by Payee as a general benchmark from which Payee determines the floating interest rates chargeable on various loans to borrowers with varying degrees of creditworthiness, and Maker acknowledges and agrees that Payee has made no representations whatsoever that the LIBOR is the interest rate actually offered by Payee to borrowers of any particular creditworthiness.

k. The term **"Loan Documents"** shall mean this Note, the Mortgage and all and any of the documents now or hereafter executed by Maker and/or others and by or in favor of Payee, which evidences, secures or guarantees all or any portion of the payments due under this Note or otherwise is executed and/or delivered in connection with this Note, the Mortgage, guarantees and agreements.

l. The term **"London Interbank Offered Rate"** shall mean the London interbank offered rate administered by ICE Benchmark Administration Limited (or any other Person which takes over the administration of such rate).

m. The term **"Maturity Date"** as used in this Note shall mean the earlier of (i) the Initial Maturity Date, (ii) an Extended Term Maturity Date (as hereinafter defined), or (iii) such sooner date, by acceleration or otherwise, as may be applicable pursuant to the terms hereof, at which time the entire Debt shall become due and payable.

n. The term **"Mortgage"** shall mean that certain Building Mortgage and Security Agreement dated the date hereof in the principal amount of up to $35,500,000.00, encumbering the premises located at 4452 Broadway, New York, New York 10040 (the **"Property"**).

o.  The term **"Other Security Documents"** shall mean any of the documents other than this Note or the Mortgage, now or hereafter executed by the Maker or others, and by or in favor of Payee, which wholly or partially secure or guarantee payment of this Note, or which otherwise pertain to the loan evidenced by this Note (the **"Loan"**). The term **"Person"** shall mean an individual, a corporation, a partnership, a limited liability company, an association, a trust or any other entity or organization, including a government or political subdivision or an agency or instrumentality thereof.

p.  The term **"Prime Based Rate"** shall mean the sum of (i) 4.019% per annum plus (ii) the Prime Rate (as hereinafter defined).

q.  The term **"Prime Rate"** shall mean the annual rate of interest which is the highest prime lending rate of interest most recently in effect (as published in the Money Rates Section in The Wall Street Journal or if The Wall Street Journal fails to publish such rate, such other publication as Payee shall designate in its sole discretion). A certificate made by an officer of Payee stating the Prime Rate in effect on any given day, for the purposes hereof, shall be conclusive evidence of the Prime Rate in effect on such day. The Prime Rate is a base reference rate of interest adopted by Payee as a general benchmark from which Payee determines the floating interest rates chargeable on various loans to borrowers with varying degrees of creditworthiness and Maker acknowledges and agrees that Payee has made no representations whatsoever that the Prime Rate is the interest rate actually offered by Payee to borrowers of any particular creditworthiness. In the event that the concept of the Prime Rate shall no longer exist, then the Prime Rate shall be deemed to be the Prime Rate as last reported in The Wall Street Journal.

r.  The term **"Principal Balance"** shall mean the outstanding principal balance of this Note from time to time.

s.  The term **"Reset Date"** shall mean the first day of each Interest Period.

2.  Any capitalized terms used herein but not defined shall have the meanings ascribed to them in the Mortgage or Other Security Documents.

3.  Interest shall be computed on the basis of a year of 360 days and actual days elapsed.

4.  The failure to make any payment required under this Note or the occurrence of any Event of Default (as such term is defined in the Mortgage or the Other Security Documents) shall constitute an Event of Default under this Note. Notwithstanding anything herein to the contrary, provided Payee is not otherwise in default of its obligations under the Loan Documents, and provided no Event of Default has occurred and is continuing under the Loan Documents, Payee's failure to apply available Prepaid Interest, as defined in that certain Prepaid Interest Agreement between Maker and Payee and dated the date hereof, to pay the Monthly Payments hereunder shall not constitute an Event of Default under this Note.

