# Exhibit H

**(Immediately Follows This Page)**

No. 27/19

## AUTHENTICATION OF SIGNATURE

I the undersigned, **Talia Itzhaki**
Notary at Tel- Aviv, 108 Allenby Rd.

hereby certify that on **27.01.2019**
appeared before me

**Mr. Nir Amsel**
whose identity was proved to me by

Issued at Tel Aviv Yafo on **12.02.2015**

And

**Mr. Amir Hasid**
whose identity was proved to me by

Issued at Tel Aviv Yafo **on 10.07.2018**

and signed of their own free will the attached
document marked **"A"**.

In witness whereof I hereby authenticate the

signature of the said signee,

by my own signature and seal,

Today **27.01.2019**

including VAT **426 Nis** paid

**Notary's Seal**

מספר **27/19**

## <u>אימות חתימה</u>

אני החי"מ, טליה יצחקי
נוטריון בתל-אביב, רחוב אלנבי 108

מאשרת כי ביום **27.01.2019**
ניצבו לפני

**מר ניר אמזל**
שזהותו הוכחה לי על פי

שניתן מאת סמכות ממונה דרכונים בת"א מרכז
ביום **12.02.2015**

ו-

**מר אמיר חסיד**
שזהותו הוכחה לי על פי

שניתן מאת סמכות ממונה דרכונים בנתב"ג
ביום **10.07.2018**

וחתמו מרצונם החופשי על המסמך המצ"ב
ומסומן באות **"א"**.

ולראיה הנני מאמתת את חתימתם של הנ"ל

בחתימת ידי ובחותמי

היום **27.01.2019**

שכר בסך **426 ש"ח** כולל מע"מ שולם

חתימה






## CONDITIONAL GUARANTY

**THIS CONDITIONAL GUARANTY** (this "**Guaranty**"), made as of the 23rd day of January, 2019, by **AMIR HASID**, an individual residing at 26 Vitkin Street, Tel Aviv, Israel, and **NIR AMSEL**, an individual residing at Rupin 31, Tel Aviv, Israel (jointly and severally, hereinafter referred to, collectively and individually, as the "**Guarantor**"), in favor of **4452 BROADWAY 1 LLC**, a Delaware limited liability company, its successor and/or assigns, as their interests may appear, having offices at 825 Third Avenue, 37th Floor, New York, New York 10022 ("**Lender**").

### W I T N E S S E T H :

A.      WHEREAS, **4452 BROADWAY MAZAL LLC**, a Delaware limited liability company (the "**Borrower**"), has obtained a building loan in the principal amount of up to $35,500,000.00 (the "**Loan**") from Lender;

B.      WHEREAS, the Loan is evidenced by that certain Building Loan Note dated as of the date hereof (the "**Note**"), executed by Borrower and payable to the order of Lender in the stated principal amount of up to $35,500,000.00, and secured by that certain Building Mortgage and Security Agreement dated as of the date hereof, by and among Borrower and Lender (the "**Mortgage**"), encumbering certain real property situated in 4452 Broadway, New York, New York 10040, as more particularly described on Exhibit A attached hereto and incorporated herein by this reference, together with the buildings, structures and other improvements now or hereafter located thereon (said real property, buildings, structures and other improvements being hereinafter collectively referred to as the "**Property**"), and by other documents and instruments;

C.      WHEREAS, for purposes herein, the Note, the Mortgage, the Loan Agreement, this Guaranty and such other documents and instruments related to the Loan, as the same may be from time to time amended, consolidated, renewed or replaced, being collectively referred to herein as the "**Loan Documents**";

D.      WHEREAS, initially capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Mortgage; and

E.      WHEREAS, Guarantor is an owner, either directly or indirectly, of a beneficial interest in Borrower, the extension of the Loan to Borrower is of substantial benefit to Guarantor, and, therefore, Guarantor desires to enter into this Guaranty in favor of Lender.

NOW, THEREFORE, to induce Lender to extend the Loan to Borrower, and in consideration of the foregoing premises and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, Guarantor hereby covenants and agrees for the benefit of Lender, as follows:

1.      Indemnity and Guarantee.  Guarantor hereby assumes liability as a primary obligor for, hereby unconditionally guarantees payment to Lender of, hereby agrees to pay, protect, defend and save Lender harmless from and against, and hereby indemnifies Lender from and against any and all liabilities, obligations, actual losses, actual damages (including punitive damages and those



resulting from the diminution in value of the Property), out-of-pocket costs and expenses (including, without limitation, reasonable attorneys' fees), causes of action, suits, claims, demands and judgments of any nature or description whatsoever (collectively, "**Costs**") which may at any time be imposed upon, actually incurred by or awarded against Lender as a result of:

      (a)    fraud or misrepresentation or failure to disclose a material fact by Borrower or any Guarantor in connection with the Loan, including without limitation, the origination of the Loan and the performance of Borrower's obligations under the Loan Documents;

      (b)    the gross negligence or willful misconduct of Borrower;

      (c)    waste committed on the Property, or damage to the Property as a result of the misconduct or gross negligence of Borrower or any of its principals, officers, general partners or members, any guarantor, any indemnitor, or any agent or employee of any such persons;

      (d)    the breach of any representation, warranty, covenant or indemnification provision in the Mortgage or any of the Loan Documents concerning environmental laws, hazardous substances or asbestos;

      (e)    the removal or disposal of any portion of the Property in violation of the terms of the Loan Documents, to the full extent of the losses or damages actually incurred by Lender on account of such occurrence;

      (f)    the misapplication, misappropriation or conversion by Borrower of (i) any insurance proceeds paid by reason of any loss, damage or destruction to the Property, (ii) any awards or other amounts received in connection with the condemnation of all or a portion of the Property, (iii) Rents (as defined in the Mortgage) received by Borrower or applicable to a period after the occurrence and during the continuance of an Event of Default, which are not either applied to the ordinary and necessary expenses of owning and operating the Property or paid to Lender, or (iv) any Rents paid more than one month in advance (other than security deposits);

      (g)    if the Property becomes subject to any mechanic's, materialman's liens or other lien other than a lien for local real estate taxes and assessments not then due and payable and such lien shall remain undischarged of record (by payment, bonding or otherwise) within thirty (30) days;

      (h)    all tenant security deposits or other refundable deposits paid to or held by Borrower or any other person or entity in connection with the Leases (as defined in the Mortgage) which are not applied in accordance with the terms of the applicable Leases;

      (i)    the failure to obtain, maintain and fully pay for the Policies (as defined in the Mortgage) in accordance with <u>Section 4</u> of the Mortgage, unless such amounts are available in the Escrow Fund (as defined therein) being paid by Lender pursuant to Section 6 of the Mortgage, and no other Event of Default has occurred and is continuing, or to pay or provide or cause to be provided the amount of any insurance deductible, to the extent of the applicable deductible, following a casualty event or other insured event;

2



(j)    the failure by Borrower to pay any accrued interest when due pursuant to the terms of the Note and Loan Documents, whether at the normal rate of interest or at the Default Rate of interest under the Note and Loan Documents, unless such amounts are available pursuant to the Prepaid Interest Agreement between Borrower and Lender and dated the date hereof (the "**Prepaid Interest Agreement**"), and such failure is due to Lender's failure to apply such available Prepaid Interest (as defined in the Prepaid Interest Agreement) in accordance with the Prepaid Interest Agreement, and no other Event of Default has occurred and is continuing;

(k)    all obligations and indemnities of Borrower under the Loan Documents relating to hazardous or toxic substances or radon or compliance with environmental laws and regulations, to the full extent of any actual losses or actual damages actually incurred by Lender as a result of the existence of such hazardous or toxic substances or radon or failure to comply with environmental laws or regulations;

(l)    Unauthorized transfer of or other encumbrance on the Property in violation of the Loan Documents; and

(m)    the failure to obtain Lender's prior written consent: (x) to any alteration, modification, or change to an existing Lease or (y) prior to entering into a new Lease, or any other breach or default of Section 8 of the Mortgage.

Notwithstanding anything to the contrary in the Note, the Mortgage or any of the Loan Documents, (A) Lender shall not be deemed to have waived any right which Lender may have under Section 506(a), 506(b), 1111(b) or any other provisions of the U.S. Bankruptcy Code to file a claim for the full amount of the Debt (as defined below) or to require that all collateral shall continue to secure all of the Debt owing to Lender in accordance with the Note, the Mortgage and the Loan Documents, and (B) the Guarantor shall liable for the full amount of the Debt in the event that: (i)Reserved; (ii) Borrower fails to obtain Lender's prior written consent to any subordinate financing or other voluntary lien (except as set forth in Section 1(g) hereof) encumbering the Property; (iii) Borrower fails to obtain Lender's prior written consent to any assignment, transfer, or conveyance of the Property or any interest therein as required by the Mortgage, or any breach or default by Borrower of Section 10 of the Mortgage, or (iv) a receiver, liquidator or trustee of Borrower or of any Guarantor shall be appointed or if Borrower or any Guarantor shall be adjudicated bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by, consented to, or acquiesced in by, Borrower or any Guarantor (or if Borrower or any Guarantor colludes in same) or if any proceeding for the dissolution or liquidation of Borrower or of any Guarantor shall be instituted by Borrower or any Guarantor, or (v) Borrower or any Guarantor (or any person comprising such Guarantor) or any Related Party (as hereinafter defined) of any of the foregoing shall, in connection with any enforcement action or exercise or assertion of any right or remedy by or on behalf of Lender under or in connection with the Note, the Mortgage or any of the Loan Documents, asserts a defense, seeks judicial intervention or injunctive or other equitable relief of any kind or asserts in a pleading filed in connection with a judicial proceeding any defense against Lender or any right in connection with any security for the loan which the court in such action or proceeding determines is without merit (in respect of a defense) or unwarranted (in respect of a request for judicial intervention or injunctive or other equitable relief), (vi) a claim is made by any party that the Loan Documents were not properly

3



authorized or otherwise consented to upon the origination of the Loan or at any other time; and/or (vii) Borrower fails to maintain its status as a single asset entity, as required by, and in accordance with the terms and provisions of, the Mortgage (which is the cause of creating a substantive consolidation of Borrower with another person). "**Related Party**" shall mean any person or entity which owns a direct or indirect interest in Borrower or any Guarantor (or any person comprising such Guarantor), or which is owned or controlled by or under common ownership or control with Borrower or any such Guarantor.

