# Exhibit M

**(Immediately Follows This Page)**

<u>**SECOND LOAN MODIFICATION AGREEMENT**</u>
(Mortgage Loan)

**THIS SECOND LOAN MODIFICATION AGREEMENT** (this "**Agreement**") made as of and effective as of the 25th day of August, 2020, between **4452 BROADWAY MAZAL LLC**, a Delaware limited liability company, having an address at c/o HAP Investments LLC, 3 East 54th Street, 15th Floor, New York, New York 10022 ("**Borrower**") and **4452 BROADWAY 1 LLC,** a Delaware limited liability company having an address at 520 Madison Avenue, Suite 3501, New York, New York 10022 (together with its successors and assigns, "**Lender**").

**WHEREAS**, on January 23, 2019, Lender made a loan (the "**Land Loan**") to Borrower in the original principal amount of Ten Million and 00/100 Dollars ($10,000,000.00) (the "**Land Loan Amount**"), which Land Loan is evidenced by an Amended and Restated Note, dated as of January 23, 2019, made by Borrower to Lender (the "**Land Loan Note**") and secured by, *inter alia*, an Amended and Restated Mortgage and Security Agreement in the amount of Ten Million and 00/100 Dollars ($10,000,000.00), dated as of January 23, 2019, made by Borrower to Lender (the "**Land Loan Mortgage**"), as well as by the other loan documents executed and delivered to Lender in connection with the Land Loan, as the same may be modified from time to time (collectively, including the Land Loan Note and the Land Loan Mortgage, the "**Land Loan Documents**");

**WHEREAS**, on January 23, 2019, Lender made a building loan (the "**Building Loan**") to Borrower in the original principal amount of up to Thirty-Five Million and Five Hundred Thousand and 00/100 Dollars ($35,500,000.00) (the "**Building Loan Amount**"), which Building Loan is evidenced by a Building Loan Note, dated as of January 23, 2019, made by Borrower to Lender (the "**Building Loan Note**") and secured by, *inter alia*, a Building Mortgage and Security Agreement in the amount of up to Thirty-Five Million and Five Hundred Thousand and 00/100 Dollars ($35,500,000.00), dated as of January 23, 2019, made by Borrower to Lender (the "**Building Loan Mortgage**"), as well as by the other loan documents executed and delivered to Lender in connection with the Building Loan, including, but not limited to, that certain Building Loan Agreement between Borrower and Lender (the "**Building Loan Agreement**"), as the same may be modified from time to time (collectively, including the Building Loan Note, the Building Mortgage and the Building Loan Agreement, the "**Building Loan Documents**");

**WHEREAS**, on January 23, 2019, Lender made a project loan (the "**Project Loan**", and together with the Land Loan and the Building Loan, the "**Loan**") to Borrower in the original principal amount of up to Three Million and 00/100 Dollars ($3,000,000.00) (the "**Project Loan Amount**", and together with the Land Loan Amount and the Building Loan Amount, collectively, the "**Loan Amount**"), which Project Loan is evidenced by a Project Loan Note, dated as of January 23, 2019, made by Borrower to Lender (the "**Project Loan Note**", and together with the Land Loan Note and the Building Loan Note, collectively, the "**Note**") and secured by, *inter alia*, a Project Mortgage and Security Agreement in the amount of up to Three Million and 00/100 Dollars ($3,000,000.00), dated as of January 23, 2019, made by Borrower to Lender (the "**Project Loan Mortgage**", and together with the Land Loan Mortgage and the Building Loan Mortgage, collectively, the "**Mortgage**"), as well as by the other loan documents executed and delivered to

1

Lender in connection with the Project Loan, including, but not limited to, that certain Project Loan Agreement between Borrower and Lender (the "**Project Loan Agreement**"), as the same may be modified from time to time (collectively, including the Project Loan Note, the Project Mortgage and the Project Loan Agreement, the "**Project Loan Documents**"; and together with the Land Loan Documents and the Building Loan Documents, collectively, the "**Loan Documents**");