5.  Upon the occurrence and during the continuance of an Event of Default: (a) interest shall

accrue hereunder at the Default Rate (as defined hereunder) prior to and subsequent to the entry of a Judgment of Foreclosure and Sale, (b) Payee may, at its option, without any written notice given to the Maker (such notice being expressly waived), DECLARE AND DEMAND this Note and the Debt immediately due and payable and (c) Payee may pursue all rights and remedies available hereunder or under Mortgage and the Other Security Documents. Payee's rights, remedies and powers, as provided in this Note, the Mortgage or the Other Security Documents are cumulative and concurrent, and may be pursued singly, successively or together against Maker, any Guarantor of the indebtedness evidenced hereby or against any collateral granted or pledged by Maker under any of the Loan Documents or any other collateral security given at any time to secure the payment hereof, all at the sole discretion of Payee. Additionally, Payee may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained herein, all in Payee's sole discretion. Failure of Payee, for any period of time or on more than one occasion, to DECLARE AND DEMAND this Note and the Debt immediately due and payable shall not constitute a waiver of the right to exercise the same at any time from and after any Event of Default.

6. A payment shall not be deemed to have been made on any day unless such payment has been received by Payee, at the required place of payment, in U.S. dollars by no later than 1:00 p.m. (New York time) on such day. Whenever any payment to Payee hereunder would otherwise be due (except by reason of acceleration) on a day that is not a Business Day, such payment shall instead be due on the next succeeding Business Day. If any installment of principal, interest or other sums due hereunder or under the Mortgage or any Other Security Document are not paid on the date on which same are due (other than the final payment due on the Maturity Date), the Maker shall pay to the Payee a late charge of ten percent (10.00%) of such unpaid installment as a late payment charge, such late charge to be immediately due and payable without demand by the Payee. Notwithstanding anything to the contrary, the late charge shall not apply to the portion of the Debt due on the Maturity Date. Notwithstanding anything to the contrary, all payments due under this Note, the Mortgage and the Loan Documents shall be made by means of wire transfer to the order of Payee, as directed by Payee, and Payee shall have the absolute right to reject any payment not made by wire transfer. In addition, Maker shall pay to Payee the sum of $2,500.00 for any payment which is returned for any reason by Maker's bank unpaid.

7. Subject to Payee's due diligence review and completion of a credit check, satisfactory to Payee at its sole discretion, and provided that: (i) this Note, the Mortgage and the Other Security Documents are in full force and effect and there exists no Event of Default (as such capitalized term is defined in the Mortgage) at the time of the giving of Maker's notice to extend, (ii) Maker has made all Monthly Payments in accordance with the terms and conditions hereof and (iii) Maker establishes with and funds to Payee an interest reserve (or, if one is established simultaneously herewith, then replenishes such interest reserve on or prior to the commencement of the Extended Term and every three (3) months thereafter during the Extended Term (as defined herein)) for the payment of all interest to become due at the applicable Interest Rate during such successive three (3) months period, as calculated by Payee, including, without limitation, execution of all documentation reasonably required by Payee to establish such interest reserve, if applicable, then Maker shall have the option, upon providing written notice to Payee (in the manner provided in the Mortgage) to extend the Initial Term for two (2) additional periods of six (6) months (each, an "**Extended Term**", with the applicable extended maturity date being known as the "**First Extended Term Maturity Date**" and the "**Second Extended Term Maturity Date**", if and as