The term "**Debt**" as used in this Guaranty shall mean the principal sum evidenced by the Note and secured by the Mortgage, or so much thereof as may be outstanding from time to time, together with interest thereon at the rate of interest specified in the Note and all other sums other than principal or interest which may or shall become due and payable pursuant to the provisions of the Note, the Mortgage or the other Loan Documents.

The Guarantor also agrees to pay any and all out-of-pocket costs and expenses including, without limitation, all reasonable fees and disbursements of counsel) which may be paid or actually incurred by Lender in connection with the enforcement of this Guaranty. The foregoing shall not in any manner impair or release the Debt evidenced by the Note or the other Loan Documents or otherwise impair or derogate from the Lender's ability to enforce its rights under the Loan Documents.

The term "**Guaranteed Recourse Obligations of Borrower**" means all obligations and liabilities of Guarantor set forth in this Paragraph 1 for which Borrower shall be personally liable pursuant to the Note.

2.    Guarantee Absolute.  The Guarantor guarantees that, to the extent of the Guaranteed Recourse Obligations of Borrower, the Debt (as such term is defined in the Mortgage) will be paid strictly in accordance with the terms of the Note or any requirement of law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Lender with respect thereto.  The liability of the Guarantor hereunder shall be absolute and unconditional irrespective of:

(a)    any lack of validity or enforceability of the Note, the Mortgage the other Loan Documents or any other agreement between Lender and the Borrower relating thereto;

(b)    any change in the time, manner, place of payment of the indebtedness under, or in any other term of, or any other amendment or waiver of, or any consent to, departure from, or any agreement between the Borrower and Lender, including, without limitation, the Note, the Mortgage or the other Loan Documents;

(c)    the insolvency of, or voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization or other similar proceedings affecting, the Borrower or any of its assets; or

(d)    any other circumstance which might otherwise constitute a defense available to, or a discharge of, the Borrower in respect of the Debt or of the Guarantor in respect of this Guaranty.

4



No payment made by the Guarantor, any other guarantor or any other person or entity, or received or collected by the Lender from the Guarantor, any other guarantor or any other person or entity by virtue of any action or proceeding or set off or application at any time in reduction of or in payment of the Debt shall be deemed to modify, release or otherwise affect the liability of Guarantor under this Guaranty. Notwithstanding any such payments received or collected by the Lender in connection with the Debt, Guarantor shall remain liable for the balance of the Guaranteed Recourse Obligations of the Borrower until the Debt is paid in full. This Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment of the Debt or any portion thereof is rescinded or must otherwise be returned by the Lender upon the insolvency, bankruptcy or reorganization of the Borrower or otherwise, all as though such payment had not been made.

Lender shall not be required to inquire into the powers of the Borrower or any of its partners, managers or other agents acting or purporting to act on its behalf, and monies, advances, renewals or credits described in Section 1 hereof in fact borrowed or obtained from Lender in professed exercise of such powers shall be deemed to form part of the debts and liabilities hereby guaranteed, notwithstanding that such borrowing or obtaining of monies, advances, renewals, or credits shall be in excess of the powers of the Borrower, or of its members, managers or other agents aforesaid, or be in any way irregular, defective or informal.

3.    Dealing with the Borrower and Others.

(a)    The Guaranteed Recourse Obligations of Borrower shall not be released, discharged, limited or in any way affected by anything done, suffered or permitted by Lender in connection with any monies or credit advanced by Lender to the Borrower or any security therefor, including any loss of or in respect of any security received by Lender from the Borrower or others. It is agreed that Lender, without releasing, discharging, limiting or otherwise affecting in whole or in part the Guaranteed Recourse Obligations of Borrower and liabilities hereunder, may, without limiting the generality of the foregoing:

i.    grant time, renewals, extensions, indulgences, releases and discharges to the Borrower and any other person or entity guaranteeing payment of or otherwise liable with respect to the Debt (each such person and entity, an "**Obligor**");

ii.    take or abstain from taking security or collateral from the Borrower or any Obligor or from perfecting security or collateral of the Borrower or any Obligor;

iii.    accept compromises from the Borrower or any Obligor;

iv.    apply all monies at any time received from the Borrower or any Obligor on such part of the obligations as Lender may see fit; or

v.    otherwise deal with the Borrower or any Obligor as Lender may see fit.

5



(b)    Lender shall not be bound or obliged to exhaust recourse against the Borrower or any other Obligor or any security, guarantee, indemnity, mortgage or collateral it may hold or take any other action (other than make demand pursuant to this Guaranty) before being entitled to payment from the Guarantor hereunder; and

(c)    Any account settled by or between Lender and the Borrower shall be accepted by the Guarantor as conclusive evidence that the balance or amount thereby appearing due to Lender is so due.

4.    **Reinstatement of Obligations**. If at any time all or any part of any payment made by Guarantor or received by Lender from Guarantor under or with respect to this Guaranty is or must be rescinded or returned for any reason whatsoever (including, but not limited to, the insolvency, bankruptcy or reorganization of Borrower or Guarantor), then the obligations of Guarantor hereunder shall, to the extent of the payment rescinded or returned, be deemed to have continued in existence, notwithstanding such previous payment made by Guarantor, or receipt of payment by Lender, and the obligations of Guarantor hereunder shall continue to be effective or be reinstated, as the case may be, as to such payment, all as though such previous payment by Guarantor had never been made, but only as of the date such payment was returned.

5.    **Waivers by Guarantor**. To the extent permitted by law, Guarantor hereby waives and agrees not to assert or take advantage of (as a defense or otherwise):

(a)    Any right to require Lender to proceed against Borrower or any other Person or to proceed against or exhaust any security held by Lender at any time or to pursue any other remedy in Lender's power or under any other agreement before proceeding against Guarantor hereunder;

(b)    The defense of the statute of limitations in any action hereunder;

(c)    Any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other person or persons or the failure of Lender to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other Person or persons;

(d)    Any failure on the part of Lender to ascertain the extent or nature of any property (whether real or personal), rights, estates and interests now or at any time hereafter securing the payment of the Note and/or the other obligations of Borrower under the Loan Documents whether held by Lender or by any person or entity on Lender's behalf or for Lender's account (the "**Collateral**") or any insurance or other rights with respect thereto, or the liability of any party liable for the Loan Documents or the obligations evidenced or secured thereby;

(e)    Demand, presentment for payment, notice of nonpayment, protest, notice of protest and all other notices of any kind, or the lack of any thereof, including, without limiting the generality of the foregoing, notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of Borrower, Lender, any endorser or creditor of Borrower or of any Guarantor or on the part of any other person

6



...omsoever under this or any other instrument in connection with any obligation or evidence of ...debtedness held by Lender;

      (f)     Any defense based upon an election of remedies by Lender;

      (g)     Any right or claim of right to cause a marshalling of the assets of Guarantor;

      (h)     Any principle or provision of law, statutory or otherwise, which is or might ...in conflict with the terms and provisions of this Guaranty;

      (i)     Any duty on the part of Lender to disclose to Guarantor any facts Lender ...y now or hereafter know about Borrower or the Property, regardless of whether Lender has ...ason to believe that any such facts materially increase the risk beyond that which Guarantor ...ends to assume or has reason to believe that such facts are unknown to Guarantor or has a ...asonable opportunity to communicate such facts to Guarantor, it being understood and agreed ...at Guarantor is fully responsible for being and keeping informed of the financial condition of ...orrower, of the condition of the Property and of any and all circumstances bearing on the risk ...at liability may be incurred by Guarantor hereunder;

      (j)     Any lack of notice of disposition or of manner of disposition of any ...ollateral;

      (k)     Failure to properly record any document or any other lack of due diligence ... Lender in creating or perfecting a security interest in or collection, protection or realization ...on any Collateral or in obtaining reimbursement or performance from any person or entity now ... hereafter liable for the Loan Documents or any obligation secured thereby;

      (l)     The inaccuracy of any representation or other provision contained in any ...an Document;

      (m)     Any sale or assignment of the Loan Documents, or any interest therein;

      (n)     Any sale or assignment by Borrower of any Collateral, or any portion ...ereof or interest therein, whether or not consented to by Lender;

      (o)     Any invalidity, irregularity or unenforceability, in whole or in part, of any ...e or more of the Loan Documents;

      (p)     Any lack of commercial reasonableness in dealing with any Collateral;

      (q)     Any deficiencies in any Collateral or any deficiency in the ability of Lender ... collect or to obtain performance from any persons or entities now or hereafter liable for the ...yment and performance of any obligation hereby guaranteed;

      (r)     An assertion or claim that the automatic stay provided by 11 U.S.C. § 362 ...rising upon the voluntary or involuntary bankruptcy proceeding of Borrower) or any other stay ...ovided under any other debtor relief law (whether statutory, common law, case law or otherwise) ... any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable,



all operate or be interpreted to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any of its rights, whether now or hereafter acquired, which Lender may have against Guarantor or any Collateral;

(s)    Any modifications of the Loan Documents or any obligation of Borrower relating to each Loan by operation of law or by action of any court, whether pursuant to the Bankruptcy Reform Act of 1978, as amended, or any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, or otherwise;

(t)    Any change in the composition of Borrower, including, without limitation, the withdrawal or removal of Guarantor from any current or future position of ownership, management or control of Borrower;

(u)    The release of Borrower or of any other person or entity from performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Loan Documents by operation of law, Lender's voluntary act or otherwise; and

(v)    Any action, occurrence, event or matter consented to by Guarantor under Section 10(h) hereof, under any other provision hereof, or otherwise.