**WHEREAS**, the Loan is further secured by, among other documents, (i) that certain Conditional Guaranty, dated January 23, 2019, by Amir Hasid and Nir Amsel (collectively, the "**Guarantor**") in favor of Lender (the "**Conditional Guaranty**"), (ii) that certain Debt Service and Carry Guaranty, dated January 23, 2019, by the Guarantor in favor of Lender (the "**Carry Guaranty**"), (iii) that certain Guaranty of Completion, dated January 23, 2019 by the Guarantor in favor of Lender (the "**Completion Guaranty**") and (iv) that certain Environmental Indemnity Agreement, dated as of January 23, 2019, by the Guarantor and the Borrower in favor of Lender (the "**Environmental Guaranty**"; together with the Conditional Guaranty, the Carry Guaranty, and the Completion Guaranty, each a "**Guaranty**" and collectively, the "**Guaranties**"), which Guaranties are included in the defined term "Loan Documents";

**WHEREAS**, capitalized terms used but not otherwise defined herein shall have the meanings afforded thereto in the Loan Documents;

**WHEREAS**, Borrower and Lender entered into that certain Loan Modification Agreement dated as of May 13, 2020 (the "**First Modification Agreement**"), wherein Borrower agreed to submit to Lender a Revised Budget (as defined in the First Modification Agreement) to facilitate Lender's determination of then-existing Deficiency Amounts (as defined in the First Modification Agreement) and to make certain monthly Deficiency Amount Deposits (as defined in the First Modification Agreement) commencing on July 15, 2020 and continuing through and including December 15, 2020. The First Modification Agreement is a "Loan Document" as defined herein;

**WHEREAS**, by letter dated July 15, 2020, Lender advised Borrower that it had reviewed the Revised Budget and determined the Deficiency Amount to be $2,937,571.00 on account of the Loan and the Mezzanine Loan (as defined below) (the "**Deficiency Amount**");

**WHEREAS**, by letter dated July 29, 2020, Borrower advised Lender that it did not agree with Lender's determination of the Deficiency Amount, does not believe that a Deficiency Amount is due and owing, and as a result did not make the Deficiency Amount Deposit to Lender on July 15, 2020, and requested that Lender agree to certain modifications of the Loan with respect to the existing "out of balance" condition, and Lender has agreed to do so in accordance with the terms and conditions of this Agreement.

**NOW, THEREFORE**, in consideration of the foregoing and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. Recitals. The above recitals are incorporated herein by reference.

2. Modifications.

2

(a)     Section 2(a) of the First Modification Agreement is hereby revised to modify the schedule and amounts of the Deficiency Amount Deposits set forth therein. The following text from Section 2(a) of the First Modification Agreement is hereby deleted: "Commencing on July 15, 2020, and continuing on the fifteenth (15th) of each month thereafter through and including December 15, 2020, Borrower shall deposit, or cause to be deposited with or on behalf of Lender, from Borrower's own funds, an amount equal to one-sixth (1/6th) of Lender's estimate of the Deficiency Amounts (each such monthly amount, a "**Deficiency Amount Deposit**") based upon the approved Revised Budget" and is hereby replaced with the following text: "No later than February 15, 2021, Borrower shall deposit with Lender from its own funds the sum of Five Hundred Thousand and 00/100 Dollars ($500,000.00) toward the Deficiency Amount, and no later than August 15, 2021, Borrower shall deposit with Lender from its own funds the sum of Five Hundred Thousand and 00/100 Dollars ($500,000.00) toward the Deficiency Amount (each such payment, a "**Deficiency Amount Deposit**"); however, Borrower shall have the one-time opportunity to demonstrate to Lender that it has further reduced the Revised Budget (the "**Cost Savings**"), as evidenced by a negative change order or otherwise, approved by Lender in its sole but reasonable discretion, at which time Lender shall reduce the total of the Deficiency Amount Deposits by the amount of such Cost Savings (the "**Reduced Deficiency Amount Deposits**"), and Borrower shall only be responsible for said Reduced Deficiency Amount Deposits (in lieu of the full Deficiency Amount Deposits), if any, to be paid in two equal installments on the dates set forth herein (or, if Borrower has already made a $500,000.00 Deficiency Amount Deposit on or before February 15, 2021, then the Cost Savings may be applied to the Reduced Deficiency Amount Deposit due on or before August 15, 2021)." Notwithstanding anything to the contrary set forth in the Loan Documents (including, without limitation, Sections 4.1(g) and 5.1(f) of each of the Building Loan Agreement and Project Loan Agreement), failure by Borrower to make payment of the Deficiency Amount Deposits (or the Reduced Deficiency Amount Deposits, if applicable) as and when required pursuant to this Section 2(a) shall constitute an immediate Event of Default under the Loan Documents.