applicable, with each being referred to as an "**Extended Term Maturity Date**"). Maker's notice of its intention to extend the Initial Term shall not be effective unless such notice is delivered along with payment in an amount equal to One Percent (1.0%) of the sum of (a) the outstanding Principal Balance of the Loan and (b) all remaining unfunded Loan proceeds. Maker's notice must be received by Payee no earlier than ninety (90) days prior to the Initial Maturity Date (or the First Extended Term Maturity Date, if and as applicable) and no later than thirty (30) days prior to the Initial Maturity Date (or the First Extended Term Maturity Date, if and as applicable), *time being of the essence with respect thereto*, provided, however, that Maker shall have the right to revoke its notice to extend the Initial Maturity Date by delivery of a written revocation notice no later than five (5) business days prior to the Initial Maturity Date. Any extension of the term as set forth herein shall be on the same terms and conditions of this Note, the Mortgage and the Other Security Documents, except as otherwise provided in this Note, the Mortgage and the Other Security Documents. Notwithstanding anything herein to the contrary, the term of this Note may not be extended unless, simultaneously with such extension, the term of the Other Loan and the Other Note (as such terms are hereinafter defined) are also extended in accordance with terms thereof.

8. Subject to the following provisions, provided that, simultaneously with any prepayment of the Debt, Maker shall pay to Payee a prepayment premium in an amount equal to ten (10) Monthly Payments (based upon the entire principal sum of $35,500,000.00), which would have been due and payable to Payee absent prepayment of the obligations hereunder (with the Interest Rate used to calculate the Initial Term Prepayment Premium being that on the date of the Initial Term Prepayment Notice, if the Interest Rate is variable hereunder), less any Monthly Payments of interest actually paid in full by Maker and received by Payee, such that Payee shall have received not less than ten (10) full Monthly Payments hereunder (based upon the entire principal sum of $35,500,000.00) (the "**Initial Term Prepayment Premium**"), then Maker shall have the right to prepay the Principal Balance in whole only, along with interest, additional interest, and any other sums due under this Note, the Mortgage or the Other Security Documents upon prior irrevocable written notice sent by Maker (a "**Initial Term Prepayment Notice**"), setting forth the intended prepayment date ("**Initial Term Prepayment Date**"), which Initial Term Prepayment Notice must be received by Payee not more than sixty (60) days prior to the Initial Term Prepayment Date and not less than thirty (30) days prior to the Initial Term Prepayment Date and on the Initial Term Prepayment Date, Maker shall make prepayment as herein above provided, failure of which to timely prepay shall result in a $500.00 prepayment cancellation fee to compensate Payee for expenses associated with Maker's failure to comply with its request and is not a penalty. Notwithstanding anything to the contrary contained herein, unless prepayment is tendered on the first day of a calendar month and unless Maker has tendered the Monthly Payment for the month in which the prepayment of the Debt occurs, Maker shall along with the prepayment of the Debt pay the entire Monthly Payment due for the month in which the Initial Term Prepayment Date occurs (which amount shall constitute additional consideration for the prepayment). Notwithstanding anything to the contrary contained herein, if Maker elects to exercise its option to extend the term of this Note in accordance herewith, simultaneously with any prepayment of the Debt during the Extended Term, Maker shall pay to Payee a prepayment premium in an amount equal to three (3) Monthly Payments (based upon the entire principal sum of $35,500,000.00) which would have been due and payable to Payee during and on account of the Extended Term absent prepayment of the obligations hereunder (with the Interest Rate used to calculate the Extended Term Prepayment Premium being that on the date of the Extended Term Prepayment Notice, if the Interest Rate is variable hereunder), less any Monthly Payments of interest actually