6.    **Additional Waivers.**

(a)    In addition to all the other waivers agreed to and made by Guarantor as set forth in this Guaranty, Guarantor hereby waives all rights and defenses that Guarantor may have because Borrower's debt is secured by real property. This means, among other things:

i.    Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower.

ii.    If Lender forecloses on any real property collateral pledged by Borrower:

1)    The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, except as provided in Section 1371 of the New York Real Property Actions and Proceedings Law; and

2)    Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower.

(b)    This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's debt is secured by real property. Guarantor further hereby waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed

8



ligation, has destroyed Guarantor's rights of subrogation and reimbursement against the ncipal.

(c)   Without limiting the generality of any of the waivers contained in this aranty, Guarantor also waives i. any defense based upon Lender's election to waive its lien as ll or any security for the Loan pursuant to any applicable law, and ii. any and all benefits which ght otherwise be available to Guarantor.

(d)   Without limiting the generality of any of the waivers contained in this aranty, Guarantor also waives any defense based upon any statute or rule of law which provides t the obligation of a surety must be neither larger in amount nor in any other respects more rdensome than that of a principal. In this regard, Guarantor acknowledges that Lender's recourse inst Borrower for any of the obligations guaranteed hereby may be restricted impaired or hibited by reason of Lender's election of remedies or other protections afforded debtors under w York law and agrees that no such restriction, impairment or prohibition shall have any effect Guarantor's obligations to pay and perform the obligations guaranteed hereby under this aranty.

7.   **Suretyship Waivers**. Guarantor understands and acknowledges that if Lender closes judicially or nonjudicially against any real property security for the Note, that closure could impair or destroy any ability that Guarantor may have to seek reimbursement, tribution or indemnification from Borrower or others based on any right Guarantor may have ubrogation, reimbursement, contribution or indemnification for any amounts paid by Guarantor er this Guaranty. Guarantor further understands and acknowledges that in the absence of this vision, the potential impairment or destruction of Guarantor's rights, if any, may entitle rantor to assert a defense to this Guaranty. By executing this Guaranty, Guarantor freely, vocably and unconditionally: (i) waives and relinquishes that defense, and agrees that rantor will be fully liable under this Guaranty, even though Lender may foreclose judicially or judicially against any real property security for the Note; (ii) agree that Guarantor will not rt that defense in any action or proceeding that Lender may commence to enforce this ranty; (iii) acknowledge and agree that the rights and defenses waived by Guarantor under this ranty include any right or defense that Guarantor may have or be entitled to assert; and (iv) owledges and agrees that Lender is relying on this waiver in making the Loan, and that this er is a material part of the consideration that Lender is receiving for making the Loan.

8.   **Remedies**. A separate action may be brought to enforce the provisions hereof, h shall in no way be deemed to be an action on the Note, whether or not any Loan has been id and whether or not Lender would be entitled to a deficiency judgment following a judicial closure, trustee's sale or sale under the applicable Uniform Commercial Code.

9.   **Representations and Warranties.** The Guarantor hereby represents and ants to Lender that:

(a)   the Guarantor is not insolvent (as such term is defined in the debtor/creditor of the State of New York);

9



(b)    the execution, delivery and performance of this Guaranty will not (i) make
Grantor insolvent (as such term is defined in the debtor/creditor laws of the State of New York),
(ii) violate any provision of any requirement of law or contractual obligation of Guarantor and
will not result in or require the creation or imposition of any lien on any of the properties or
revenues of Guarantor pursuant to any requirement of law or contractual obligation of Guarantor;

(c)    the Guarantor has all requisite power and authority to execute, deliver and
perform his obligations under this Guaranty;

(d)    the execution, delivery of this Guaranty and the performance by the
Guarantor of his obligations hereunder does not and will not contravene, violate or conflict with
any requirement of law, and does not and will not contravene, violate or conflict with, or result in
a breach of or default under, the operating agreement of Borrower, or any contractual obligation
to which Guarantor or his assets is or are subject, and does not require or result in the creation or
imposition of any lien in favor of any Person other than Lender;

(e)    the execution and delivery hereof and the performance by the Guarantor of
his obligations hereunder does not and will not contravene, violate or conflict with, or result in a
breach of or default under, any indenture, security instrument, deed of trust, ground lease, contract,
assignment, agreement or other instrument to which the Borrower or the assets of the Borrower
are subject;

(f)    no consent of any other party (including, without limitation, any partner, or
any creditor of the Guarantor or Borrower) is required that has not been obtained by the Guarantor;

(g)    this Guaranty has been duly executed and delivered by Guarantor and is the
legal, valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with
its terms, except as enforceability may be limited by applicable bankruptcy, moratorium,
insolvency, reorganization or similar laws affecting creditors' rights generally.

Guarantor warrants and represents that Guarantor is fully aware of the financial
condition of Borrower and is executing and delivering this Guaranty based solely upon Guarantor's
own independent investigation of all matters pertinent hereto, and that Guarantor is not relying in
any manner upon any representation or statement of Lender. Guarantor warrants, represent and
agree that Guarantor is in a position to obtain, and Guarantor hereby assumes full responsibility
for obtaining, any additional information concerning the financial condition of Borrower and any
other matter pertinent hereto, and that Guarantor is not relying upon Lender to furnish, and shall
have no right to require Lender to obtain or disclose, any information with respect to the
indebtedness or obligations guaranteed hereby, the financial condition or character of Borrower or
the ability of Borrower to pay the indebtedness or perform the obligations guaranteed hereby, the
existence of any collateral or security for any or all of such indebtedness or obligations, the
existence or nonexistence of any other guaranties of all or any part of such indebtedness or
obligations, any actions or non-action on the part of Lender, Borrower or any other person or entity,
or any other matter, fact or occurrence whatsoever. By executing this Guaranty, Guarantor

10



nowledges and knowingly accepts the full range of risks encompassed within a contract of emnity or guaranty.

10.    **General Provisions**.

(a)    Intentionally Omitted.

(b)    Unsecured Obligations. Guarantor hereby acknowledges that Lender's raisal of the Property is such that Lender is not willing to accept the consequences of the lusion of Guarantor's guaranty set forth herein among the obligations secured by the Mortgage the other Loan Documents and that Lender would not make the Loan but for the unsecured sonal liability undertaken by Guarantor herein.

(c)    Survival. This Guaranty shall be deemed to be continuing in nature and shall ain in full force and effect and shall survive the payment of the indebtedness evidenced and ured by the Loan Documents and the exercise of any remedy by Lender under the Mortgage or of the other Loan Documents, including, without limitation, any foreclosure or deed in lieu eof, even if, as a part of such remedy, the Loan are paid or satisfied in full. Notwithstanding foregoing, Guarantor shall have no liability under this Guaranty for any obligations first ruing after the earlier to occur of (i) the repayment of the Loan in full, (ii) the date that the perty is transferred by foreclosure of the Mortgage, or (iii) the date that the Property is sferred by Lender's acceptance of a deed-in-lieu of foreclosure, provided that, in each case, h obligations are not caused by actions of any Guarantor or their respective affiliates, agents, esentatives or employees.

(d)    No Subrogation; No Recourse Against Lender. Notwithstanding the sfaction by Guarantor of any liability hereunder, no Guarantor shall have any right of rogation, contribution, reimbursement or indemnity whatsoever or any right of recourse to or n respect to the assets or property of Borrower or to any Collateral until the expiration of ninety-(91) days following payment of the Loan in full. In connection with the foregoing, Guarantor ressly waives, until the expiration of ninety-one (91) days following payment of the Loan in , any and all rights of subrogation to Lender against Borrower, and Guarantor hereby waives rights to enforce any remedy which Lender may have against Borrower and any right to icipate in any Collateral. In addition to and without in any way limiting the foregoing, rantor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to rantor to all indebtedness of Borrower to Lender, and agrees with Lender that Guarantor shall demand or accept any payment of principal or interest from Borrower, shall not claim any et or other reduction of Guarantor's obligations hereunder because of any such indebtedness shall not take any action to obtain any of the Collateral. Further, no Guarantor shall have any t of recourse against Lender by reason of any action Lender may take or omit to take under the visions of this Guaranty or under the provisions of any of the Loan Documents.

(e)    Reservation of Rights. Nothing contained in this Guaranty shall prevent or ny way diminish or interfere with any rights or remedies, including, without limitation, the t to contribution, which Lender may have against Borrower, Guarantor or any other party under Comprehensive Environmental Response, Compensation and Liability Act of 1980 (codified

11



tle 42 U.S.C. § 9601 et seq.), as it may be amended from time to time, or any other applicable
ral, state or local laws, all such rights being hereby expressly reserved.

        (f)      <u>Financial Statements; Compliance Certificate</u>. Guarantor hereby agrees, as
aterial inducement to Lender to make the Loan to Borrower, to furnish to Lender promptly
n demand by Lender current and dated financial statements detailing the assets and liabilities
Guarantor as required by the Mortgage, certified by Guarantor, in form and substance acceptable
ender. Guarantor hereby warrants and represents unto Lender that any and all balance sheets,
worth statements and other financial data which have heretofore been given or may hereafter
iven to Lender with respect to Guarantor did or will at the time of such delivery fairly and
rately present the financial condition of Guarantor in all material respects.

        (g)      <u>Rights Cumulative; Payments</u>. Lender's rights under this Guaranty shall be
ddition to all rights of Lender under the Note, the Mortgage, and the other Loan Documents.
her, payments made by Guarantor under this Guaranty shall not reduce in any respect
ower's obligations and liabilities under the Note, the Mortgage, and the other Loan
uments.