(b)     Section 2(b) of the First Modification Agreement is hereby deleted in its entirety and replaced with the following Section 2(b) of this Agreement: In the event that Lender determines, in its sole but reasonable discretion, at any time after the date that is one (1) year after the date of this Agreement (but not before such date, unless an Event of Default under the Loan Documents has occurred beyond any grace periods, in which case Lender shall not be bound by the one-year standstill set forth in this sentence and may exercise any and all rights and remedies set forth in the Loan Documents), that the Deficiency Amount Deposits (or the Reduced Deficiency Amount Deposits, if applicable) set forth in and required to be paid by Borrower pursuant to Section 2(a) above will not be sufficient to complete construction at the Property and pay the remaining Deferred Origination Fee, then Lender shall notify Borrower of such determination and the amount by which the Deficiency Amount Deposits (or the Reduced Deficiency Amount Deposits, if applicable) set forth in Section 2(a) above are insufficient to complete construction at the Property and pay the remaining Deferred Origination Fee (such amount, the "**Subsequent Deficiency Amount**") and Borrower shall deposit with Lender the entirety of such Subsequent Deficiency Amount within fifteen (15) days of receipt of such notice; provided that the deposit by Borrower with Lender of the Subsequent Deficiency Amount shall in no way impact Borrower's obligation to make the Deficiency Amount Deposits (or the Reduced

3

Deficiency Amount Deposits, if applicable) as and when required pursuant to Section 2(a) hereof. Borrower shall not modify the Revised Budget, except in strict accordance with the Loan Documents. Except as specifically set forth herein, nothing herein shall diminish, modify or alter Borrower's obligation under the Loan Documents to make any and all other "out of balance" payments required by Lender in accordance with the Loan Documents.

      3. No Other Modification. Except as otherwise expressly provided herein, all other terms, covenants and obligations under the Loan Documents shall remain in full force and effect for the remaining term of the Loan, as modified herein.

      4. Further Assurances and Acknowledgment of Parties Regarding Obligations. Lender, Borrower and Guarantors hereby confirm, renew and extend the rights, titles, security interests, liens, powers and privileges existing under or by virtue of the Loan Documents until all of the indebtedness evidenced by the Note and secured by the Loan Documents has been paid in full, and agree that this Agreement shall not in any way or manner release, discharge, affect, change, modify or impair the debts, duties, obligations, liabilities, rights, titles, security interests, liens, powers and privileges existing by virtue of, arising under or in connection with, or relating to the Note and the Loan Documents, the purpose of this Agreement being simply to modify the indebtedness evidenced by the Note and the Loan Documents in accordance with the terms and provisions herein, and to continue and carry forward all of the rights, titles, security interests, liens, powers and privileges existing by virtue of the Loan Documents, each of which are hereby acknowledged by Borrower, Guarantors and Lender to be legal, valid and subsisting. In connection therewith, Borrower and Guarantors ratify and affirm the Loan Documents to which they are party, subject to the terms of this Agreement. Borrower, Guarantors and Lender acknowledge and agree that the Loan Documents validly evidence and secure the payment of the Note. Lender, Borrower and Guarantors agree that a novation is expressly denied and not intended to be effected, and except as amended or modified by this Agreement, the terms, provisions, conditions, rights, duties and obligations contained in the Loan Documents shall remain unchanged and unimpaired by this Agreement and are in full force and effect.