paid in full by Maker and received by Payee during and on account of the Extended Term, such that Payee shall have received not less than three (3) full Monthly Payments hereunder (based upon the entire principal sum of $35,500,000.00) during and on account of the Extended Term (the "**Extended Term Prepayment Premium**" and together with the Initial Term Prepayment Premium, hereinafter referred to, collectively, as the "**Prepayment Premium**"), then Maker shall have the right to prepay the Principal Balance in whole only, along with interest, additional interest, and any other sums due under this Note, the Mortgage or the Other Security Documents upon prior irrevocable written notice sent by Maker (a "**Extended Term Prepayment Notice**" and together with the Initial Term Prepayment Notice, hereinafter referred to, collectively, as the "**Prepayment Notice**"), setting forth the intended prepayment date ("**Extended Term Prepayment Date**" and together with the Initial Term Prepayment Date, hereinafter referred to, collectively, as the "**Prepayment Date**"), which Extended Term Prepayment Notice must be received by Payee not more than sixty (60) days prior to the Extended Term Prepayment Date and not less than thirty (30) days prior to the Extended Term Prepayment Date and on the Extended Term Prepayment Date, Maker shall make prepayment as herein above provided, failure of which to timely prepay shall result in a $500.00 prepayment cancellation fee to compensate Payee for expenses associated with Maker's failure to comply with its request and is not a penalty. Notwithstanding anything to the contrary set forth herein, in the event the Subsequent Required Contractor Buyout (as defined in the BLA) is not satisfied on or prior to the Subsequent Construction Deadline Date or any other conditions to funding Advances under the Building Loan are not satisfied as of the Subsequent Construction Deadline Date, then the prepayment premium described above shall instead be in an amount equal to eighteen (18) Monthly Payments (based upon the entire principal sum of $35,500,000.00).

**SUCH PREPAYMENT PREMIUM SHALL BE PAID WHETHER THE PREPAYMENT IS VOLUNTARY OR INVOLUNTARY, INCLUDING ANY PREPAYMENT AFFECTED BY THE ACCELERATION PROVISIONS CONTAINED IN THE NOTE OR THE LOAN DOCUMENTS. IF FOR ANY REASON PAYEE HAS NOT RECEIVED THE PREPAYMENT PREMIUM ON THE DATE THE DEBT IS PAID IN FULL (DUE TO THIS NOTE BEING PAID ON THE MATURITY DATE, OR THEREAFTER, SUBJECT TO EXTENSION IN ACCORDANCE HEREWITH), THE AMOUNT OF THE PREPAYMENT PREMIUM, WHICH SHALL BE CALCULATED AS OF THE DAY PRIOR TO THE MATURITY DATE, SHALL INSTEAD BE DUE AND OWING AS AN EXIT FEE (AND SHALL BE DUE IN ADDITION TO THE PREPAYMENT PREMIUM REFERRED TO ABOVE), AND EARNED ON THE APPLICABLE MATURITY DATE (REGARDLESS IF EXTENDED IN ACCORDANCE HEREWITH). UPON ACCELERATION, THE PREPAYMENT PREMIUM SHALL BE CALCULATED BASED UPON THE AMOUNT OF THE PREPAYMENT DUE ON THE DATE OF SUCH ACCELERATION. PROVIDED, HOWEVER, IF SUCH PREPAYMENT PREMIUM CONSTITUTES INTEREST UNDER APPLICABLE LAW, THE AMOUNT OF SUCH PREPAYMENT PREMIUM WILL BE REDUCED TO AN AMOUNT WHICH, WHEN ADDED TO ALL OTHER AMOUNTS WHICH CONSTITUTE INTEREST UNDER APPLICABLE LAW, WILL NOT EXCEED THE MAXIMUM AMOUNT OF INTEREST WHICH MAY BE CONTRACTED FOR, CHARGED OR RECEIVED WITH RESPECT TO THE LOAN EVIDENCED HEREBY UNDER APPLICABLE LAW FOR THE ACTUAL PERIOD TIME OF SUCH LOAN IS OUTSTANDING. NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, PAYEE'S APPLICATION OF CASUALTY**

**OR CONDEMNATION PROCEEDS IN ACCORDANCE WITH THE MORTGAGE SHALL NOT BE SUBJECT TO THE PREPAYMENT PREMIUM.**

9. On the date hereof, Borrower acknowledges and agrees that Lender has earned an origination fee on the amount of $710,000.00 (the "**Building Deferred Origination Fee**", and together with the Project Deferred Origination Fee (as defined in the Project Loan Note), the "**Deferred Origination Fee**"). Notwithstanding anything to the contrary, Lender hereby agrees to defer Borrower's payment of the Building Deferred Origination Fee until the Initial Construction Deadline Date (as defined in the Building Loan Agreement). For the avoidance of doubt, it is hereby acknowledged and agreed that the Building Deferred Origination Fee has been earned as of the date hereof, but shall not be due and payable until the Initial Construction Deadline Date (unless paid beforehand by Borrower). Failure by Borrower to pay the Building Deferred Origination Fee to Lender on or prior to the Initial Construction Deadline Date shall be an Event of Default Under the Loan Documents.