        (h)      <u>No Limitation on Liability</u>. Guarantor hereby consents and agrees that
der may at any time, and from time to time, without further consent from Guarantor, do, make,
t, consent or agree to any of the following, and the liability of Guarantor under this Guaranty
l be unconditional and absolute and shall in no way be impaired or limited by any of the
owing, whether with or without notice to Borrower or Guarantor or with or without
sideration: (i) release and surrender the Collateral or any portion thereof; (ii) substitute for any
lateral held by or on behalf of Lender other collateral of like kind, or of any kind; (iii) make
advances or increase the amount of the Loan; (iv) extend the time for performance required
any of the Loan Documents or extend or renew the Note; (v) sue upon or foreclose the Note,
Mortgage, or any of the other Loan Documents; (vi) sell or transfer the Property subsequent to
closure; (vii) release Borrower, Guarantor or any other person or entity from performance or
rvance of any of the agreements, covenants, terms or conditions contained in any of the other
n Documents by operation of law, Lender's voluntary act or otherwise; (viii) agree to modify
terms of any one or more of the Loan Documents; (ix) sell, assign or otherwise transfer the
e, the Mortgage, and/or any other Loan Documents or any interest therein; or (x) take or fail to
 any action of any type whatsoever. No such action which Lender shall take or fail to take in
nection with the Loan Documents or any Collateral, nor any course of dealing with Borrower
ny other person, shall limit, impair or release any of Guarantor's obligations hereunder, affect
Guaranty in any way or afford Guarantor any recourse against Lender. Nothing contained in
section shall be construed to require Lender to take or refrain from taking any action referred
erein.

        (i)      <u>Entire Agreement; Amendment; Severability</u>. This Guaranty contains the
re agreement between the parties respecting the matters herein set forth and supersedes all prior
ements, whether written or oral, between the parties respecting such matters; and Guarantor
Lender acknowledge that there are no contemporaneous oral agreements with respect to the
ject matter hereof. This Guaranty may not be changed, modified or amended, except by a
ting executed by the parties hereto; and no obligation of Guarantor can be released or waived
Lender or any agent of Lender, except by a writing duly executed by Lender. A determination



any provision of this Guaranty is unenforceable or invalid shall not affect the enforceability validity of any other provision, and any determination that the application of any provision of Guaranty to any person or circumstance is illegal or unenforceable shall not affect the orceability or validity of such provision as it may apply to any other persons or circumstances.

(j)    Governing Law; Binding Effect; Waiver of Acceptance. This Guaranty ll be governed by and construed in accordance with the substantive laws of the State of New k without giving effect to its principles of choice of law or conflicts of law, except to the extent the applicability of any of such laws may now or hereafter be preempted by Federal law, in ch case such Federal law shall so govern and be controlling. This Guaranty shall bind rantor and the heirs, executors, legal representatives, successors and assigns of Guarantor and l inure to the benefit of Lender and the officers, directors, shareholders, agents and employees ender and their respective heirs, successors and assigns. This Guaranty shall in no event be aired by any change which may arise by reason of the death of Borrower or Guarantor, if viduals, or by reason of the dissolution of Borrower or Guarantor, if Borrower or Guarantor is rporation, partnership, limited liability company or similar entity. Guarantor has executed this ranty individually and not as a partner of Borrower or any other Guarantor or guarantor. This ranty is assignable by Lender, and any full or partial assignment hereof by Lender shall operate est in the assignee all rights and powers herein conferred upon and granted to Lender and so gned by Lender. Guarantor expressly waives notice of transfer or assignment of this Guaranty acknowledge that the failure by Lender to give any such notice shall not affect the liabilities uarantor hereunder. Notwithstanding the foregoing, Guarantor shall not assign any of its rights bligations under this Guaranty. Guarantor hereby waives any acceptance of this Guaranty by der, and this Guaranty shall immediately be binding upon Guarantor.

(k)    Notices. All notices given pursuant to this Guaranty shall be sufficient if led either by i. postage prepaid, certified or registered mail, return receipt requested, ii. by very to a nationally recognized overnight delivery service, or iii. telecopy to:

**If to Guarantor:**

AMIR HASID
26 Vitkin Street
Tel Aviv, Israel

NIR AMSEL
Rupin 31
Tel Aviv, Israel

**with a copy to:**

Rosenberg & Estis, P.C.
733 Third Avenue
New York, New York 10017
Attention: Eric S. Orenstein, Esq.

**If to Lender:**    4452 BROADWAY 1 LLC

13



825 Third Avenue, 37th Floor
New York, New York 10022
Attn.: Brian Shatz & Joshua Zegen

with a copy to:    Kriss & Feuerstein LLP
360 Lexington Avenue, Suite 1200
New York, New York 10017
Attn: Jerold C. Feuerstein, Esq.

Notices shall be deemed given: (w) if served in person, when served; (x) if copied, on the date of transmission if before 3:00 p.m. (New York time) on a Business Day after such time on the next Business Day; provided, however, that in both instances a hard of such notice also is sent pursuant to (y) or (z) below; (y) if by overnight courier, on the first Business Day after delivery to the courier; or (z) if by U.S. Mail, certified or registered mail, m receipt requested on the fourth (4th) day after deposit in the mail postage prepaid. Any party change its address for notices under this Guaranty by giving formal written notice to the other ies, specifying that the purpose of the notice is to change the party's address. For notice oses, Guarantor agrees to keep Lender informed at all times of Guarantor's current ess(es).

(l)    No Waiver; Time of Essence; Business Day. The failure of any party hereto force any right or remedy hereunder, or to promptly enforce any such right or remedy, shall constitute a waiver thereof nor give rise to any estoppel against such party nor excuse any of arties hereto from their respective obligations hereunder. Any waiver of such right or remedy be in writing and signed by the party to be bound. This Guaranty is subject to enforcement w or in equity, including actions for damages or specific performance. Time is of the essence f. The term "business day" as used herein shall mean a weekday, Monday through Friday, pt a legal holiday or a day on which banking institutions in New York are authorized by law closed.

(m)    Captions for Convenience; Pronouns. The captions and headings of the ons and paragraphs of this Guaranty are for convenience of reference only and shall not be rued in interpreting the provisions hereof. All personal pronouns used herein, whether used masculine, feminine or neuter gender, shall include all other genders; and the singular shall de the plural and vice versa.

(n)    Attorneys' Fees. In the event it is necessary for Lender to retain the services attorney or any other consultants in order to enforce this Guaranty, or any portion thereof, antor agrees to pay to Lender any and all costs and expenses, including, without limitation, eys' fees, incurred by Lender as a result thereof and such costs, fees and expenses shall be ded in the Guaranteed Recourse Obligations of Borrower.

(o)    Successive Actions. A separate right of action hereunder shall arise each Lender acquires knowledge of any matter indemnified or guaranteed by Guarantor under this nty. Separate and successive actions may be brought hereunder to enforce any of the ions hereof at any time and from time to time. No action hereunder shall preclude any

14



equent action, and Guarantor hereby waives and covenants not to assert any defense in the
re of splitting of causes of action or merger of judgments.

(p)   Intentionally Omitted.

(q)   Reliance. Lender would not make the Loan to Borrower without this
ranty. Accordingly, Guarantor intentionally and unconditionally enters into the covenants and
ements as set forth above and understands that, in reliance upon and in consideration of such
nants and agreements, the Loan shall be made and, as part and parcel thereof, specific
etary and other obligations have been, are being and shall be entered into which would not be
e or entered into but for such reliance.

(r)   WAIVER OF JURY TRIAL. TO THE FULLEST EXTENT
MITTED BY APPLICABLE LAW, GUARANTOR AND LENDER (BY ITS
EPTANCE HEREOF) EACH HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO
RIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED
THE SUBJECT MATTER OF THIS GUARANTY OR THE RELATIONSHIP THAT
EING ESTABLISHED, IN ANY ACTION, PROCEEDING OR OTHER LITIGATION
NY TYPE BROUGHT BY ANY OF THE PARTIES AGAINST ANY OTHER PARTY
PARTIES, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS,
OTHERWISE. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW,
RANTOR AND LENDER (BY ITS ACCEPTANCE HEREOF) EACH AGREE THAT
SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL
HOUT A JURY. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND
UNTARILY MADE BY GUARANTOR, AND GUARANTOR ACKNOWLEDGES
T NEITHER LENDER NOR ANY PERSON ACTING ON BEHALF OF LENDER
MADE ANY REPRESENTATIONS OF FACT TO INCLUDE THIS WAIVER OF
L BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR
LIFY ITS EFFECT. GUARANTOR ACKNOWLEDGES THAT THIS WAIVER IS A
ERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT
DER HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS
RANTY AND THAT LENDER WILL CONTINUE TO RELY ON THIS WAIVER IN
RELATED FUTURE DEALINGS WITH GUARANTOR. GUARANTOR FURTHER
NOWLEDGES THAT IT HAS BEEN REPRESENTED, OR HAS HAD THE
ORTUNITY TO BE REPRESENTED, IN THE SIGNING OF THIS GUARANTY AND
HE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL.
HOUT LIMITING THE FOREGOING, THE PARTIES FURTHER AGREE THAT
R RESPECTIVE RIGHT TO A TRIAL BY JURY IS WAIVED BY OPERATION OF
S SECTION AS TO ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING
CH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR
ORCEABILITY OF THIS GUARANTY, OR ANY PROVISION HEREOF. THIS
VER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS,
PLEMENTS OR MODIFICATIONS TO THIS GUARANTY.

(s)   VENUE. THE GUARANTOR HEREBY IRREVOCABLY SUBMITS
THE NONEXCLUSIVE JURISDICTION OF ANY NEW YORK STATE OR
ERAL COURT OR IN ANY ACTION OR PROCEEDING ARISING OUT OF OR

15



LATING TO THIS GUARANTY, THE NOTE, THE MORTGAGE OR ANY OTHER CUMENT DELIVERED IN CONNECTION HEREWITH OR THEREWITH AND E GUARANTOR HEREBY IRREVOCABLY AGREES THAT ALL CLAIMS IN SPECT OF SUCH ACTION OR PROCEEDING MAY BE HEARD AND TERMINED IN SUCH NEW YORK STATE COURT, OR TO THE EXTENT RMITTED BY LAW, IN SUCH FEDERAL COURT. THE GUARANTOR HEREBY EVOCABLY WAIVES, TO THE FULLEST EXTENT HE MAY EFFECTIVELY DO THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF CH ACTION OR PROCEEDING. TO THE EXTENT PERMITTED BY LAW, THE ARANTOR ALSO IRREVOCABLY CONSENTS TO THE SERVICE OF ANY AND PROCESS IN ANY SUCH ACTION OR PROCEEDING BY THE MAILING OF PIES (CERTIFIED MAIL, RETURN RECEIPT REQUESTED AND POSTAGE PAID) OF SUCH PROCESS TO HIM AT HIS ADDRESS SPECIFIED IN SECTION REOF OR IN THE MANNER SET FORTH IN SECTION 37 OF THE MORTGAGE THE GIVING OF NOTICE. THE GUARANTOR AGREES THAT A FINAL GMENT IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE GMENT OR IN ANY OTHER MANNER PROVIDED BY LAW.