      5. Representations and Warranties. Borrower hereby represents and warrants to Lender as follows:

      (a)    This Agreement is a valid, binding and enforceable obligation of Borrower;

      (b)    Each of the statements and representations made by Borrower in this Agreement, the Note, the Mortgage and the Loan Documents is true and correct as of the date hereof;

      (c)    Borrower has no claims against the Lender;

      (d)    The Mortgage is a valid first (1st), second (2nd) and third (3rd), as applicable, lien on the Property;

      (e)    Borrower has no defenses to, or offsets against, any of its obligations under the Note, the Mortgage or the Loan Documents;

4

(f) To Borrower's knowledge, Lender has performed and satisfied all of its obligations under the Loan Documents through the date hereof;

(g) No documentary taxes or other similar taxes are payable in connection with the transaction evidenced by this Agreement;

(h) Borrower has not received notice that the Property is in violation of any applicable laws, rules, regulations or ordinances including, without limitation, any applicable environmental laws;

(i) Borrower has the capacity, right, power and authority to execute this Agreement and to perform its obligations hereunder and to consummate the transaction described herein, and to execute and deliver all documentation required by this Agreement; and

(j) Borrower shall, from and after the execution of this Agreement, execute and deliver to the Lender whatever additional documents, instruments, and agreements that the Lender may require, to the extent commercially reasonable, in order to vest or perfect the Loan Documents and the collateral granted therein more securely in the Lender and to otherwise give effect to the terms and conditions of this Agreement.

6. Reaffirmation by Guarantor. Guarantor agrees and acknowledges that each of the Guaranties are and shall remain in full force and effect and are enforceable against Guarantor upon the terms and conditions set forth therein. Guarantor hereby reaffirms each of the Guaranties, and its liabilities, waivers, agreements, covenants and obligations under the Guaranties. Guarantor confirms that the Guaranties are and shall remain fully enforceable, unimpaired and effective to guaranty the obligations set forth in such Guaranties, both before and after the execution and delivery of this Agreement. Guarantor has had the opportunity to review this Agreement and all other documents, instruments and agreements executed in connection with the modifications contemplated hereby and thereby (if any) and is entering into this Agreement with full knowledge of each of the foregoing. Guarantor further reaffirms that its obligations under the Guaranties are separate and distinct from Borrower's obligations under the Loan Documents.

7. Fees and Expenses. Borrower shall be responsible for the payment of all costs, fees and expenses incurred in connection with the preparation of this Agreement including, without limitation, Lender's reasonable attorneys' fees and expenses, title fees and premiums, recording fees costs, and appraisal fees, to the extent any are actually incurred. Payment of said costs, fees and expenses shall be a condition precedent to the effectiveness of this Agreement.

8. Legal Counsel. Borrower acknowledges that it has been advised by Lender to seek the advice of legal counsel in connection with the negotiation and preparation of this Agreement. If Borrower has chosen not to obtain legal representation, whether due to cost considerations or for other reasons, the lack of such representation shall not furnish Borrower with any defense to the enforcement of this Agreement by Lender.

9. Counterparts. To facilitate execution, this Agreement may be executed in as many

5

counterparts as may be convenient or required. It shall not be necessary that the signature and acknowledgment of each party, or that the signature and acknowledgment of all persons required to bind any party, appear on each counterpart. All counterparts shall collectively constitute a single instrument. It shall not be necessary in making proof of this Agreement to produce or account for more than a single instrument. It shall not be necessary in making proof of this Agreement to produce or account for more than a single counterpart containing the respective signatures and acknowledgment of, or on behalf of, each of the parties hereto. Further, facsimile or electronic (e.g. pdf format) copies of signatures shall be considered originals for purposes of binding the parties hereto.

10. Governing Law. Notwithstanding any provision of any previous documents to the contrary, this Agreement, the Note and the Loan Documents, as amended hereby, shall be governed by and construed and enforced in accordance with the laws of the State of New York (without regard to conflicts of law), except where federal law is applicable (including, without limitation, any applicable federal law preempting state laws).