10. Notwithstanding anything to the contrary contained herein, the Principal Balance of this Note may not be prepaid by Maker unless, simultaneously with such prepayment, the following is also prepaid in full: (a) that certain loan originated as of the date of this Note (the "**Land Loan**") in the principal amount of up to $10,000,000.00 from Payee to Maker as evidenced by that certain Building Loan Note dated as of the date of this Note (the "**Land Loan Note**") in the principal amount of up to $10,000,000.00 executed by Maker in favor of Payee and as secured, *inter alia*, by that certain Amended and Restated Mortgage and Security Agreement executed by Maker in favor of Payee in the principal amount of up to $10,000,000.00 and encumbering the Property, as well as all guarantees, pledges, and other documents executed in connection therewith and (b) that certain project loan originated as of the date of this Note (the "**Project Loan**") in the principal amount of up to $3,000,000.00 from Payee to Maker as evidenced by that certain Project Loan Note dated as of the date of this Note (the "**Project Loan Note**") in the principal amount of up to $3,000,000.00 executed by Maker in favor of Payee, and as secured by that certain Project Mortgage and Security Agreement executed by Maker in favor of Payee in the principal amount of up to $3,000,000.00 and encumbering the Property, as well as all guarantees, pledges, and other documents executed in connection therewith, and (c) that certain mezzanine loan originated as of the date of this Note (the "**Mezzanine Loan**", and together with the Land Loan and the Project Loan, individually and collectively, as the case may be, the "**Other Loan**") in the principal amount of $4,000,000.00 from **4452 BROADWAY 2 LLC**, a Delaware limited liability company ("**Mezzanine Loan Lender**") to Maker's sole member **4452 BROADWAY MAZAL SENIOR MEZZANINE LLC**, a Delaware limited liability company (the "**Mezzanine Loan Borrower**"), as evidenced by that certain Mezzanine Promissory Note dated as of the date of this Note (the "**Mezzanine Note**", and together with the Land Loan Note and the Project Loan Note, individually and collectively, as the case may be, the "**Note**") in the principal amount of $4,000,000.00 executed by Mezzanine Loan Borrower in favor of Mezzanine Loan Lender, and as evidenced by that certain Mezzanine Loan Agreement executed between Mezzanine Loan Borrower and Mezzanine Loan Lender in the principal amount of $4,000,000.00, and as secured by that certain Ownership Interests Pledge and Security Agreement affecting the Mezzanine Loan Borrower's limited liability company interests in Maker, as well as all guarantees, pledges, and other documents executed in connection therewith.

11. Separate and in addition to all other payment obligations of Maker contained herein, Maker

shall be required to pay a yearly servicing fee equal to ten (10) basis points per annum on the maximum Principal Balance of this Note payable in monthly installments (the "**Servicing Fee**"). The Servicing Fee shall be increased to twenty-five (25) basis points during the continuance of an Event of Default. The Maker acknowledges and agrees that a Servicing Fee shall be due on the date hereof (which shall prepay the first yearly Servicing Fee), and the obligation to pay the Servicing Fee shall be secured by the Mortgage.

12. Maker acknowledges that this Note and Maker's obligations under this Note are and shall at all times continue to be absolute and unconditional in all respects. This Note, the Mortgage and the Other Security Documents set forth the entire agreement and understanding of Payee and Maker.