(t)     Litigation. In the event of any litigation over this Guaranty: (a) if that tion is heard in the Commercial Division, New York State Supreme Court, then the parties ent and agree to application of the Court's accelerated procedures, Uniform Rules for the eme and County Courts (Rules of Practice for the Commercial Division, Section 202.70(g), 9); and (b) the parties shall promptly enter into and submit to the court (with a request to be rdered") a Stipulation and Order for the Production and Exchange of Confidential mation in the form promulgated by the New York City Bar Association Committee on State ts of Superior Jurisdiction.

(u)     Waiver by Guarantor. Guarantor covenants and agrees that, upon the mencement of a voluntary or involuntary bankruptcy proceeding by or against Borrower, er Guarantor shall seek or cause Borrower or any other person or entity to seek a supplemental or other relief, whether injunctive or otherwise, pursuant to 11 U.S.C. § 105 or any other sion of the Bankruptcy Reform Act of 1978, as amended, or any other debtor relief law, ther statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or fter in effect, which may be or become applicable, to stay, interdict, condition, reduce or t the ability of Lender to enforce any rights of Lender against Guarantor or any Collateral by of this Guaranty or otherwise.

(v)     Counterparts. This Guaranty may be executed in any number of erparts, each of which shall be effective only upon delivery and thereafter shall be deemed ginal, and all of which shall be taken to be one and the same instrument, for the same effect ll parties hereto had signed the same signature page. Any signature page of this Guaranty e detached from any counterpart of this Guaranty without impairing the legal effect of any tures thereon and may be attached to another counterpart of this Guaranty identical in form but having attached to it one or more additional signature pages.

16



(w)    <u>Secondary Market Transactions</u>. The terms and provisions of Section 40 of Mortgage are hereby incorporated herein by this reference.

(x)    <u>Joint and Several Liability</u>. The liability of all persons and entities who are ny manner obligated hereunder to Lender as Guarantor shall be joint and several.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

[SIGNATURES ON FOLLOWING PAGE]

17



**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the day and year above written.

**GUARANTOR:**


AMIR HASID
26 Vitkin Street
Tel Aviv, Israel

SS#: _____ - ___ - _____


NIR AMSEL
Rupin 31
Tel Aviv, Israel

SS#: _____ - ___ - _____

1



TE OF NEW YORK              )
                           ) ss:
NTY OF                     )

On the ___ day of January, in the year 2019, before me, the undersigned, a Notary Public
d for said State, personally appeared, AMIR HASID, personally known to me or proved to
n the basis of satisfactory evidence to be the individual whose name is subscribed to the within
ument and acknowledged to me that he/she executed the same in his/her capacity, and that by
er signature on the instrument, the individual, or the person upon behalf of which the
idual acted, executed this instrument.

_____
Notary Public

TE OF NEW YORK              )
                           ) ss:
NTY OF                     )

On the ___ day of January, in the year 2019, before me, the undersigned, a Notary Public
d for said State, personally appeared, NIR AMSEL, personally known to me or proved to me
e basis of satisfactory evidence to be the individual whose name is subscribed to the within
ument and acknowledged to me that he/she executed the same in his/her capacity, and that by
er signature on the instrument, the individual, or the person upon behalf of which the
idual acted, executed this instrument.

_____
Notary Public

2



EXHIBIT A

**to Block 2170 Lot 62:**

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of Broadway as legally opened and the southerly side of Fairview as vested in the City of New York;

RUNNING THENCE southerly along said easterly side of Broadway 74.51 feet to the southerly lot line of land conveyed to the City Real Estate Co. by Emil Bloch by deed recorded August in the Register of the County of N.Y. in Liber 16, Sec 8 at cp 271

THENCE easterly along the southerly line of land so conveyed as of aforesaid 100.31 feet (103.31 tax map) to a point in a line drawn parallel with the easterly side of Broadway distant 100 feet easterly therefrom measured on a line drawn at right angles thereto;

THENCE northerly parallel with the easterly side of Broadway, 85.86 feet to said southerly side of Fairview Avenue;

THENCE westerly along said southerly side of Fairview Avenue 100.29 feet to the to the point or place of BEGINNING.

3



**to Block 2170 Lot 400:**

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City and State of New York designated on the Tax Map of the City of New York, for the Borough of Manhattan as Section 8, Block 2170, Lot 400 and bounded and described as follows:

BEGINNING at a point on the southerly side of Fairview Ave., 100.30 feet easterly from the southeasterly corner of Fairview and Broadway measured along the Southerly side of Fairview Ave.;

THENCE northeasterly along the southerly and southeasterly side of Fairview Ave. as said Avenue curves and turns, 202 feet 5-3/4 inches;

THENCE southerly on a line forming an angle on its westerly side 28 degrees 12 feet 35 inches with the last mentioned course 242 feet 6-3/4 inches to the southerly line of land formerly of the City Real Estate Co.;

THENCE westerly 103.305 feet to a point distant 100.3 feet from the easterly side of Broadway as measured along the southerly side of land formerly of City Real Estate Co.;

THENCE northerly parallel with the easterly side of Broadway, 85.86 feet to the southerly side of Fairview Ave., at the point or place of BEGINNING.

EXCEPTING and RESERVING so much of the above the premises as has been taken by the City of New York.

4

No. 35/19

מספר 35/19

## AUTHENTICATION OF SIGNATURE

אימות חתימה

I the undersigned, **Talia Itzhaki**
Notary at Tel- Aviv, 108 Allenby Rd.

אני החי"מ, טליה יצחקי
נוטריון בתל-אביב, רחוב אלנבי 108

hereby certify that on **27.01.2019**
appeared before me

מאשרת כי ביום **27.01.2019**
ניצבו לפני

**Mr. Nir Amsel**
whose identity was proved to me by

מר ניר אמזל
שזיהותו הוכחה לי ע"י ~~רישיון~~

Issued at Tel Aviv Yafo on **12.02.2015**

שניתן מאת סמכות ממונה דרכונים בת"א מרכז
ביום **12.02.2015**

And

ו-

**Mr. Amir Hasid**
whose identity was proved to me by

מר אמיר חסיד
שזיהותו הוכחה לי ע"י ~~רישיון~~

Issued at Tel Aviv Yafo **on 10.07.2018**

שניתן מאת סמכות ממונה דרכונים בנתב"ג
ביום **10.07.2018**

and signed of their own free will the attached
document marked **"A"**.

 וחתמו מרצונם החופשי על המסמך המצ"ב
ומסומן באות "א".

In witness whereof I hereby authenticate the

signature of the said signee,

by my own signature and seal,

Today **27.01.2019**

ולראיה הנני מאמתת את חתימתם של הנ"ל

בחתימת ידי ובחותמי

היום **27.01.2019**

including VAT **426 Nis** paid

שכר בסך **426 ש"ח** כולל מע"מ שולם

Notary's Seal

חתימה    חותם הנוטריון

-A-

## DEBT SERVICE AND CARRY GUARANTY

THIS DEBT SERVICE AND CARRY GUARANTY (this "**Guaranty**"), made as of
January 23, 2019, by **AMIR HASID**, an individual residing at 26 Vitkin Street, Tel Aviv, Israel,
and **NIR AMSEL**, an individual residing at Rupin 31, Tel Aviv, Israel (jointly and severally,
hereinafter referred to, collectively and individually as the case may be, as the "**Guarantor**"), in
favor of **4452 BROADWAY 1 LLC**, a Delaware limited liability company having offices at 825
Third Avenue, 37th Floor, New York, New York 10022 (together with its successors and assigns,
hereinafter, collectively, the "**Lender**").

### W I T N E S S E T H:

A.     WHEREAS, **4452 BROADWAY MAZAL LLC**, a Delaware limited liability
company (the "**Borrower**"), has obtained a building loan in the principal amount of up to
$35,500,000.00 (the "**Loan**") from Lender, which Loan shall be disbursed in accordance with and
subject to the disbursement procedures and conditions set forth in the Mortgage (as defined
herein);

B.     WHEREAS, the Loan is evidenced by that certain Building Loan Note dated as of
the date hereof (the "**Note**"), executed by Borrower and payable to the order of Lender in the stated
principal amount of up to $35,500,000.00, and secured by that certain Building Mortgage and
Security Agreement dated as of the date hereof, by and among Borrower and Lender (the
"**Mortgage**"), encumbering certain real property situated in County of New York, State of New
York, as more particularly described on Exhibit A attached hereto and incorporated herein by this
reference, together with the buildings, structures and other improvements now or hereafter located
thereon (said real property, buildings, structures and other improvements being hereinafter
collectively referred to as the "**Property**"), and by other documents and instruments;

C.     WHEREAS, for purposes herein, the Note, the Mortgage, the Loan Agreement, this
Guaranty and such other documents and instruments related to the Loan, as the same may be from
time to time amended, consolidated, renewed or replaced, being collectively referred to herein as
the "**Loan Documents**";

D.     WHEREAS, initially capitalized terms not otherwise defined herein shall have the
meanings given to such terms in the Mortgage; and

E.     WHEREAS, Guarantor is an owner, either directly or indirectly, of a beneficial
interest in Borrower, the extension of the Loan to Borrower is of substantial benefit to Guarantor,
and, therefore, Guarantor desires to enter into this Guaranty in favor of Lender.