10. Waiver of Claims and Release. AS A MATERIAL INDUCEMENT FOR LENDER TO ENTER INTO THIS AGREEMENT, BORROWER AND GUARANTOR (COLLECTIVELY AND INDIVIDUALLY, JOINTLY AND SEVERALLY, THE "**RELEASING PARTIES**"), DO HEREBY, NOW AND FOREVER, JOINTLY AND SEVERALLY RELEASE, RELINQUISH, WAIVE, DISCHARGE, COVENANT NOT TO SUE, ACQUIT, SATISFY AND FOREVER DISCHARGE LENDER, ANY AND ALL PARTIES PARTICIPATING AT ANY TIME IN THE HOLDING AND/OR ORIGINATING OF THE LOAN, AND THEIR RESPECTIVE PARENTS, SUBSIDIARIES, AFFILIATES, OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, REPRESENTATIVES, AGENTS, SERVICERS AND ATTORNEYS, AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS (COLLECTIVELY AND INDIVIDUALLY, JOINTLY AND SEVERALLY, THE "**RELEASED PARTIES**") FROM AND AGAINST ANY AND ALL LIABILITIES, CLAIMS, COUNTERCLAIMS, CROSS-CLAIMS, DEFENSES (INCLUDING, WITHOUT LIMITATION, AFFIRMATIVE DEFENSES), ACTIONS, OFFSETS, CAUSES OF ACTION, SUITS, CONTROVERSIES, AGREEMENTS, PROMISES, ASSERTIONS AND DEMANDS WHATSOEVER IN LAW OR IN EQUITY ACCRUING UP THROUGH (BUT NOT AFTER) THE DATE HEREOF, WHICH BORROWER AND/OR ANY OF THE OTHER RELEASING PARTIES EVER HAD, NOW HAS, OR HEREAFTER CAN, SHALL OR MAY HAVE AGAINST LENDER AND/OR ANY OF THE OTHER RELEASED PARTIES BASED UPON, ARISING OUT OF OR IN CONNECTION WITH, OR IN ANY WAY RELATING, DIRECTLY OR INDIRECTLY, TO THIS AGREEMENT OR ANY OF THE LOAN DOCUMENTS, THE PLEDGED INTERESTS AND/OR ANY RELATIONSHIP, COURSE OF CONDUCT OR DEALINGS OR NEGOTIATIONS BETWEEN BORROWER (OR ANY OF THE OTHER RELEASING PARTIES) AND LENDER (OR ANY OF THE OTHER RELEASED PARTIES) PERTAINING TO THE SUBJECT MATTER OF THIS AGREEMENT OR ANY OF THE LOAN DOCUMENTS (COLLECTIVELY, "**CLAIMS**") OF WHICH BORROWER HAS ACTUAL KNOWLEDGE. BORROWER AND ALL OTHER RELEASING PARTIES FURTHER EXPRESSLY ACKNOWLEDGE, COVENANT, REPRESENT AND WARRANT THAT THE FOREGOING RELEASE AND WAIVER IS INTENDED TO BE AS BROAD AND INCLUSIVE AS PERMITTED BY APPLICABLE LAW. IN ADDITION TO, AND WITHOUT

LIMITING THE GENERALITY OF THE FOREGOING, AND IN CONSIDERATION OF LENDER'S EXECUTION OF THIS AGREEMENT, EACH OF THE RELEASING PARTIES REPRESENTS AND WARRANTS TO LENDER AND THE OTHER RELEASED PARTIES THAT, AS OF THE DATE HEREOF, IT DOES NOT HAVE ANY CLAIM, COUNTERCLAIM, CROSS-CLAIM, DEFENSE, OBJECTION, OFFSET OR CLAIM OF OFFSET AGAINST LENDER OR ANY OF THE OTHER RELEASED PARTIES WITH RESPECT TO PAYMENT OF THE LOAN OBLIGATIONS WHEN AND AS THE SAME BECOME DUE AND PAYABLE. BORROWER AND EACH OF THE OTHER RELEASING PARTIES FURTHER ACKNOWLEDGES THAT LENDER SHALL HAVE NO OBLIGATION TO MAKE ANY FURTHER WAIVERS, CONCESSIONS OR FORBEARANCES, NOR TO MAKE ANY FURTHER MODIFICATIONS TO THE LOAN DOCUMENTS.