13. Maker agrees to pay all third-party out-of-pocket costs and expenses of collection actually incurred by Payee, in addition to principal and interest (including, without limitation, reasonable attorneys' fees and disbursements), and including all third-party out-of-pocket costs and expenses actually incurred in connection with the pursuit by Payee of any of its rights or remedies hereunder or under the Mortgage and/or the Other Security Documents or the protection of or realization of collateral or in connection with any of Payee's collection efforts, whether or not any action or proceeding on this Note, on the Mortgage and/or the Other Security Documents or any foreclosure proceeding is filed, all such third-party out-of-pocket costs and expenses being payable on demand, together with interest at the Default Rate thereon and being secured by the Mortgage and the Other Security Documents.

14. The indebtedness herein evidenced by this Note is secured by the Mortgage and the Other Security Documents.

15. THIS NOTE HAS BEEN EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK AND THIS NOTE, THE MORTGAGE AND EACH OF THE OTHER SECURITY DOCUMENTS SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW).

16. Maker does hereby agree that upon the occurrence and during the continuance of an Event of Default (as such capitalized term is defined in the Mortgage), or upon the failure of Maker to pay the Debt in full on the Maturity Date, (x) Payee shall be entitled to receive and Maker shall pay interest on the entire Debt at the rate of twenty-four percent (24%) per annum or at the maximum rate of interest which Maker may by law pay, whichever is lower (the "**Default Rate**"), to be computed from the occurrence of the Event of Default until the actual receipt and collection of the Debt, including all periods prior to or subsequent to the entry of a Judgment of Foreclosure and Sale and (y) the Servicing Fee shall be increased to twenty-five (25) basis points per annum. These charges shall be added to the Debt, and shall be deemed secured by the Mortgage. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Payee by reason of the occurrence and continuance of any Event of Default.

17. This Note is subject to the express condition that at no time shall Maker be obligated or required to pay interest on the Principal Balance at a rate which could subject Payee to either civil or criminal liability as a result of being in excess of the maximum rate which Maker is permitted by law to contract or agree to pay. For the purposes of calculating the actual amount of interest paid and or payable, in respect of laws pertaining to usury or such other laws, all sums paid or agreed to be paid to Payee for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, allocated and spread from the date of disbursement of the proceeds thereof until payment in full of the Loan obligations, so that the actual rate of interest on account thereof is uniform throughout the term hereof. If, by the terms of this Note, Maker is at any time required or obligated to pay interest on the Principal Balance at a rate in excess of such maximum rate, the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate, and interest payable hereunder shall be computed at such maximum rate and the portion of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the Principal Balance.

18. In the event LIBOR is no longer available or charging of interest that is calculated based upon LIBOR would violate applicable law or regulation, then in Payee's sole discretion, the Alternative Rate shall replace the LIBOR Based Rate, which Alternative Rate shall mean either the Prime Based Rate or the ARRC Based Rate, (in Payee's sole discretion as to whether the Prime Based Rate or the ARRC Based Rate shall be used).

19. No delay on the part of Payee in exercising any right or remedy under this Note, the Mortgage or the Other Security Documents or failure to exercise the same shall operate as a waiver in whole or in part of any such right or remedy. No notice to or demand on Maker shall be deemed to be a waiver of the obligation of Maker or of the right of Payee to take further action without further notice or demand as provided in this Note, the Mortgage and the Other Security Documents.

20. Each of Payee's rights and remedies under this Note shall be in addition to all of its other rights and remedies under the Mortgage, Other Security Documents and applicable law.

21. Without limiting any grace, notice and/or cure period set forth in any of the Loan Documents, **TIME IS OF THE ESSENCE** with regard to Maker's performance of all the terms, covenants and conditions of this Note.

22. Any provision of this Note, the Mortgage or the Other Security Documents that is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof or affecting the validity or enforceability of such provision.

23. All of the provisions of this Note shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

24. Maker hereby warrants, represents and covenants that no funds disbursed hereunder shall be used for personal family or household purposes.