NOW, THEREFORE, to induce Lender to extend the Loan to Borrower, and in
consideration of the foregoing premises and for other good and valuable consideration, the receipt,
adequacy and sufficiency of which are hereby acknowledged, Guarantor hereby covenants and
agrees for the benefit of Lender, as follows:

1.     **Debt Service and Carry Guaranty and Agreement**. Guarantor hereby, jointly
and severally, unconditionally and irrevocably guarantees to Lender and to its successors,



endorsees and/or assigns the full and prompt payment when due, by acceleration or otherwise, the following: (i) all monthly installments of interest that accrue under the Note, (ii) the due and punctual payment of all operating expenses, including without limitation, Taxes and Other Charges and insurance costs and Insurance Premiums as required by the Mortgage, plus (iii) all fees, interest, late charges and expenses accrued on such principal or interest or incurred by Lender in connection therewith or in the collection thereof (collectively, the "**Guaranteed Obligations**"). Guarantor acknowledges that the amount of the Guaranteed Obligations may exceed the amount necessary to pay in full the Loan. Notwithstanding anything to the contrary contained in this Guaranty, the Guaranteed Obligations shall no longer accrue from and after the transfer of title to the Property, whether pursuant to foreclosure of the Mortgage or acceptance of a deed in lieu thereof.

2.     **Reinstatement of Obligations**. If at any time all or any part of any payment made by Guarantor or received by Lender from Guarantor under or with respect to this Guaranty is or must be rescinded or returned for any reason whatsoever (including, but not limited to, the insolvency, bankruptcy or reorganization of Borrower or Guarantor), then the obligations of Guarantor hereunder shall, to the extent of the payment rescinded or returned, be deemed to have continued in existence, notwithstanding such previous payment made by Guarantor, or receipt of payment by Lender, and the obligations of Guarantor hereunder shall continue to be effective or be reinstated, as the case may be, as to such payment, all as though such previous payment by Guarantor had never been made.

3.     **Waivers by Guarantor**. To the extent permitted by law, Guarantor hereby waives and agrees not to assert or take advantage of (as a defense or otherwise):

(a)     Any right to require Lender to proceed against Borrower or any other Person or to proceed against or exhaust any security held by Lender at any time or to pursue any other remedy in Lender's power or under any other agreement before proceeding against Guarantor hereunder;

(b)     The defense of the statute of limitations in any action hereunder;

(c)     Any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other person or persons or the failure of Lender to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other Person or Persons;

(d)     Any failure on the part of Lender to ascertain the extent or nature of any property (whether real or personal), rights, estates and interests now or at any time hereafter securing the payment of the Note and/or the other obligations of Borrower under the Loan Documents whether held by Lender or by any person or entity on Lender's behalf or for Lender's account (the "**Collateral**") or any insurance or other rights with respect thereto, or the liability of any party liable for the Loan Documents or the obligations evidenced or secured thereby;

(e)     Demand, presentment for payment, notice of nonpayment, protest, notice of protest and all other notices of any kind, or the lack of any thereof, including, without limiting the generality of the foregoing, notice of the existence, creation or incurring of any new or additional

2



indebtedness or obligation or of any action or non-action on the part of Borrower, Lender, any endorser or creditor of Borrower or of any Guarantor or on the part of any other person whomsoever under this or any other instrument in connection with any obligation or evidence of indebtedness held by Lender;

(f)    Any defense based upon an election of remedies by Lender;

(g)    Any right or claim of right to cause a marshalling of the assets of Guarantor;

(h)    Any principle or provision of law, statutory or otherwise, which is or might be in conflict with the terms and provisions of this Guaranty;

(i)    Any duty on the part of Lender to disclose to Guarantor any facts Lender may now or hereafter know about Borrower or the Property, regardless of whether Lender has reason to believe that any such facts materially increase the risk beyond that which Guarantor intends to assume or has reason to believe that such facts are unknown to Guarantor or has a reasonable opportunity to communicate such facts to Guarantor, it being understood and agreed that Guarantor is fully responsible for being and keeping informed of the financial condition of Borrower, of the condition of the Property and of any and all circumstances bearing on the risk that liability may be incurred by Guarantor hereunder;

(j)    Any lack of notice of disposition or of manner of disposition of any Collateral;

(k)    Failure to properly record any document or any other lack of due diligence by Lender in creating or perfecting a security interest in or collection, protection or realization upon any Collateral or in obtaining reimbursement or performance from any person or entity now or hereafter liable for the Loan Documents or any obligation secured thereby;

(l)    The inaccuracy of any representation or other provision contained in any Loan Document;

(m)    Any sale or assignment of the Loan Documents, or any interest therein;

(n)    Any sale or assignment by Borrower of any Collateral, or any portion thereof or interest therein, whether or not consented to by Lender;

(o)    Any invalidity, irregularity or unenforceability, in whole or in part, of any one or more of the Loan Documents;

(p)    Any lack of commercial reasonableness in dealing with any Collateral;

(q)    Any deficiencies in any Collateral or any deficiency in the ability of Lender to collect or to obtain performance from any persons or entities now or hereafter liable for the payment and performance of any obligation hereby guaranteed;

(r)    An assertion or claim that the automatic stay provided by 11 U.S.C. § 362 (arising upon the voluntary or involuntary bankruptcy proceeding of Borrower) or any other stay

3



provided under any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable, shall operate or be interpreted to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any of its rights, whether now or hereafter acquired, which Lender may have against Guarantor or any Collateral;

(s)    Any modifications of the Loan Documents or any obligation of Borrower relating to each Loan by operation of law or by action of any court, whether pursuant to the Bankruptcy Reform Act of 1978, as amended, or any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, or otherwise;

(t)    Any change in the composition of Borrower, including, without limitation, the withdrawal or removal of Guarantor from any current or future position of ownership, management or control of Borrower;

(u)    The release of Borrower or of any other person or entity from performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Loan Documents by operation of law, Lender's voluntary act or otherwise; and

(v)    Any action, occurrence, event or matter consented to by Guarantor under Section 8(h) hereof, under any other provision hereof, or otherwise.

4.    **Additional Waivers**.

(a)    In addition to all the other waivers agreed to and made by Guarantor as set forth in this Guaranty, Guarantor hereby waives all rights and defenses that Guarantor may have because Borrower's debt is secured by real property. This means, among other things:

(i)    Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower.

(ii)    If Lender forecloses on any real property collateral pledged by Borrower:

(1)    The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, except as provided in Section 1371 of the New York Real Property Actions and Proceedings Law; and

(2)    Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower.

This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's debt is secured by real property. Guarantor further hereby waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed

4



ligation, has destroyed Guarantor's rights of subrogation and reimbursement against the
incipal.

(b)    Without limiting the generality of any of the waivers contained in this
uaranty, Guarantor also waives (i) any defense based upon Lender's election to waive its lien as
all or any security for the Loan pursuant to any applicable law, and (ii) any and all benefits
hich might otherwise be available to Guarantor.

(c)    Without limiting the generality of any of the waivers contained in this
uaranty, Guarantor also waives any defense based upon any statute or rule of law which provides
at the obligation of a surety must be neither larger in amount nor in any other respects more
rdensome than that of a principal. In this regard, Guarantor acknowledges that Lender's recourse
gainst Borrower for any of the obligations guaranteed hereby may be restricted impaired or
rohibited by reason of Lender's election of remedies or other protections afforded debtors under
ew York law and agrees that no such restriction, impairment or prohibition shall have any effect
n Guarantor's obligations to pay and perform the obligations guaranteed hereby under this
uaranty.

5.    **Suretyship Waivers**. Guarantor understands and acknowledges that if Lender
recloses judicially or nonjudicially against any real property security for the Note, that
oreclosure could impair or destroy any ability that Guarantor may have to seek reimbursement,
ontribution or indemnification from Borrower or others based on any right Guarantor may have
f subrogation, reimbursement, contribution or indemnification for any amounts paid by Guarantor
nder this Guaranty. Guarantor further understands and acknowledges that in the absence of this
rovision, the potential impairment or destruction of Guarantor's rights, if any, may entitle
uarantor to assert a defense to this Guaranty. By executing this Guaranty, Guarantor freely,
rrevocably and unconditionally: (i) waives and relinquishes that defense, and agrees that
Guarantor will be fully liable under this Guaranty, even though Lender may foreclose judicially or
honjudicially against any real property security for the Note; (ii) agree that Guarantor will not
ssert that defense in any action or proceeding that Lender may commence to enforce this
Guaranty; (iii) acknowledge and agree that the rights and defenses waived by Guarantor under this
Guaranty include any right or defense that Guarantor may have or be entitled to assert; and (iv)
acknowledges and agrees that Lender is relying on this waiver in making the Loan, and that this
waiver is a material part of the consideration that Lender is receiving for making the Loan.

6.    **Remedies**. A separate action may be brought to enforce the provisions hereof,
which shall in no way be deemed to be an action on the Note, whether or not any Loan has been
repaid and whether or not Lender would be entitled to a deficiency judgment following a judicial
foreclosure, trustee's sale or sale under the applicable Uniform Commercial Code.

7.    **Representations and Warranties.** The Guarantor hereby represents and
warrants to Lender that:

(a)    the Guarantor is not insolvent (as such term is defined in the debtor/creditor
laws of the State of New York);

5



(b)  the execution, delivery and performance of this Guaranty will not (i) make Guarantor insolvent (as such term is defined in the debtor/creditor laws of the State of New York), or (ii) violate any provision of any requirement of law or contractual obligation of Guarantor and will not result in or require the creation or imposition of any lien on any of the properties or revenues of Guarantor pursuant to any requirement of law or contractual obligation of Guarantor;

(c)  the Guarantor has all requisite power and authority to execute, deliver and perform his obligations under this Guaranty;

(d)  the execution, delivery of this Guaranty and the performance by the Guarantor of his obligations hereunder does not and will not contravene, violate or conflict with any requirement of law, and does not and will not contravene, violate or conflict with, or result in a breach of or default under, the operating agreement of Borrower, or any contractual obligation to which Guarantor or his assets is or are subject, and does not require or result in the creation or imposition of any lien in favor of any person or entity other than Lender;

(e)  the execution and delivery hereof and the performance by the Guarantor of his obligations hereunder does not and will not contravene, violate or conflict with, or result in a breach of or default under, any indenture, security instrument, deed of trust, ground lease, contract, assignment, agreement or other instrument to which the Borrower or the assets of the Borrower are subject;

(f)  no consent of any other party (including, without limitation, any partner, or any creditor of the Guarantor or Borrower) is required that has not been obtained by the Guarantor; and

(g)  this Guaranty has been duly executed and delivered by Guarantor and is the legal, valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, moratorium, insolvency, reorganization or similar laws affecting creditors' rights generally.