IN ACKNOWLEDGING AND AGREEING TO THIS AGREEMENT AND PROVIDING THE FOREGOING RELEASES AND WAIVERS, BORROWER AND THE OTHER RELEASING PARTIES HAVE NOT RELIED UPON ANY STATEMENT, REPRESENTATION OR PROMISE BY LENDER OR ANY OTHER RELEASED PARTY. FURTHERMORE, BORROWER AND THE OTHER RELEASING PARTIES EXPRESSLY STATE THAT THIS RELEASE IS FULLY AND FINALLY EFFECTIVE FOR ALL PURPOSES, ABSOLUTELY AND IMMEDIATELY UPON THE EXECUTION AND DELIVERY OF THIS AGREEMENT BY ALL PARTIES HERETO.

BORROWER AND THE OTHER RELEASING PARTIES ACKNOWLEDGE THAT THEY ARE ACKNOWLEDGING AND AGREEING TO THIS AGREEMENT WITH FULL KNOWLEDGE OF ANY AND ALL RIGHTS THEY MAY HAVE, AND THEY ARE NOT RELYING UPON ANY REPRESENTATIONS OR WARRANTIES MADE BY LENDER OR ANY OTHER RELEASED PARTY, AND BORROWER AND THE OTHER RELEASING PARTIES FULLY ACKNOWLEDGE THAT THEY HAVE CONDUCTED WHATEVER INVESTIGATIONS THEY DEEM NECESSARY TO ASCERTAIN ALL FACTS AND MATTERS RELATING TO THIS AGREEMENT. BORROWER AND THE OTHER RELEASING PARTIES REPRESENT AND WARRANT THAT THEY HAVE SECURED INDEPENDENT LEGAL ADVICE CONCERNING THIS AGREEMENT AND THE RELEASES AND WAIVERS CONTAINED HEREIN.

11. <u>Entire Agreement</u>. This Agreement shall be binding upon the Borrower and its respective employees, representatives, successors, and assigns, and shall inure to the benefit of the Lender and the Lender's successors and assigns. This Agreement and all documents, instruments, and agreements executed in connection herewith incorporate all of the discussions and negotiations between the Borrower and the Lender, either expressed or implied, concerning the matters included herein and in such other documents, instruments and agreements, any statute, custom, or usage to the contrary notwithstanding. No such discussions or negotiations shall limit, modify, or otherwise affect the provisions hereof. No modification, amendment, or waiver of any provision of this Agreement, or any provision of any other document, instrument, or agreement between the Borrower and the Lender shall be effective unless executed in writing by the party to be charged with such modification, amendment, or waiver.

12. <u>Illegality or Unenforceability</u>. Any determination that any provision or application of this Agreement is invalid, illegal, or unenforceable in any respect, or in any instance, shall not affect the validity, legality, or enforceability of any such provision in any other instance, or the validity, legality, or enforceability of any other provision of this Agreement.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**
**[SIGNATURE PAGE TO FOLLOW]**

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

<u>**BORROWER**</u>:

**4452 BROADWAY MAZAL LLC,**
a Delaware limited liability company

By: _____
Name: ERAN POLACK
Title: Authorized Signatory

[SIGNATURE PAGE CONTINUES]

9

**LENDER:**

**4452 BROADWAY 1 LLC,**
a Delaware limited liability company

By: _____
Name:   Brian Shatz
Title:   Authorized Signatory

**AGREED AND ACCEPTED**

**GUARANTOR:**

_____
AMIR HASID

_____
NIR AMSEL

**[ACKNOWLEDGMENT PAGE FOLLOWS]**

9

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK       )

On the 25 day of August in the year 2020, before me, the undersigned, a Notary Public in and for said State, personally appeared Erw pulac, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

ANDREA J. LAWRENCE
Notary Public, State of New York
No. 02LA6294071
Qualified in New York County
Commission Expires 12/16/2021

Notary Public

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK       )

On the 25th day of August in the year 2020, before me, the undersigned, a Notary Public in and for said State, personally appeared Brian Shatz, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

TOM KORDENBROCK
Notary Public, State of New York
No. 01KO6371146
Qualified in New York County
Commission Expires February 20, 2022

11