25. Maker (and the undersigned representative of Maker, if any) represents that Maker has full power, authority and legal right to execute and deliver this Note and that the Debt hereunder

constitutes a valid and binding obligation of Maker.

26.     All notices to be given under this Note shall be given in the same manner as provided in the Mortgage.

27.     This Note, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Maker or Payee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

28.     Without limiting any other provisions of the Mortgage or the Loan Documents, Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby waives valuation, appraisement, presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, lack of diligence, delays in collection or enforcement of this Note, notice of the intention to accelerate, the benefit of all applicable law affording any right or redemption or cure and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note, except as expressly provided herein or in the Mortgage or any of the Other Security Documents, and in connection with any suit, action or proceeding brought by Payee on this Note, any and every right it may have to (a) a trial by jury, (b) interpose any counterclaim therein (other than a counterclaim which can only be asserted in a suit, action or proceeding brought by Payee on this Note and cannot be maintained in a separate action), and (c) have the same consolidated with any other or separate suit, action or proceeding, and agrees that their respective liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Payee. Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby consents to every extension of time, renewal, waiver or modification that may be granted by Payee with respect to the payment or other provisions of this Note, and to the release of any makers, endorsers, guarantors or sureties, and their heirs, legal representatives, successors and assigns, and of any collateral given to secure the payment hereof, or any part hereof, with or without substitution, and agrees that additional makers, endorsers, guarantors or sureties and their heirs, legal representatives, successors and assigns, may become parties hereto without notice to Maker or to any endorser, guarantor or surety and without affecting the liability of any of them.

29.     FOR ANY CLAIM, ACTION, OR DISPUTE ARISING UNDER, OR TO INTERPRET OR APPLY, THIS NOTE OR ANY OTHER SECURITY DOCUMENT, OR TO RESOLVE ANY DISPUTE ARISING UNDER THE FOREGOING OR THE RELATIONSHIP BETWEEN THE PARTIES, EACH OF MAKER AND PAYEE IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK CITY, NEW YORK, AND APPELLATE COURTS FROM ANY OF SUCH COURTS. EACH OF MAKER AND PAYEE IRREVOCABLY WAIVES ANY OBJECTION THAT IT MAY HAVE AT ANY TIME TO VENUE OF ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, INCLUDING ANY CLAIM THAT ANY SUCH SUIT, ACTION, OR PROCEEDING SO BROUGHT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THE MORTGAGE OR OTHER SECURITY DOCUMENTS SHALL BE DEEMED TO PRECLUDE PAYEE FROM BRINGING ANY SUIT, ACTION, OR PROCEEDING RELATING TO ANY OTHER SECURITY DOCUMENT OR THE DEBT IN ANY OTHER JURISDICTION WHERE PAYEE COULD OTHERWISE PROPERLY BRING SUCH SUIT, ACTION, OR PROCEEDING. To the extent applicable, in an action commenced in the Commercial Division, New York State Supreme Court, the parties hereby agree, subject to the requirements for a case to be heard in the Commercial Division, to apply the Court's accelerated adjudication procedures set forth in Rule 9 of the Rules

of Practice for the Commercial Division, in connection with any dispute, claim or controversy arising out of or relating to this Note or any of the Loan Documents, or the breach, termination, enforcement or validity thereof.