Guarantor warrants and represents that Guarantor is fully aware of the financial condition of Borrower and is executing and delivering this Guaranty based solely upon Guarantor's own independent investigation of all matters pertinent hereto, and that Guarantor is not relying in any manner upon any representation or statement of Lender.  Guarantor warrants, represent and agree that Guarantor is in a position to obtain, and Guarantor hereby assumes full responsibility for obtaining, any additional information concerning the financial condition of Borrower and any other matter pertinent hereto, and that Guarantor is not relying upon Lender to furnish, and shall have no right to require Lender to obtain or disclose, any information with respect to the indebtedness or obligations guaranteed hereby, the financial condition or character of Borrower or the ability of Borrower to pay the indebtedness or perform the obligations guaranteed hereby, the existence of any collateral or security for any or all of such indebtedness or obligations, the existence or nonexistence of any other guaranties of all or any part of such indebtedness or obligations, any actions or non-action on the part of Lender, Borrower or any other person or entity, or any other matter, fact or occurrence whatsoever. By executing this Guaranty, Guarantor

6



knowledges and knowingly accepts the full range of risks encompassed within a contract of
indemnity or guaranty.

8. **General Provisions**.

(a) <u>Full Recourse</u>. All of the terms and provisions of this Guaranty are recourse
obligations of Guarantor and not restricted by any limitation on personal liability.

(b) <u>Unsecured Obligations</u>. Guarantor hereby acknowledges that Lender's
appraisal of the Property is such that Lender is not willing to accept the consequences of the
exclusion of Guarantor's guaranty set forth herein among the obligations secured by the Mortgage
and the other Loan Documents and that Lender would not make the Loan but for the unsecured
personal liability undertaken by Guarantor herein.

(c) <u>Survival</u>. This Guaranty shall be deemed to be continuing in nature and shall
remain in full force and effect and shall survive the payment of the indebtedness evidenced and
secured by the Loan Documents and the exercise of any remedy by Lender under the Mortgage or
any of the other Loan Documents, including, without limitation, any foreclosure or deed in lieu
hereof, even if, as a part of such remedy, the Loan are paid or satisfied in full.

(d) <u>No Subrogation; No Recourse Against Lender</u>. Notwithstanding the
satisfaction by Guarantor of any liability hereunder, no Guarantor shall have any right of
subrogation, contribution, reimbursement or indemnity whatsoever or any right of recourse to or
with respect to the assets or property of Borrower or to any Collateral until the expiration of ninety-
one (91) days following payment of the Loan in full. In connection with the foregoing, Guarantor
expressly waives, until the expiration of ninety-one (91) days following payment of the Loan in
full, any and all rights of subrogation to Lender against Borrower, and Guarantor hereby waives
any rights to enforce any remedy which Lender may have against Borrower and any right to
participate in any Collateral. In addition to and without in any way limiting the foregoing,
Guarantor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to
Guarantor to all indebtedness of Borrower to Lender, and agrees with Lender that Guarantor shall
not demand or accept any payment of principal or interest from Borrower, shall not claim any
offset or other reduction of Guarantor's obligations hereunder because of any such indebtedness
and shall not take any action to obtain any of the Collateral. Further, no Guarantor shall have any
right of recourse against Lender by reason of any action Lender may take or omit to take under the
provisions of this Guaranty or under the provisions of any of the Loan Documents.

(e) <u>Reservation of Rights</u>. Nothing contained in this Guaranty shall prevent or
in any way diminish or interfere with any rights or remedies, including, without limitation, the
right to contribution, which Lender may have against Borrower, Guarantor or any other party under
the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (codified
at Title 42 U.S.C. § 9601 et seq.), as it may be amended from time to time, or any other applicable
federal, state or local laws, all such rights being hereby expressly reserved.

(f) <u>Financial Statements; Compliance Certificate</u>. Guarantor hereby agrees, as
a material inducement to Lender to make the Loan to Borrower, to furnish to Lender promptly
upon demand by Lender current and dated financial statements detailing the assets and liabilities

7



f Guarantor as required by the Mortgage, certified by Guarantor, in form and substance acceptable
b Lender. Guarantor hereby warrants and represents unto Lender that any and all balance sheets,
et worth statements and other financial data which have heretofore been given or may hereafter
e given to Lender with respect to Guarantor did or will at the time of such delivery fairly and
ccurately present the financial condition of Guarantor in all material respects.

(g)    Rights Cumulative; Payments. Lender's rights under this Guaranty shall be
n addition to all rights of Lender under the Note, the Mortgage and the other Loan Documents.
urther, payments made by Guarantor under this Guaranty shall not reduce in any respect
orrower's obligations and liabilities under the Note, the Mortgage and the other Loan Documents.

(h)    No Limitation on Liability. Guarantor hereby consents and agrees that
ender may at any time, and from time to time, without further consent from Guarantor, do, make,
rant, consent or agree to any of the following, and the liability of Guarantor under this Guaranty
hall be unconditional and absolute and shall in no way be impaired or limited by any of the
ollowing, whether with or without notice to Borrower or Guarantor or with or without
onsideration: (i) release and surrender the Collateral or any portion thereof; (ii) substitute for any
ollateral held by or on behalf of Lender other collateral of like kind, or of any kind; (iii) make
veradvances or increase the amount of the Loan; (iv) extend the time for performance required
y any of the Loan Documents or extend or renew the Note; (v) sue upon or foreclose the Note,
e Mortgage or any of the other Loan Documents; (vi) sell or transfer the Property subsequent to
reclosure; (vii) release Borrower, Guarantor or any other person or entity from performance or
bservance of any of the agreements, covenants, terms or conditions contained in any of the other
oan Documents by operation of law, Lender's voluntary act or otherwise; (viii) agree to modify
e terms of any one or more of the Loan Documents; (ix) sell, assign or otherwise transfer the
ote, the Mortgage and/or any other Loan Documents or any interest therein; or (x) take or fail to
ke any action of any type whatsoever. No such action which Lender shall take or fail to take in
onnection with the Loan Documents or any Collateral, nor any course of dealing with Borrower
any other person, shall limit, impair or release any of Guarantor's obligations hereunder, affect
is Guaranty in any way or afford Guarantor any recourse against Lender. Nothing contained in
is section shall be construed to require Lender to take or refrain from taking any action referred
herein.

(i)    Entire Agreement; Amendment; Severability. This Guaranty contains the
ntire agreement between the parties respecting the matters herein set forth and supersedes all prior
greements, whether written or oral, between the parties respecting such matters; and Guarantor
d Lender acknowledge that there are no contemporaneous oral agreements with respect to the
bject matter hereof. This Guaranty may not be changed, modified or amended, except by a
riting executed by the parties hereto; and no obligation of Guarantor can be released or waived
y Lender or any agent of Lender, except by a writing duly executed by Lender. A determination
at any provision of this Guaranty is unenforceable or invalid shall not affect the enforceability
validity of any other provision, and any determination that the application of any provision of
is Guaranty to any person or circumstance is illegal or unenforceable shall not affect the
forceability or validity of such provision as it may apply to any other persons or circumstances.

(j)    Governing Law; Binding Effect; Waiver of Acceptance. This Guaranty
all be governed by and construed in accordance with the substantive laws of the State of New

8



ork without giving effect to its principles of choice of law or conflicts of law, except to the extent that the applicability of any of such laws may now or hereafter be preempted by Federal law, in which case such Federal law shall so govern and be controlling. This Guaranty shall bind Guarantor and the heirs, executors, legal representatives, successors and assigns of Guarantor and shall inure to the benefit of Lender and the officers, directors, shareholders, agents and employees of Lender and their respective heirs, successors and assigns. This Guaranty shall in no event be impaired by any change which may arise by reason of the death of Borrower or Guarantor, if individuals, or by reason of the dissolution of Borrower or Guarantor, if Borrower or Guarantor is a corporation, partnership, limited liability company or similar entity. Guarantor has executed this Guaranty individually and not as a partner of Borrower or any other Guarantor or guarantor. This Guaranty is assignable by Lender, and any full or partial assignment hereof by Lender shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Lender and so assigned by Lender. Guarantor expressly waives notice of transfer or assignment of this Guaranty and acknowledge that the failure by Lender to give any such notice shall not affect the liabilities of Guarantor hereunder. Notwithstanding the foregoing, Guarantor shall not assign any of its rights or obligations under this Guaranty. Guarantor hereby waives any acceptance of this Guaranty by Lender, and this Guaranty shall immediately be binding upon Guarantor.

(k)    Notices. All notices given pursuant to this Guaranty shall be sufficient if mailed either by (i) postage prepaid, certified or registered mail, return receipt requested, (ii) by delivery to a nationally recognized overnight delivery service, or (iii) telecopy to:

| | |
|---|---|
| **If to Guarantor:** | AMIR HASID<br>26 Vitkin Street<br>Tel Aviv, Israel |
| | NIR AMSEL<br>Rupin 31<br>Tel Aviv, Israel |
| **with a copy to:** | Rosenberg & Estis, P.C.<br>733 Third Avenue<br>New York, New York 10017<br>Attention: Eric S. Orenstein, Esq. |
| **If to Lender:** | 4452 BROADWAY 1 LLC<br>825 Third Avenue, 37th Floor<br>New York, New York 10022<br>Attn.: Brian Shatz & Joshua Zegen |

9



with a copy to:       Kriss & Feuerstein LLP
                       360 Lexington Avenue, Suite 1200
                       New York, New York 10017
                       Attn: Jerold C. Feuerstein, Esq.