30.    The parties intend that each of the Makers (if more than one) shall be fully liable, jointly and severally, for all of the Debt.  Nonetheless, in case a court finds that any Maker is not such a primary obligor with respect to all or any part of such obligations, the Makers expressly waive the benefit of any and all defenses and discharges available to a guarantor, surety, endorser or accommodation party dependent on an obligor's character as such.  Without limiting the generality of the foregoing, the liability of the Makers hereunder shall not be affected or impaired in any way by any of the following acts or things (which the Payee is hereby expressly authorized to do, omit or suffer from time to time without notice to or consent of anyone): (a) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all indebtedness arising under this Note, the Mortgage or the Other Security Documents; (b) any extension or renewal of any such indebtedness (whether or not for longer than the original period) or any modification of the interest rate, maturity or other terms of any such indebtedness; (c) any waiver or indulgence granted to either Maker, and any delay or lack of diligence in the enforcement of the indebtedness arising under this Note, the Mortgage or the Other Security Documents; (d) any full or partial release of, compromise or settlement with, or agreement not to sue, either Maker or any guarantor or other person liable on any such indebtedness; (e) any release, surrender, cancellation or other discharge of any indebtedness arising under this Note, the Mortgage or the Other Security Documents, or the acceptance of any instrument in renewal or substitution for any instrument evidencing any such indebtedness; (f) any failure to obtain collateral security (including rights of setoff) for any indebtedness arising under this Note, the Mortgage or the Other Security Documents, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to preserve, protect, insure, care for, exercise or enforce any collateral security for any such indebtedness; (g) any modification, alteration, substitution, exchange, surrender, cancellation, termination, release or other change, impairment, limitation, loss or discharge of any collateral security for any such indebtedness; (h) any assignment, sale, pledge or other transfer of any of the indebtedness arising under this Note, the Mortgage or the Other Security Documents; or (i) any manner, order or method of application of any payments or credits on any indebtedness arising under this Note, the Mortgage or the Other Security Documents.  Each Maker also hereby waives any right of contribution, subrogation, indemnification or other right arising as a result of any payment made toward the Debt of the other Maker.

31.    Each of the Makers (if more than one) hereby waives, for the benefit of the Payee: (a) any right the Payee, as a condition of payment or performance by either Maker, to (i) proceed against the other Maker or any other person or entity, (ii) proceed against or exhaust any collateral for the Debt held from the other Maker or any other person or entity, (iii) proceed against or have resort to any balance of any deposit account, securities account, or credit on the books of the Payee in favor of the other Maker or any other person or entity, or (iv) pursue any other remedy in the power of the Payee whatsoever; (b) any defense rising by reason of the incapacity, lack of authority or any disability or other defense of the other Maker, including any defense based on or arising out of the lack of validity or the unenforceability of the Debt or any agreement or instrument relating thereto or by reason of the cessation of the liability of the other Maker from any cause other than payment in full of the Debt; (c) any defense based upon any statute or rule of law which provides  that the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; (d) any defense based upon the Payee's errors or omissions in the administration of the Debt; (e) (i) any principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms hereof and any legal or equitable discharge of its obligations hereunder, (ii) the benefit of any statute of limitations affecting its liability hereunder or the enforcement hereof, (iii) any rights to set-offs, recoupments and counterclaims, and (iv) promptness, diligence and any requirement that the Payee protect, secure, perfect or insure any security interest or lien or any property subject thereto; (f) notices, demands, presentments,

protests, notices of protest, notices of dishonor and notices of any action or inaction, including acceptance hereof, notices of default thereunder or under this Note, the Mortgage or the Other Security Documents, any agreement or instrument related thereto, notices of any renewal, extension or modification of the Debt or any agreement related thereto, notices of any extension of credit to the other Maker and notices of any matters referred to in any guaranty securing this Note and any right to consent to any thereof; and (g) any defenses or benefits that may be derived from or afforded by law which limit the liability of or exonerate sureties, or which may conflict with the terms hereof.

[SIGNATURE PAGE TO FOLLOW]

**IN WITNESS WHEREOF**, Maker has duly executed this Note the day and year first above written.

          **4452 BROADWAY MAZAL LLC,**
          a Delaware limited liability company

By: _____
Name: Kfir Ribak
Title: Authorized Signatory

STATE OF NEW YORK    )
                                ) ss.:
COUNTY OF NEW YORK  )

On the 18th day of January, in the year 2019, before me, the undersigned, a Notary Public in and for said State, personally appeared KFIR RIBAK, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

ANDREW FISCHTHAL
Notary Public, State of New York
No. 01FI6340401
Qualified in New York County
Commission Expires April 18, 2020