Notices shall be deemed given: (w) if served in person, when served; (x) if telecopied, on the date of transmission if before 3:00 p.m. (New York time) on a Business Day and after such time on the next Business Day; provided, however, that in both instances a hard copy of such notice also is sent pursuant to (y) or (z) below; (y) if by overnight courier, on the first (1st) Business Day after delivery to the courier; or (z) if by U.S. Mail, certified or registered mail, return receipt requested on the fourth (4th) day after deposit in the mail postage prepaid. Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address(es).

(l)     No Waiver; Time of Essence; Business Day. The failure of any party hereto to enforce any right or remedy hereunder, or to promptly enforce any such right or remedy, shall not constitute a waiver thereof nor give rise to any estoppel against such party nor excuse any of the parties hereto from their respective obligations hereunder. Any waiver of such right or remedy must be in writing and signed by the party to be bound. This Guaranty is subject to enforcement at law or in equity, including actions for damages or specific performance. Time is of the essence hereof. The term "**business day**" as used herein shall mean a weekday, Monday through Friday, except a legal holiday or a day on which banking institutions in New York are authorized by law to be closed.

(m)    Captions for Convenience; Pronouns. The captions and headings of the sections and paragraphs of this Guaranty are for convenience of reference only and shall not be construed in interpreting the provisions hereof. All personal pronouns used herein, whether used in the masculine, feminine or neuter gender, shall include all other genders; and the singular shall include the plural and vice versa.

(n)     Attorneys' Fees. In the event it is necessary for Lender to retain the services of an attorney or any other consultants in order to enforce this Guaranty, or any portion thereof, Guarantor agrees to pay to Lender any and all costs and expenses, including, without limitation, attorneys' fees, incurred by Lender as a result thereof and such costs, fees and expenses shall be included in the Guaranteed Obligations.

(o)     Successive Actions. A separate right of action hereunder shall arise each time Lender acquires knowledge of any matter indemnified or guaranteed by Guarantor under this Guaranty. Separate and successive actions may be brought hereunder to enforce any of the provisions hereof at any time and from time to time. No action hereunder shall preclude any subsequent action, and Guarantor hereby waives and covenants not to assert any defense in the nature of splitting of causes of action or merger of judgments.

(p)     Intentionally Omitted.

10



(q)     Reliance. Lender would not make the Loan to Borrower without this Guaranty. Accordingly, Guarantor intentionally and unconditionally enters into the covenants and agreements as set forth above and understands that, in reliance upon and in consideration of such covenants and agreements, the Loan shall be made and, as part and parcel thereof, specific monetary and other obligations have been, are being and shall be entered into which would not be made or entered into but for such reliance.

(r)     WAIVER OF JURY TRIAL. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR AND LENDER (BY ITS ACCEPTANCE HEREOF) EACH HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS GUARANTY OR THE RELATIONSHIP THAT IS BEING ESTABLISHED, IN ANY ACTION, PROCEEDING OR OTHER LITIGATION OF ANY TYPE BROUGHT BY ANY OF THE PARTIES AGAINST ANY OTHER PARTY OR PARTIES, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR AND LENDER (BY ITS ACCEPTANCE HEREOF) EACH AGREE THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY GUARANTOR, AND GUARANTOR ACKNOWLEDGES THAT NEITHER LENDER NOR ANY PERSON ACTING ON BEHALF OF LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INCLUDE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. GUARANTOR ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT LENDER HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS GUARANTY AND THAT LENDER WILL CONTINUE TO RELY ON THIS WAIVER IN ITS RELATED FUTURE DEALINGS WITH GUARANTOR. GUARANTOR FURTHER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED, IN THE SIGNING OF THIS GUARANTY AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL. WITHOUT LIMITING THE FOREGOING, THE PARTIES FURTHER AGREE THAT THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY IS WAIVED BY OPERATION OF THIS SECTION AS TO ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS GUARANTY, OR ANY PROVISION HEREOF. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY.

(s)     VENUE. THE GUARANTOR HEREBY IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF ANY NEW YORK STATE OR FEDERAL COURT OR IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY, THE NOTE, THE MORTGAGE OR ANY OTHER DOCUMENT DELIVERED IN CONNECTION HEREWITH OR THEREWITH AND THE GUARANTOR HEREBY IRREVOCABLY AGREES THAT ALL CLAIMS IN RESPECT OF SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN SUCH NEW YORK STATE COURT, OR TO THE EXTENT

11



PERMITTED BY LAW, IN SUCH FEDERAL COURT. THE GUARANTOR HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT HE MAY EFFECTIVELY DO SO, THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF SUCH ACTION OR PROCEEDING. TO THE EXTENT PERMITTED BY LAW, THE GUARANTOR ALSO IRREVOCABLY CONSENTS TO THE SERVICE OF ANY AND ALL PROCESS IN ANY SUCH ACTION OR PROCEEDING BY THE MAILING OF COPIES (CERTIFIED MAIL, RETURN RECEIPT REQUESTED AND POSTAGE PREPAID) OF SUCH PROCESS TO HIM AT HIS ADDRESS SPECIFIED IN SECTION HEREOF OR IN THE MANNER SET FORTH IN SECTION 37 OF THE MORTGAGE FOR THE GIVING OF NOTICE. THE GUARANTOR AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW.

(t)     <u>Litigation</u>. In the event of any litigation over this Guaranty: (a) if that litigation is heard in the Commercial Division, New York State Supreme Court, then the parties consent and agree to application of the Court's accelerated procedures, Uniform Rules for the Supreme and County Courts (Rules of Practice for the Commercial Division, Section 202.70(g), Rule 9); and (b) the parties shall promptly enter into and submit to the court (with a request to be "so-ordered") a Stipulation and Order for the Production and Exchange of Confidential Information in the form promulgated by the New York City Bar Association Committee on State Courts of Superior Jurisdiction.

(u)     <u>Waiver by Guarantor</u>. Guarantor covenants and agrees that, upon the commencement of a voluntary or involuntary bankruptcy proceeding by or against Borrower, neither Guarantor shall seek or cause Borrower or any other person or entity to seek a supplemental stay or other relief, whether injunctive or otherwise, pursuant to 11 U.S.C. § 105 or any other provision of the Bankruptcy Reform Act of 1978, as amended, or any other debtor relief law, whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable, to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any rights of Lender against Guarantor or any Collateral by virtue of this Guaranty or otherwise.

(v)     <u>Counterparts</u>. This Guaranty may be executed in any number of counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page. Any signature page of this Guaranty may be detached from any counterpart of this Guaranty without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Guaranty identical in form hereto but having attached to it one or more additional signature pages.

(w)     <u>Intentionally Omitted</u>.

(x)     <u>Secondary Market Transactions</u>. The terms and provisions of Section 40 of the Mortgage are hereby incorporated herein by this reference.

12



(y)    Joint and Several Liability. The liability of all persons and entities who are in any manner obligated hereunder to Lender as Guarantor shall be joint and several.

(z)    Payment of Money Only. Guarantor acknowledges that this Guaranty is an "instrument for the payment of money only," within the meaning of New York Civil Practice Law and Rules Section 3213. Thus, Lender is entitled to move for summary judgment in lieu of complaint when enforcing this Guaranty.

*[SIGNATURES ON FOLLOWING PAGE]*

13

　


**IN WITNESS WHEREOF**, Guarantor has executed this Guaranty as of the day and year first above written.

**GUARANTOR:**

_____
AMIR HASID, an individual

_____
NIR AMSEL, an individual

STATE OF NEW YORK          )
                                              ) ss:
COUNTY OF                        )

On the ___ day of January, in the year 2019, before me, the undersigned, a Notary Public in and for said State, personally appeared, AMIR HASID, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

_____
Notary Public

STATE OF NEW YORK          )
                                              ) ss:
COUNTY OF                        )

On the ___ day of January, in the year 2019, before me, the undersigned, a Notary Public in and for said State, personally appeared, NIR AMSEL, personally known to me or proved to me the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

_____
Notary Public

S - 1



## EXHIBIT A

### LEGAL DESCRIPTION

**As to Block 2170 Lot 62:**

ALL that certain plot, piece or parcel of land, situate, lying and being in the
Borough of Manhattan, County, City and State of New York, bounded and
described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of
Broadway as legally opened and the southerly side of Fairview as vested in the
City of New York;

RUNNING THENCE southerly along said easterly side of Broadway 74.51 feet
to the southerly lot line of land conveyed to the City Real Estate Co. by Emil
Bloch by deed recorded August in the Register of the County of N.Y. in Liber 16,
Sec 8 at cp 271

THENCE easterly along the southerly line of land so conveyed as of aforesaid
100.31 feet (103.31 tax map) to a point in a line drawn parallel with the easterly
side of Broadway distant 100 feet easterly therefrom measured on a line drawn
at right angles thereto;

THENCE northerly parallel with the easterly side of Broadway, 85.86 feet to said
southerly side of Fairview Avenue;

THENCE westerly along said southerly side of Fairview Avenue 100.29 feet to
the to the point or place of BEGINNING.



**As to Block 2170 Lot 400:**

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City and State of New York designated on the Tax Map of the City of New York, for the Borough of Manhattan as Section 8, Block 2170, Lot 400 and bounded and described as follows:

BEGINNING at a point on the southerly side of Fairview Ave., 100.30 feet easterly from the southeasterly corner of Fairview and Broadway measured along the Southerly side of Fairview Ave.;

THENCE northeasterly along the southerly and southeasterly side of Fairview Ave. as said Avenue curves and turns, 202 feet 5-3/4 inches;

THENCE southerly on a line forming an angle on its westerly side 28 degrees 12 feet 35 inches with the last mentioned course 242 feet 6-3/4 inches to the southerly line of land formerly of the City Real Estate Co.;

THENCE westerly 103.305 feet to a point distant 100.3 feet from the easterly side of Broadway as measured along the southerly side of land formerly of City Real Estate Co.;

THENCE northerly parallel with the easterly side of Broadway, 85.86 feet to the southerly side of Fairview Ave., at the point or place of BEGINNING.

EXCEPTING and RESERVING so much of the above the premises as has been taken by the City of New York.

Exhibit A - Page 2