UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:                                                    Chapter 11

**4452 BROADWAY MAZAL LLC,**                               Case No.: 23-11832 (LGB)

                                    Debtor.
-----------------------------------------------------------X

## DISCLOSURE STATEMENT FOR
## PLAN OF REORGANIZATION OF 4452 BROADWAY MAZAL LLC

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OF 4452 BROADWAY MAZAL LLC. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPLETION OR AMENDMENT.**

                         **LEECH TISHMAN**
                         **ROBINSON BROG, PLLC**
                         **Attorneys for the Debtor**
                         875 Third Avenue
                         New York, New York 10022
                         Tel. No.: 212-603-6300
                         Fred B. Ringel, Esq.
                         Clement Yee, Esq.

New York, New York
January 17, 2024

1

## DISCLAIMER

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT ("**DISCLOSURE STATEMENT**") IS INCLUDED HEREIN FOR THE PURPOSES OF SOLICITING ACCEPTANCES OF THE CHAPTER 11 PLAN OF REORGANIZATION OF 4452 BROADWAY MAZAL LLC DATED JANUARY [], 2024 (AS MAY BE AMENDED, MODIFIED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN"), AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.[1]  A COPY OF THE PLAN IS ANNEXED HERETO AS **EXHIBIT A**. NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN MAY BE MADE EXCEPT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE.

**ALL HOLDERS OF CLAIMS ARE ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT  OR REJECT THE PLAN. IN PARTICULAR, ALL HOLDERS OF CLAIMS SHOULD CAREFULLY READ AND CONSIDER FULLY THE RISK FACTORS SET FORTH IN SECTION VI (CERTAIN OTHER FACTORS) OF THIS DISCLOSURE STATEMENT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THE PLAN AND THIS DISCLOSURE STATEMENT. IN THE EVENT OF ANY CONFLICTS BETWEEN THE DESCRIPTIONS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN, THE TERMS OF THE PLAN GOVERN.**

THE DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(b) AND NOT NECESSARILY IN ACCORDANCE WITH OTHER NON-BANKRUPTCY LAW.

CERTAIN STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING WITH RESPECT TO PROJECTED CREDITOR RECOVERIES AND OTHER FORWARD-LOOKING STATEMENTS, ARE BASED ON ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES. FORWARD-LOOKING STATEMENTS ARE PROVIDED IN THIS DISCLOSURE STATEMENT PURSUANT TO THE SAFE HARBOR ESTABLISHED UNDER THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995 AND

---

[1] Unless otherwise expressly set forth herein, capitalized terms used but not otherwise herein defined have the same meanings ascribed to such terms in the Plan.

SHOULD BE EVALUATED IN THE CONTEXT OF THE ESTIMATES, ASSUMPTIONS, UNCERTAINTIES, AND RISKS DESCRIBE HEREIN.

AS TO CONTESTED MATTERS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT WILL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT ALSO WILL NOT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTOR AND DEBTOR IN POSSESSION IN THE DEBTOR'S CHAPTER 11 CASE. THE DEBTOR URGES EACH HOLDER OF A CLAIM OR INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN ON SUCH HOLDER'S CLAIM OR INTEREST.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF.

# I.

## INTRODUCTION

On November 16, 2023, 4452 Broadway Mazal LLC  commenced with the United States Bankruptcy Court for the Southern District of New York a voluntary case pursuant to chapter 11 of title 11 of the United States Code. The Debtor's chapter 11 case is being administered under the caption In re 4452 Broadway Mazal LLC, Case No. 23-11832 (LGB)

On _____, 2024, the Bankruptcy Court approved this Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable a hypothetical holder of an Allowed Claim to make an informed judgment whether to accept or reject the Plan. APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.

The purpose of this Disclosure Statement is to provide holders of Claims entitled to vote to accept or reject the Plan with adequate information about (i) the Debtor's business and certain historical events, (ii) the Chapter 11 Case, (iii) the Plan, (iv) the rights of holders of Claims and Interests under the Plan, and (v) other information necessary to enable each Holder of a Claim entitled to vote on the Plan to make an informed judgment as to whether to vote to accept or reject the Plan. Holders of Interests are not entitled to vote on the Plan (see discussion at Section V of the Disclosure statement).

Pursuant to section 1125 of the Bankruptcy Code, the Debtor submits this Disclosure Statement to all holders of Claims against the Debtor entitled to vote on the Plan to provide information in connection with the solicitation of votes to accept or reject the Plan. The Disclosure Statement is also available to all holders of Claims against and Interests in the Debtor for informational purposes, including detailing the impact the Plan will have on such holders' Claims and Interests. The Disclosure Statement is organized as follows:

- Section I includes certain general information.

- Section II provides an overview of the Debtor's business and background

- Section III [INTENTIONALLY OMITTED].

- Section IV contains a summary of the Plan.

- Section V describes certain factors affecting the Debtor.

4874-7783-9260, v. 8

- Section VI discusses certain U.S. federal income tax consequences of the Plan.

- Section VII addresses confirmation of the Plan.

-  Section VIII concludes this Disclosure Statement and recommends that creditors entitled to vote accept the Plan.

## A.    <u>VOTING PROCEDURES</u>

As set forth in more detail in Section IV.B of this Disclosure Statement, certain holders of Claims are entitled to vote to accept or reject the Plan. For each holder of a Claim entitled to vote, the Debtor has enclosed, along with a copy of the Disclosure Statement, among other things, a ballot and voting instructions regarding how to properly complete the ballot and submit a vote with respect to the Plan. Holders of more than one Claim will receive an individual ballot for each Claim. The individual ballots must be used to vote each individual Claim. For detailed voting instructions, please refer to the specific voting instructions and the ballot enclosed with this Disclosure Statement.

All completed ballots must be actually received by the ballot collector at the following address no later than 4:00 p.m. (Eastern Time) on _____, 2024 ("Voting Deadline").

Via Regular Mail, Overnight Couriers, or Hand Delivery:

4452 Broadway Mazal Balloting
c/o Leech Tishman Robinson Brog, PLLC
875 Third Avenue, 9th Floor
New York, NY 10022
ATTN: Nathanael F. Meyers

If you are holder of a Claim that is entitled to vote on the Plan and you did not receive a ballot, received a damaged ballot or lost your ballot, or if you have any questions concerning the Disclosure Statement, the Plan, or the procedures for voting with respect to the Plan, please contact Nathanael F. Meyers at (212)-603-6363 or email (nfm@robinsonbrog.com).

> THE  BALLOT COLLECTOR WILL NOT COUNT ANY BALLOTS RECEIVED AFTER THE VOTING DEADLINE.

5

## B.    DISCLOSURE STATEMENT EXHIBITS

The following are exhibits to this Disclosure Statement.

- EXHIBIT A – Plan of Reorganization

- EXHIBIT B – Liquidation Analysis

## C.    THE DEBTOR'S PROFESSIONALS

The Debtor has retained the following professionals pursuant to separate orders of the Bankruptcy Court: (i) Leech Tishman Robinson Brog, PLLC ("LTRB"), as Reorganization Counsel to the Debtor and (ii) Hilco Real Estate, LLC as real estate broker to the Debtor.

## D.    IMPORTANT DATES

Please take note of the following important dates and deadlines with respect to the Debtor's Plan:

| | |
|---|---|
| Deadline to file and serve any objection or response to the Plan ("Plan Objection Deadline") | _____, 2024 at 4:00 p.m. (prevailing Eastern Time) |
| Deadline for completed ballots to be received by the Ballot Collector ("Voting Deadline") | _____, 2024 at 4:00 p.m. (prevailing Eastern Time) |
| Scheduled date and time for the commencement of the hearing to consider confirmation of the Plan ("Confirmation Hearing") | _____, 2024 at 10:00 a.m. (prevailing Eastern Time) |

## E.    BRIEF OVERVIEW OF THE PLAN [2]

The Plan provides for either the (a) Refinancing Transaction where the Plan will be implemented through the refinancing of the Debtor's obligations and the resulting Refinancing Proceeds will fund payments under the Plan, (b) Joint

---

[2] This summary is qualified in its entirety by reference to the Plan. Statements as to the rationale underlying the treatment of Claims and Equity Interests under the Plan are not intended to, and will not, waive, compromise or limit any rights, claims, defenses, or causes of action in the event that the Plan is not confirmed. You should read the Plan in its entirety before voting to accept or reject the Plan.

6

Venture Transaction where the Plan will be implemented through the transfer of the Property to the Joint Venturer and the resulting Joint Venture Proceeds will fund payments under the Plan, or (c) if the Debtor does is unable to refinance its debts or enter into Joint Venture Agreement, then an Auction will be held pursuant to the Bid Procedures and the resulting Sale Proceeds will fund payments under the Plan.

## F.    SUMMARY OF DISTRIBUTIONS AND VOTING ELIGIBILITY

The following summary table briefly outlines the classification and treatment of Claims against and Interests in the Debtor under the Plan, and the voting eligibility of the holders of such Claims and Interests. As set forth in the Plan, the classification of Claims and Interests set forth herein will apply. The following summary table is qualified in its entirety by reference to the full text of the Plan.

| Class | Designation | Treatment | Approx. Allowed Amount[3] | Approximate Percentage Recovery[4] | Entitled to Vote |
|---|---|---|---|---|---|
| 1 | Secured Tax Claim | Unimpaired | $466,923.98 | 100% | No (presumed to accept) |
| 2 | Mortgage Claim | Impaired | $30,037,933.43 | unknown | Yes |
| 3 | Other Secured Claims | Impaired | $1,706,963.60 | unknown | Yes |
| 4 | General Unsecured Claims | Impaired | $1,879,838.05 | unknown | Yes |

---

[3] The amounts set forth herein are estimates based upon the Debtor's books and records as of the Commencement Date, which was November 16, 2023. Actual allowed amounts will depend on, among other things, final reconciliation and resolution of all Claims, and the negotiation of cure amounts, if any. Consequently, the actual allowed amounts may vary from the approximate amounts set forth herein. Secured Claims do **NOT** include post-petition interest and other amounts allowable pursuant to the agreement between the parties as provided for under section 506 of the Bankruptcy Code.

[4] The approximate percentage recovery for each Class set forth in this Disclosure Statement is based upon certain assumptions that are subject to change, including completion of the Auction, if needed under the terms of the Plan. A detailed discussion of the analysis underlying the estimated recoveries, including the assumptions underlying such analysis, is set forth in Section IV.D and the Liquidation Analysis annexed to this Disclosure Statement as Exhibit B.

4874-7783-9260, v. 8

| Class | Designation | Treatment | Approx. Allowed Amount[3] | Approximate Percentage Recovery[4] | Entitled to Vote |
|---|---|---|---|---|---|
| 5 | Existing Equity Interests | Impaired | n/a | unknown | Yes |

Section IV.B of this Disclosure Statement provides a more detailed description of the treatment of Claims and Interests under the Plan.

Pursuant to the provisions of the Bankruptcy Code, only those holders of Claims or Interests in Classes that are impaired under a plan of reorganization and that are not deemed to have rejected the plan are entitled to vote to accept or reject such proposed plan. Classes of Claims or Interests in which the holders of Claims are unimpaired under a proposed plan are deemed to have accepted such proposed plan and are not entitled to vote to accept or reject the Plan. Classes of Claims or Interests in which the holders of Claims receive no distribution under a proposed plan are deemed to have rejected such proposed plan and are not entitled to vote to accept or reject the Plan.

## G.   CONFIRMATION UNDER SECTION 1129(B)

If a Class of Claims entitled to vote on the Plan rejects the Plan, the Debtor reserves the right to amend the Plan or request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code or both. In addition, with respect to the Classes that are deemed to have rejected the Plan, the Debtor intends to request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code.

Section 1129(b) permits the confirmation of a chapter 11 plan notwithstanding the rejection of such plan by one or more impaired classes of claims or interests. Under section 1129(b), a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and reasonable" with respect to each rejecting class. A more detailed description of the requirements for confirmation of a nonconsensual plan is set forth in Section VII of this Disclosure Statement.

## H.   CONFIRMATION HEARING

Pursuant to section 1128 of the Bankruptcy Code, the Confirmation Hearing will be held on _____, 2024 at 10:00 a.m. (Eastern Time) before the Honorable Lisa G. Beckerman at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004. Objections and

8

responses to confirmation of the Plan, if any, must be served and filed as to be received on or before the Plan Objection Deadline _____, 2024 at 4:00 p.m. (Eastern Time), in the manner described in the order approving this Disclosure Statement ("**Disclosure Statement Order**") and Section VII.B of this Disclosure Statement. The Confirmation Hearing may be adjourned from time to time without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

## II.

## OVERVIEW OF THE DEBTOR'S OPERATIONS AND BACKGROUND

The Debtor is the owner of the real property and improvements located at 4452 Broadway, New York, New York 10040 (Block 2170, Lots 62 and 400) ("Property").  The Property is located in the Washington Heights neighborhood of Manhattan.  Prior to the Debtor's filing, the Debtor was in the process of developing the Property into a mixed-use property consisting of modern retail spaces and luxury condominiums.

On January 23, 2019, the Debtor executed, acknowledged and delivered to Mortgage Lender an Amended and Restated Note (the "Land Loan Note"), bearing said date, wherein and whereby it was covenanted and agreed that it would repay Mortgage Lender, in the principal amount of $10,000,000.00, with interest thereon as set forth in the Note in connection with a commercial loan (the "Land Loan"). On January 23, 2019, to secure repayment of the indebtedness evidenced by the Land Loan Note, the Debtor executed, acknowledged, and delivered to Mortgage Lender an Amended and Restated Mortgage and Security Agreement (the "Land Loan Mortgage"), encumbering the Property, which was recorded on January 30, 2019 in the City Register of the City of New York, New York County (the "Register's Office") under CRFN: 2019000034948.  On January 23, 2019, as further security for the Land Loan Note, Amir Hasid and Nir Amsel (collectively, the "Guarantors" and together with the Debtor, collectively, the "Borrower Parties"), individually, executed, acknowledged, and delivered to Mortgage Lender a Conditional Guaranty (the "Conditional Guaranty"), guaranteeing all obligations under the Land Loan to Mortgage Lender in the principal amount of $10,000,000.00 and a Debt Service and Carry Guaranty (the "Debt Service and Carry Guaranty" and together with the Conditional Guaranty, the "Land Loan Guarantees", and together with the Land Loan Note, the Land Loan Mortgage, and all other documents executed in connection with the Land Loan, collectively, the "Land Loan Documents"), guaranteeing all obligations under the Land Loan to Mortgage Lender in the principal amount of $10,000,000.00.

4874-7783-9260, v. 8

On January 23, 2019, the Debtor executed, acknowledged and delivered to Mortgage Lender a Building Loan Note (the "Building Loan Note"), bearing said date, wherein and whereby it was covenanted and agreed that it would repay Mortgage Lender, in the principal amount of $35,500,000.00 with interest thereon as set forth in the Note in connection with a commercial loan (the "Building Loan"). On January 23, 2019, to secure repayment of the indebtedness evidenced by the Building Loan Note, the Debtor executed, acknowledged, and delivered to Mortgage Lender a Building Mortgage and Security Agreement (the "Building Loan Mortgage"), encumbering the Property, which was recorded on January 30, 2019 in the Register's Office under CRFN: 2019000034951. On January 23, 2019, as further security for the Loan, the Debtor executed, acknowledged, and delivered to Mortgage Lender a Building Loan Agreement (the "Building Loan Agreement"). On January 23, 2019, as further security for the Building Loan Note, the Guarantors individually, executed, acknowledged, and delivered to Mortgage Lender a Conditional Guaranty (the "Conditional Guaranty"), guaranteeing all obligations under the Building Loan to Mortgage Lender in the principal amount of $35,500,000.00 and a Debt Service and Carry Guaranty (the "Debt Service and Carry Guaranty" and together with the Conditional Guaranty, the "Building Loan Guarantees" and together with the Building Loan Note, the Building Loan Mortgage, the Building Loan Agreement and all other documents executed in connection with the Building Loan, collectively, the "Building Loan Documents"), guaranteeing all obligations under the Land Loan to Mortgage Lender in the principal amount of $35,500,000.

On January 23, 2019, the Debtor executed, acknowledged and delivered to Mortgage Lender a Project Loan Note (the "Project Loan Note"), bearing said date, wherein and whereby it was covenanted and agreed that it would repay Mortgage Lender, in the principal amount of $3,000,000.00, with interest thereon as set forth in the Note in connection with a commercial loan (the "Project Loan"). On January 23, 2019, to secure repayment of the indebtedness evidenced by the Project Loan Note, the Debtor executed, acknowledged, and delivered to Mortgage Lender a Project Mortgage and Security Agreement (the "Project Loan Mortgage"), encumbering the Property, which was recorded on January 30, 2019 in the Register's Office under CRFN: 2019000034954. On January 23, 2019, as further security for the Project Loan Note, the Guarantors, executed, acknowledged, and delivered to Mortgage Lender a Conditional Guaranty (the "Conditional Guaranty"), guaranteeing all obligations under the Project Loan to Mortgage Lender in the principal amount of $3,000,000.00 and a Debt Service and Carry Guaranty (the "Debt Service and Carry Guaranty" and together with the Conditional Guaranty, the "Project Loan Guarantees", and together with the Project Loan Note, the Project Loan Mortgage, and all other documents executed in connection with the Project Loan, collectively, the "Project Loan Documents), guaranteeing all obligations under the Project Loan to Mortgage Lender in the principal amount of $3,000,000.00

10

guaranteeing all obligations under the Project Loan to Mortgage Lender in the principal amount of $3,000,000.00.

On or about May 13, 2020, the Borrower Parties and Mortgage Lender entered into a Loan Modification Agreement (the "First Loan Modification Agreement"). On or about August 25, 2020, the Borrower Parties and Mortgage Lender entered into a Second Loan Modification Agreement (the "Second Loan Modification Agreement"). On or about July 11, 2022, the Borrower Parties and Mortgage Lender entered into a Forbearance Agreement (the "Forbearance Agreement", and together with the Land Loan Documents, the Building Loan Documents, the Project Loan Documents, the First Loan Modification Agreement, Second Loan Modification Agreement, and all other documents executed in connection with the Loans, collectively, the "Loan Documents"), which provided that the deed to the Property would be held in escrow by Mortgage Lender's counsel so long as the Debtor did not default under the Forbearance Agreement.

The Debtor failed to comply with the terms and provisions of the Loan Documents by, among other things: (i) the failure to discharge and/or bond the following mechanic's liens: (a) lien in the amount of $52,643.00, filed by Hakeem Maintenance Services, (b) lien in the amount of $1,292,613.51, filed by Broadway Construction Group Inc., (c) lien in the amount of $31,595.00, filed by AMR Electrical Contracting Corp., and (d) lien in the amount of $32,982.44, filed by Able Equipment Rental Inc. against the Property (the "Mechanic's Lien Default") and (ii) the failure to pay the full indebtedness when it became due on the Extended Maturity Date of January 22, 2022 (the "Maturity Default"). In addition, the Debtor defaulted under the terms of the Forbearance Agreement by failing to repay the Loan on or before the Termination Date (as defined in the Forbearance Agreement) (the "Forbearance Default", and together with the Maturity Default and the Mechanic's Lien Default, collectively, the "Defaults")

On November 16, 2023, 500 Summit Avenue Mazal LLC, an affiliate of the Debtor, filed its own chapter 11 case. 500 Summit's mortgage lender is also an affiliate of the Mortgage Lender. Out of an abundance of caution and to avoid the recordation of the Deed in favor of the Mortgage Lender, the Debtor filed its chapter 11 case so a transfer of title would not take place and adversely impact the Debtor's ability to reorganize. Due to the lack of funding, *inter alia,* as a consequence of the COVID-19 pandemic, development of the Property is currently suspended.

### III.
### [INTENTIONALLY OMITTED]

11

4874-7783-9260, v. 8

IV.

<u>THE PLAN</u>

## A.    INTRODUCTION

This section of the Disclosure Statement summarized the Plan, a copy of which is annexed as Exhibit A hereto. This summary is qualified in its entirety by reference to the provisions of the Plan, which provisions shall control in the event of any discrepancy with the descriptions contained in the Disclosure Statement.

In general, a chapter 11 plan divides claims and equity interests into separate classes, specifies the property that each class is to receive under the Plan, and contains other provisions necessary to implement the Plan.

Under the Bankruptcy Code, "claims" and "equity interests," rather than "creditors" and "equity holders," are classified because creditors and equity holders may hold claims and equity interests in more than one class.

Statements as to the rationale underlying the treatment of claims and equity interests under the Plan are not intended to, and will not, waive, compromise or limit any rights, claims or causes of action in the event the Plan is not confirmed.

THE DEBTOR URGES YOU TO READ THE PLAN IN ITS ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## B.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

One of the key concepts under the Bankruptcy Code is that only claims that are "allowed" may receive distributions under a chapter 11 plan. This term is used throughout the Plan and the descriptions below.

In general, an "allowed" claim or an "allowed" equity interest simply means that the Debtor agrees, or in the event of a dispute, that the Bankruptcy Court determines, that the claim or equity interest, and the amount thereof, is in fact a valid obligation of the debtor. Section 502(a) of the Bankruptcy Code provides that a timely filed claim or equity interest is automatically "allowed" unless the debtor or other party in interest objects. However, section 502(b) of the Bankruptcy Code specifies certain claims that may not be "allowed" in bankruptcy even if a proof of claim is filed. These include, but are not limited to, claims that are unenforceable under the governing agreement between a debtor and the claimant or under applicable non-bankruptcy law, claims for unmatured interest, property tax claims

12

in excess of the debtor's equity in the property, claims for services that exceed their reasonable value, real property lease and employment contract rejection damages in excess of specified amounts, late-filed claims, and contingent claims for contribution and reimbursement. In addition, Bankruptcy Rule 3003(c)(2) prohibits the allowance of any claim or equity interest that either is not listed on the debtor's schedules or is listed as disputed, contingent or unliquidated, if the holder has not filed a proof of claim or equity interest before the established deadline.

The Bankruptcy Code requires, for purposes of treatment and voting, that a chapter 11 plan divides the different claims against, and equity interests in, the debtor into separate classes based upon their legal nature. Claims of a substantially similar legal nature are not necessarily classified together, nor are equity interests of a substantially similar legal nature necessarily classified together. Because an entity may hold multiple claims and/or equity interests which give rise to different legal rights, the "claims" and "equity interests" themselves, rather than their holders, are classified.

Under a chapter 11 plan, the separate classes of claims and equity interests must be designated either as "impaired" (affected by the Plan) or "unimpaired" (unaffected by the Plan). If a class of claims is "impaired," the Bankruptcy Code affords certain rights to the holders of such claims, such as the right to vote on the Plan, and the right to receive, under the chapter 11 plan, no less value than the holder would receive if the debtor were liquidated in a case under chapter 7 of the Bankruptcy Code.

Under section 1124 of the Bankruptcy Code, a class of claims or interests is "impaired" unless the Plan (i) does not alter the legal, equitable and contractual rights of the holders, or (ii) irrespective of the holders' acceleration rights, cures all defaults (other than those arising from the debtor's insolvency, the commencement of the case or nonperformance of a nonmonetary obligation), reinstates the maturity of the claims or interests in the class, compensates the holders for actual damages incurred as a result of their reasonable reliance upon any acceleration rights, and does not otherwise alter their legal, equitable, and contractual rights.

Pursuant to section 1126(f) of the Bankruptcy Code, holders of unimpaired claims or interests are "conclusively presumed" to have accepted the Plan. Accordingly, their votes are not solicited. Under the Plan, the following classes are unimpaired, and therefore, the holders of such Claims are "conclusively presumed" to have voted to accept the Plan: Class 1 (NYC Secured Tax Claim).

Under certain circumstances, a class of claims or equity interests may be deemed to reject a plan. For example, a class is deemed to reject a plan under section 1126(g) of the Bankruptcy Code if the holders of claims or equity interests in

13

such class do not receive or retain property under the Plan on account of their claims or equity interests. In this Plan, no class is conclusively presumed to have rejected the Plan.

## C.   UNCLASSIFIED CLAIMS

1. Administrative Expense Claims.

Administrative Expense Claims are the actual and necessary costs and expenses of administration during the Chapter 11 Case pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b) or 507(a)(2) of the Bankruptcy Code.

Except to the extent that a holder of an Allowed Administrative Expense Claim and the Debtor agree to different treatment, the Debtor shall pay to each holder of an Allowed Administrative Expense Claim, Cash in an amount equal to such Claim (plus statutory interest on such claim, if applicable), on or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor shall be paid by the Debtor in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court (including the Bar Date Order), requests for payment of Administrative Expense Claims, other than requests for payment of Fee Claims, must be filed and served on the Debtor no later than the Administrative Expense Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.

Holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims and that do not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtor's Estate or their property, and the Administrative Expense Claims shall be deemed compromised, settled, and released as of the Effective Date. The Debtor must file and serve objections to Administrative Expense Claims on or before the Administrative Expense Claims Objection Bar Date.

4874-7783-9260, v. 8

2. Fee Claims

All Entities seeking an award by the Bankruptcy Court of Fee Claims shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date. No later than fifteen (15) days prior to the Effective Date, all entities holding claims for Fee Claims shall serve upon the Debtor a notice of the estimated amount of their unpaid Fee Claim (which estimate shall also include an estimate of fees through 30 days after the Effective Date) and, no later than ten (10) days before the Effective Date, the Debtor shall segregate into an Estimated Professional Fee Escrow the amounts which are necessary to pay the amount of such Fee Claim, in full subject to allowance by the Bankruptcy Court (i) upon the later of (A) the Effective Date and (B) the date upon which "he order relating to any such Allowed Fee Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtor, the Post-Effective Date Debtor.  The Debtor or Post-Effective Date Debtor, as applicable, is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

The Debtor is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

3. Priority Tax Claims.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the election of the Debtor (i) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date, the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and the date such Allowed Priority Tax Claim is due and payable in the ordinary course or (ii) such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

4. Toggle Plan

This plan is a "toggle" plan meaning that if the Debtor is unable to close a transaction for a Refinancing Transaction, Joint Venture Transaction, or a Sale

15

Transaction to any party (other than the holder of the Mortgage Claim, then the plan "toggles" to an auction sale after marketing of the property starting on or about January 16, 2024.  The plan toggling to an auction means that the results of the auction may result in a reduced or no distribution to junior creditors. See section 4.D.1 and 2 below.

## D.    CASH SALE AT AUCTION VS CREDIT BID SALE AT AUCTION – POTENTIAL IMPACT ON CREDITOR RECOVERIES

1. Potential Impact of Credit Bid on Creditor Recoveries.

In accordance with the Bid Procedures, when approved by the Court, the Mortgage Lender (or its assignee, nominee, or designee), although under no obligation to do so, has the right to credit bid up the full amount of its Allowed Claim in connection with the sale of the Property as of the date of the Auction. Should the Mortgage Lender (or its assignee, nominee or designee) be the Successful Bidder at the Auction, there would be no recovery to classes of Claims and Interests junior to the Mortgage Lender except for the General Unsecured Claims which shall receive a distribution of $75,000 to be paid by the Mortgage Lender.[5]

2. Impact of either Refinancing Transaction, Joint Venture Transaction, or Sale Transaction on Creditor Recoveries.

In contrast with the recoveries for creditors outlined in section IV.D.1 above, if the Plan is funded by either the Restructuring Transaction, Joint Venture Transaction or Sale Transaction (Property sold at the Auction for Cash without any of the creditors holding Secured Claims credit bidding), the impact on creditor recoveries would depend on whether the amount of the cash Restructuring Proceeds, Joint Venture Proceeds or Sale Proceeds are sufficient to pay all Secured Claims in full or not. Claims are paid in order of absolute priority so that senior Claims must be paid in full before junior Claims can receive any recovery.

## E.    CLASSIFICATION OF CLAIMS AND INTERESTS

All of the potential classes for the Debtor are set forth in the Plan.

---

[5] The Bid Procedures provide that credit bidders are required to provide Cash to pay Claims senior to the claim being credit bid  such as the Secured Tax Claim and Administrative Claims.

4874-7783-9260, v. 8

### Secured Tax Claim (Class 1)

(a)    *Classification*: Class 1 consists of the Allowed Secured Tax Claim.

(b)    *Treatment*: The holder of the Secured Tax Claim shall receive, in full and final satisfaction of such Claim, Cash from either the Refinancing Proceeds, Joint Venture Proceeds, or Sale Proceeds in an amount equal to such Claim, payable at Closing.

(c)    *Voting*: Class 1 is Unimpaired, and the holder of the Secured Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holder of the Secured Tax Claim is not entitled to vote to accept or reject the Plan.

### Mortgage Claim (Class 2)

(a)    *Classification*: Class 2 consists of the Mortgage Claim. The Mortgage Claim is a Secured Claim pursuant to the Note, which is secured by the Mortgage and constitutes a first-priority security interest on the Property.

(b)    *Treatment*: The holder of the Mortgage Claim shall receive a gross amount of $25,500,000 in Cash at the Closing from the Refinancing Proceeds or Joint Venture Proceeds on or before April 15, 2024. However, if the Mortgage Lender does not receive $25,500,000 in Cash at the Closing from the Refinancing Proceeds or Joint Venture Proceeds on or before April 15, 2024 then Mortgage Lender is entitled to: (i) receive the full amount of the Mortgage Claim as of the Auction date under the Sale Transaction if sold to a Purchaser (that is not the Mortgage Lender, or its assignee, nominee, or designee) under the Sale Transaction or (ii) if the Mortgage Lender (or its assignee, nominee, or designee) is the Purchaser pursuant to a credit bid, the Mortgage Lender shall receive the Property.

(c)    *Voting*: Class 2 is Impaired, and holder of the Mortgage Claim in Class 2 is entitled to vote to accept or reject the Plan.

### Other Secured Claims (Class 3)

(a)    *Classification*: Class 3 consists of Other Secured Claims. To the extent that Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 3.

(b)    *Treatment*: Except to the extent that a holder of an Allowed Other Secured Claim against the Debtor has agreed to less favorable treatment of such Claim, each holder of an Allowed Other Secured Claim shall receive on the

17

Effective Date, if either the Refinancing Proceeds, Joint Venture Proceeds, or Sale Proceeds exceed the aggregate amount of all senior Claims, the remaining Joint Venture Proceeds or Sale Proceeds, if any, after payment in full of all senior Claims including the Mortgage Claim, Allowed Administrative Claims (including Professional Fees), Allowed Administrative Tax Claims, Allowed Priority Claims, and Allowed Claims in Classes 1 through 2.

(c)    *Voting*: Class 3 is Impaired, and the holders of Other Secured Claims are entitled to vote to accept or reject the Plan.

### General Unsecured Claims (Class 4)

(a)    *Classification*: Class 4 consists of General Unsecured Claims against the Debtor.

(b)    *Treatment*: Except to the extent that a holder of an Allowed General Unsecured Claim against the Debtor has agreed to less favorable treatment of such Claim, each holder of an Allowed General Unsecured Claim shall receive on the Effective Date, if the Refinancing Proceeds, Joint Venture Proceeds, or Sale Proceeds exceed the aggregate amount of all senior Claims, its Pro Rata share of the remaining Joint Venture Proceeds or Sale Proceeds, if any, after (i) payment in full of all senior Claims including the Allowed Administrative Claims (including Professional Fees), Allowed Administrative Tax Claims, Allowed Priority Claims, and Allowed Claims in Classes 1 through 3. If the Mortgage Lender (or its assignee, nominee or designee) is the Purchaser based on a credit bid, the Mortgage Lender will provide a distribution of $75,000.00 to holders of Claims in Class 4, which shall be shared by holders of General Unsecured Claim on a pro rata basis.

(c)    *Voting*: Class 4 is Impaired, and the holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

### Existing Equity Interests (Class 5)

(a)    *Classification*: Class 5 consists of Existing Equity Interests in the Debtor.

(b)    *Treatment*: The holders of Existing Equity Interests will receive on the Effective Date their Pro-Rata share of the remaining Refinancing Proceeds, Joint Venture Proceeds, or Sale Proceeds, if any, after payment in full of all senior Claims including Allowed Administrative Claims (including Professional Fees), Allowed Administrative Tax Claims, Allowed Priority Claims, and Allowed Claims in Classes 1 through 4.

18

(c)    *Voting*: Class 5 is Impaired by the Plan, and the holders of the Allowed Existing Equity Interests are entitled to vote to accept or reject the Plan.

## E.   MEANS FOR IMPLEMENTATION

### 1.  Implementation of the Plan.

The Mortgage Lender has agreed to accept a gross amount of $25,500,000.00 on account of its Mortgage Claim so long as such payment is made by April 15, 2024. If the Debtor is able to refinance its obligations and fund the Refinancing Proceeds or procure a Joint Venturer who can fund the Joint Venture Proceeds, then the Plan will be funded by either the Refinancing Proceeds or Joint Venture Proceeds and such proceeds will be made available for distribution to Creditors under the Plan.

If the Debtor is unable to obtain refinancing or find a Joint Venturer with sufficient net proceeds as required under the Plan, prior to the Effective Date, but no later than April 15, 2024, the Property will be sold at Auction to be held as soon as practicable after the Effective Date. In the event the Purchaser utilizes a credit bid, that bid may be assigned to any of Purchaser's nominee assign or designee. In the event of a credit bid for the Property, the party making the credit bid will fund Claims senior to those of the entity making the credit bid which will be satisfied by a Cash payment under the terms of this Plan. If there is no credit bid for the Property, the Property will be purchased only by a Cash bid at the Auction under the Bid Procedures approved by the Court. The Cash remaining after payment of the expenses of the Sale Transaction shall be made available for distribution to Creditors under the Plan. Notwithstanding the foregoing, Mortgage Lender (or its assignee, designee or nominee), although under no obligation to do so, is entitled to credit bid up to and including the total amount of its Allowed Claim as of the Auction for the Property pursuant to 11 U.S.C. § 363(k). In the event Mortgage Lender is the successful bidder at the Auction, Mortgage Lender may assign its bid to its nominee assign or designee. Any Broker's fees, costs and/or commissions from either a Refinancing Transaction, Joint Venture Transaction, or Sale Transaction shall be paid from available proceeds. However, if the Mortgage Lender (or its assignee, nominee or designee) is the Purchaser, the Broker shall receive from Mortgage Lender the fixed amount of $70,000 and up to $20,000 for fees, expenses, and/or commissions from the Sale Transaction.

The Confirmation Order shall authorize and approve either the Refinancing Transaction, Joint Venture Transaction, or Sale Transaction under sections 365,

19

1123, 1129(b) and 1146(a) of the Bankruptcy Code.

2.    Other Transactions.

After the Effective Date, the Debtor may engage in any other transaction in furtherance of the Plan at the direction of the Post-Effective Date Debtor without any authorization by the Debtor's Existing Equity Interests.

3.    Withholding and Reporting Requirements.

(a)    *Withholding Rights*. In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements. Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution. Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)    *Forms*. Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Disbursing Agent or such other Person designated by the Debtor (which entity shall  subsequently deliver to the Disbursing Agent any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8, unless such Person is exempt under the tax Code and so notifies the Disbursing Agent. If such request is made by the Debtor or such other Person designated by the Debtor and the holder fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the Debtor and any Claim in respect of such distribution shall be discharged and forever barred from assertion against any Debtor and its respective property.

4.    Exemption From Certain Transfer Taxes.

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan as confirmed by the Court, (including an instrument of transfer executed in furtherance of the sale contemplated by the Plan), shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax due on the sale or transfer of the Property in connection with or in furtherance of the Plan as confirmed by the Court

20

and the funding requirements contained herein and shall not be subject to any state, local or federal law imposing such tax and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

5.   Effectuating Documents; Further Transactions.

On and after the Effective Date, the Debtor is authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan. In addition, the Confirmation Order and order approving the Sale of the Property shall contain appropriate provisions, consistent with Section 1142 of the Bankruptcy Code that, among other things: (A) direct the Debtor to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of the Property to the Purchaser and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan and (B) if Debtor refuses to execute or deliver or join in the execution or delivery of any such instrument, the Mortgage Lender (or its nominee, assignee or designee), shall be authorized to execute, deliver or join in the execution or delivery of such instrument on the Debtor's behalf.

In addition, the Confirmation Order and order approving the Sale Transaction shall contain appropriate provisions, consistent with Section 1142 of the Bankruptcy Code that, among other things: (A) direct the Debtor to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of the Property to the Purchaser and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan and (B) if Debtor refuses to execute or deliver or join in the execution or delivery of any such instrument, the Mortgage Lender (or its nominee, assignee or designee), shall be authorized to execute, deliver or join in the execution or delivery of such instrument on the Debtor's behalf.

If the Debtor unreasonably refuses to timely execute documents necessary to bring about Consummation of the Plan and the transactions contemplated by the Plan, the Mortgage Lender may file and serve, on ten written days prior notice, which notice shall include the documents the Mortgage Lender intends to execute, including, but not limited to the deed and other instruments necessary to consummate the conveyances called for under the Plan, and upon the expiration of such time, absent a court order to the contrary, the Mortgage Lender may then

21

execute the documents attached to the notice as proposed by the Mortgage Lender.

6. Preservation of Rights of Action.

Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Debtor reserves any and all Causes of Action. On and after the Effective Date, the Debtor may pursue such Causes of Action in its sole discretion, other than any cause of action again the Mortgage Lender which is expressly waived. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor will not pursue any and all available Causes of Action against them except as to the waiver of Causes of Action against the Mortgage Lender. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such preserved Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. Prior to the Effective Date, and on and after the Effective Date, the Debtor, shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of the Plan itself.

7. Release of Lender and Guarantors.

In consideration of their cooperation and assistance with the implementation of the Plan, as soon as practicable after the Confirmation Order becomes a Final Order and before the commencement of the Auction (if any),there shall be a mutual release between the Debtor and Guarantors on the one hand and the Mortgage Lender on the order, which shall be filed as part of Plan Supplement.

8. Closing of the Chapter 11 Case.

After the Chapter 11 Case of the Debtor has been fully administered, the Debtor shall seek authority from the Bankruptcy Court to close such Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## F.    GOVERNANCE

The Debtor shall continue to be managed by Nir Amsel in accordance with

22

the Debtor's operating agreement dated April 28, 2013 under Delaware law.  The operating agreement shall be amended to prohibit the issuance of non-voting securities.

## G.   DISTRIBUTIONS.

1.   Distribution Record Date.

As of the close of business on the Distribution Record Date, the transfer register for each of the Classes of Claims or Interests as maintained by the Debtor shall be deemed closed, and there shall be no further changes in the record of holders of any of the Claims or Interests. The Debtor shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.

2.   Date of Distributions.

Except as otherwise provided herein, the Debtor shall make distributions to holders of Allowed Claims no later than the Effective Date and thereafter, the Debtor shall from time to time determine the subsequent Distribution Dates, if any. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day but shall be deemed to have been completed as of the required date.

The Debtor shall reserve an amount sufficient to pay holders of Disputed Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims. In the event the holders of Allowed Claims have not received payment in full on account of their Claims after the resolution of all Disputed Claims, then the Debtor shall make a final distribution to all holders of Allowed Claims.

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

3.   Delivery of Distributions.

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Debtor has determined the then current address of such holder, at which time such distribution

23

shall be made to such holder without Interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the Initial Distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Debtor automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Plan and the Claim of any such holder to such property or interest in property shall be released, settled, compromised, and forever barred. The Debtor shall have no obligation to locate the current address for a returned distribution.

4.  Manner of Payment Under Plan.

At the option of the Debtor, any Cash payment to be made hereunder may be made by a check or wire transfer.

5. Minimum Cash Distributions.

The Debtor shall not be required to make any payment to any holder of an Allowed Claim on any Distribution Date of Cash less than $100.00; provided, however, that if any distribution is not made pursuant to this Section 7.5, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim. The Debtor shall not be required to make any final distributions of Cash less than $50.00 to any holder of an Allowed Claim. If either (a) all Allowed Claims (other than those whose distributions are deemed undeliverable hereunder) have been paid in full or (b) the amount of any final distributions to holders of Allowed Claims would be $50.00 or less and the aggregate amount of Cash available for distributions to holders of Allowed General Unsecured Claims is less than $2,500, then no further distribution shall be made by the Debtor and any surplus Cash shall be donated and distributed to an I.R.C. § 501(c)(3) tax-exempt organization selected by the Debtor.

6.  Setoffs.

The Debtor may, but shall not be required to, set off against any Claim, any Claims of any nature whatsoever that the Debtor may have against the holder of such Claim; provided that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim the Debtor may have against the holder of such Claim.

7.  Distributions After Effective Date.

(a) Distributions made after the Effective Date to holders of Disputed Claims

that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

(b) Distributions made within three (3) business days of the Effective Date shall be deemed to made on the Effective Date.

8.  Allocation of Distributions Between Principal and Interest.

Except as otherwise provided in this Plan, to the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest unless a claim is governed by an agreement that provides otherwise in which case such agreement shall control.

9.  Payment of Disputed Claims

As Disputed Claims are resolved pursuant to Section 8 hereof, the Debtor shall make distributions on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date. Such distributions shall be made on the first Distribution Date that is at least forty-five (45) days after the date on which a Disputed Claim becomes an Allowed Claim, or on an earlier date selected by the Debtor in the Debtor's sole discretion.

## H.   PROCEDURES FOR DISPUTED CLAIMS.

1.  Allowance of Claims.

After the Effective Date, the Debtor shall have and shall retain any and all rights and defenses that the Debtor had with respect to any  Claim, except with respect to any Claim deemed Allowed under this Plan or expressly released under the Plan. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim.

2.  Objections to Claims.

As of the Effective Date, objections to and requests for estimation of, Claims against the Debtor may be interposed and prosecuted only by the Debtor. Such objections and requests for estimation shall be served and filed (a) on or before the

60th day following the later of (i) the Effective Date and (ii) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (b) such later date as ordered by the Bankruptcy Court upon motion filed by the Debtor.

3.    Estimation of Claims.

The Debtor may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

4.    No Distributions Pending Allowance.

If an objection to a Claim is filed as set forth in Section 8 of the Plan, no payment or distribution provided under the Plan shall be made on account of the disputed portion of such Claim unless and until such disputed portion of such claim is resolved by the Court.

5.    Resolution of Claims.

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtor shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or their estates may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. The Debtor or its successor may pursue such retained Claims, rights, Causes of Action, suits or

26

proceedings, as appropriate, in accordance with the best interests of the Debtor and this Plan.

    6. Disallowed Claims.

    All Claims held by persons or entities against whom or which the Debtor has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549 and/or 550 of the Bankruptcy Code shall be deemed "disallowed" Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to this section shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Debtor from such party have been paid.

## I.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

    1. Rejection of Executory Contracts and Unexpired Leases.

    On the Effective Date, except as otherwise provided in the Plan or the Purchase Agreement, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned or for which an assumption is then pending shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code.
.
    2. Claims Based on Rejection of Executory Contracts and Unexpired Leases

    Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtor's Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be filed with Bankruptcy Court and served on the Debtor no later than thirty (30) days after the earlier of the Effective Date or the effective date of rejection of such Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Debtor, no later than thirty (30) days after service of the Debtor's proposed rejection of such Executory Contract or Unexpired Lease.

    **Any holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely filed as set forth in the paragraph above shall not (1) be treated as a creditor with respect to such Claim, (2) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (3) participate in any distribution in the Chapter 11 Case on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time**

27

will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, the Debtor's Estate, or the property for any of the foregoing without the need for any objection by the Debtor or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtor's prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

3.  Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, if any, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor's Estate have any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor shall have 60 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

## J.   CONDITIONS PRECEDENT TO THE EFFECTIVE DATE.

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a)    the Bankruptcy Court shall have entered the Confirmation Order, the Confirmation Date shall have occurred and the Confirmation Order shall not be subject to any stay;

(b)    all actions, documents and agreements necessary to implement and consummate the Plan, including, without limitation, entry into the documents contained in the Plan Supplement, if any, required to be executed prior to the Confirmation Date, each in form and substance reasonably satisfactory to the Debtor and Purchaser, and the transactions and other matters contemplated thereby, shall have been effected or executed;

(c)    all governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan, if any, shall be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that

28

would restrain, prevent or otherwise impose materially adverse conditions on such transactions;

(d)     all documents and agreements necessary to implement the Plan shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements; and

(e)     The Debtor shall have closed the Refinancing, Joint Venture Transaction or the Sale Transaction, if applicable.

2. Waiver of Conditions Precedent.

Each of the conditions precedent to the Effective Date in Section 10.1 other than the condition set forth in section 10.1(a) may be waived in writing made by the Debtor and filed with the Court.

3.  Effect of Failure of Conditions to Effective Date.

If  the Confirmation Order is vacated due to a failure of a condition to the Effective Date to occur, (i) no distributions under the Plan shall be made and (ii) the Debtor and all holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date ever occurred.

## L.    EFFECT OF CONFIRMATION.

1.  Vesting of Assets.

Under the Restructuring Transaction, on the Closing, the Property shall vest in the Post-Effective Date Debtor, free and clear of all liens, Claims and encumbrances, subject only to the mortgage granted in favor of the Post-Effective Date Debtor, if any.  As of the Closing, any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished.  Any other assets of the Debtor shall vest in the Post-Effective Debtor free and clear of all Liens, Claims and encumbrances.

Under either the Joint Venture Transaction or Sale Transaction, on the Closing, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, and as set forth in either the Joint Venture Agreement or the Purchase Agreement, as applicable, all property of the Debtor's Estate shall vest in either the Joint Venturer or the Purchaser, as applicable, free and clear of all Claims, Liens, encumbrances,

29

charges and other interests, except as provided pursuant to this Plan and the Confirmation Order.

2.   Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all rights, titles, and interests of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall revert to the Debtor, unless sold to the Joint Venturer or Purchaser pursuant to the Joint Venture Transaction or Sale Transaction, provided however, that the Lien securing the Mortgage Claim shall not be deemed released until the Class 2 Mortgage Claim has been paid from either the Refinancing Proceeds, Joint Venture Proceeds, or Sale Proceeds in accordance with the terms of this Plan; provided however, the Mortgage may be assigned to the Purchaser.

3.   Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtor reserves the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

4.   Binding Effect.

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtor, and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

5.   Term of Injunctions or Stays.

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or

4874-7783-9260, v. 8

otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

6.  Plan Injunction.

Except (i) as otherwise provided under Final Order entered by the Bankruptcy Court or (ii) with respect to the Debtor's obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any Claim held against the Debtor as of the date of entry of the Confirmation Order (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Debtor, from the Property, or from property of the Estate that has been or is to be distributed under the Plan, and (ii) the creation, perfection or enforcement of any Lien or encumbrance against the Property and any property of the Estate that has been or is to be, distributed under the Plan.  Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act to collect, recover or offset from the Debtor, from the Property, or from property of the Estate, any claim, any obligation or debt that was held against the Debtor by any person or entity as of the Confirmation Date except pursuant to the terms of this Plan. The entry of the Confirmation Order shall permanently enjoin all Creditors, their successors and assigns, from enforcing or seeking to enforce any such Claims.

7.  Limitation of Liability

To the extent permitted under Section 1125(e) of the Bankruptcy Code, neither the Exculpated Parties  nor any of their respective officers, directors, or employees (acting in such capacity) nor any professional person employed by any of them, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement, the Plan Supplement or the  any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, provided that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement, except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts.   Nothing in this Section 11.8 shall limit the liability of the Debtor's professionals pursuant to Rule 1.8 (h)(1) of the New York State Rules of Professional Conduct. Nothing in the

4874-7783-9260, v. 8

Plan or the confirmation order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor or any of its respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns, nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Debtor or any of its respective members, officers, directors, employees, attorneys, advisors, agents, representatives and assigns for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in this Plan exculpate Debtor or any of its respective members, officers, directors, employees, attorneys, advisors, agents, representatives and assigns from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority.

8.  Release

        Except as otherwise provided in the Plan, upon the Effective Date, in consideration of the Cash and other property to be distributed to or on behalf of the holders of Claims and Interests under the Plan, the Plan shall be deemed to resolve all disputes and constitute a settlement and release, between and among the Debtor, on the one hand, and each Creditor and Interest Holder, on the other, from any claim or liability, whether legal, equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed, matured, unmatured, fixed or contingent, known or unknown, that the Debtor, its Creditors or Interest Holder ever had or now have through the Effective Date in connection with their Claim or Interest (including, without limitation, any claims the Debtor may assert on its own behalf or on behalf of Creditors or Interest Holders pursuant to sections 510 and 542 through 553 of the Bankruptcy Code, any claims Creditors or Interest Holders may have asserted derivatively on behalf of the Debtor absent bankruptcy, any claims based on the conduct of the Debtor's business affairs prior or subsequent to the commencement of the Case or any claims based on the negotiation, submission and confirmation of the Plan).

9. Solicitation of the Plan.

        As of and subject to the occurrence of the Confirmation Date: (a) the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including

4874-7783-9260, v. 8

without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation.

10. Plan Supplement

The Plan Supplement, if any, shall be filed with the Clerk of the Bankruptcy Court by no later than five (5) business days prior to the Confirmation Hearing. Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.

## M.   RETENTION OF JURISDICTION.

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a) to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance, classification, priority, compromise, estimation or payment of Claims resulting there from;

(b) to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(c) to insure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d) to consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim;

(e) to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(f) to enter the Sale Order and adjudicate any dispute related to such order, the Sale and Bidding Procedures, the Sale Transaction or the Auction of the Property;

(g) to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the Consummation, implementation or enforcement of the Plan, including the Confirmation Order, or any other order of the Bankruptcy

Court;

(h) to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i) to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred before the Confirmation Date;

(j) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Purchase Agreement, or the Confirmation Order or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k) to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following Consummation;

(l) to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m) to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations of the Debtor's tax liability under section 505(b) of the Bankruptcy Code);

(n) to adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(o) to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(p) to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(q) to enter a final decree closing the Chapter 11 Case;

(r) to enforce all orders previously entered by the Bankruptcy Court;

(s) to recover all assets of the Debtor and property of the Debtor's Estate, wherever located; and

(t) to hear and determine any rights, Claims or Causes of Action held by or

34

accruing to the Debtor pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

## N.   MISCELLANEOUS PROVISIONS.

1. Payment of Statutory Fees.

On the Effective Date and thereafter as may be required, the Debtor shall pay all fees incurred pursuant to § 1930 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for the Debtor's case; provided, however, that after the Effective Date such fees shall only be payable with respect to the Debtor's Case until such time as a final decree is entered closing the Debtor's Case, a Final Order converting such case to a case under chapter 7 of the Bankruptcy Code is entered or a Final Order dismissing the Debtor's Case is entered.

2. Substantial Consummation.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

3. Amendments.

(a)     Plan Modifications. The Plan may be amended, modified or supplemented by the Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code; provided that such amendments modifications, or supplements shall be satisfactory in all respects to the Debtor and the Mortgage Lender. In addition, after the Confirmation Date, the Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

(b)     Other Amendments. Before the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court
.

4. Revocation or Withdrawal of the Plan.

The Debtor, with the consent of the Mortgage Lender, reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor, in good-faith, revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or

35

compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtor, the Debtor's Estates, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor, the Debtor's Estates, or any other Entity.

5.   Severability of Plan Provisions upon Confirmation.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor with the consent of the Mortgage Lender, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtor; and (3) nonseverable and mutually dependent.

6.   Governing Law.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

7.   Time.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

8.   Additional Documents.

4874-7783-9260, v. 8

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

9. Immediate Binding Effect.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtor, the Purchaser, the holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns.

10. Successor and Assigns.

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or permitted assign, if any, of each Entity.

11. Entire Agreement.

On the Effective Date, the Plan, the Plan Supplement, any documents in support of either the Restructuring Transaction, Joint Venture Transaction, and Sale Transaction, including but not limited to any Joint Venture Agreement or Purchase Agreement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

12. Notices.

All notices, requests and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(i) if to the Debtor:
4452 Broadway Mazal LLC

Attn: Nir Amsel
345 Seventh Avenue
New York, New York 10001

- and –

Leech Tishman Robinson Brog, PLLC
875 Third Avenue, 9th Floor
New York, New York 10022
Telephone: (212) 603-6300
Facsimile: (212) 956-2164
Attention: Fred B. Ringel., Esq.

After the Effective Date, the Debtor shall have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, that they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtor is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

## V.

## CERTAIN RISK FACTORS AFFECTING THE DEBTOR

### A.    CERTAIN BANKRUPTCY LAW CONSIDERATIONS

1. Risk of Non-Confirmation of the Plan.

Although the Debtor believes that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion or that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate resolicitation of votes.

2. Non-Consensual Confirmation.

In the event any impaired class of claims or interests entitled to vote on a plan of reorganization does not accept a plan of reorganization, a bankruptcy court may nevertheless confirm such plan at the proponent's request if at least one impaired class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the

38

dissenting impaired classes.

3. Risk Related to Auction.

Although the Debtor believes that they will be able to obtain competitive bids for the Property at the Auction, the Debtor is not certain whether offers will be made, what the content of those offers will be, or whether any Purchaser will enter into a Purchase Agreement.

## B.   ADDITIONAL FACTORS TO BE CONSIDERED

1. The Debtor Has No Duty to Update.

The statements contained in this Disclosure Statement are made by the Debtor as of the Commencement Date, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date. The Debtor has no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

2. No Representation Outside This Disclosure Statement Are Authorized.

No representations concerning or related to the Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement should not be relied upon by you in arriving at your decision.

3. No Legal or Tax Advice Is Provided to You by This Disclosure Statement.

The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each holder of a Claim or Interests should consult his, her, or its own legal counsel and accountant as to legal, tax, and other matters his, her, or its Claim or Interest.

This Disclosure Statement is not legal advice to you. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

4. No Admission Made.

Nothing contained in the Plan will constitute an admission of, or be deemed

39

evidence of, the tax or other legal effects of the Plan on the Debtor or on holders of Claims or Interests.

5. Failure to Identify Litigation Claims or Projected Objections.

No reliance should be placed on the fact that particular litigation claim or projected objection to a particular Claim or Interest is, or is not, identified in this Disclosure Statement. The Debtor may seek to investigate, file, and prosecute Claims and Interests and may object to Claims or Interests after the Confirmation or Effective Date of the Plan irrespective of whether this Disclosure Statement identifies such Claims or Interests or objections to such Claims or Interests.

6. No Waiver of Right to Object or Right to Recover Transfers and Assets.

The vote by a holder of a Claim or Interest for or against the Plan does not constitute a waiver or release of any claims, causes of action, or rights of the Debtor (or any entity, as the case may be) to object to that holder's Claim or Interest, or recover any preferential, fraudulent, or other voidable transfer of assets, regardless of whether any claims or causes of action of the Debtor or its Estate are specifically or generally identified in this Disclosure Statement.

7. Information Was Provided by the Debtor and Was Relied Upon by the Debtor's Advisors.

The Debtor's advisors have relied upon information provided by the Debtor in connection with the preparation of this Disclosure Statement. Although the Debtor's advisors have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not independently verified the information contained in this Disclosure Statement.

## VI.

## CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed Claim. Each holder of an Allowed Claim is urged to consult his, her or its own tax advisors. This summary does not cover all potential U.S. federal income tax consequences that could possibly arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an Allowed Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

40

The Debtor has not requested any ruling from the Internal Revenue Service or any other taxing authority with respect to such matters nor will the Debtor, with respect to the federal income tax consequences of the Plan, obtain any opinion of counsel.  Consequently, there can be no assurance that the treatment set forth in the following discussion will be accepted by the IRS.  The Debtor offers no statements or opinions that are to be relied upon by the creditors as to the treatment of creditors' claims under the Plan.  Matters not discussed in this Disclosure Statement may affect the tax consequences of the Plan on any particular holder of a Claim.

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed Claims should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

The tax consequences to Creditors will differ and will depend on factors specific to each Creditor, including but not limited to: (i) whether the Claim (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Claim; (iii) the type of consideration received by the Creditor in exchange for the Claim; (iv) whether the Creditor is a United States person or foreign person for tax purposes; (v) whether the Creditor reports income on the accrual or cash basis method; and (vi) whether the Creditor has taken a bad debt deduction or otherwise recognized loss with respect to a Claim.

**THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH CREDITOR. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE IT IS IMPORTANT THAT EACH CREDITOR OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR AS A RESULT OF THE PLAN.**

**THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY CREDITOR FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAXPAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH CREDITOR SHOULD SEEK ADVICE BASED UPON THE CREDITOR'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

## VII.

### CONFIRMATION OF THE PLAN

### A.   CONFIRMATION HEARING

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after appropriate notice, to hold a hearing on confirmation of a chapter 11 plan. The Bankruptcy Court has scheduled the Confirmation Hearing to commence on _ _____, 2024 at 10:00 a.m. (Eastern Time). The Confirmation Hearing may be adjourned from time-to-time by the Debtor or the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing.

### B.   OBJECTIONS

Section 1128 of the Bankruptcy Code provides that any party in interest may object to the confirmation of a plan. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

Any objection to confirmation of the Plan must be in writing, must conform to the Bankruptcy Rules and the Local Bankruptcy Rules for the Bankruptcy Court, must set forth the name of the objector, the nature and amount of Claims or Interests held or asserted by the objector against the Debtor's estate or property, the basis for the objection and the specific grounds therefore, and must be filed with the Bankruptcy Court, with a copy to the chambers of The Honorable Lisa G. Beckerman, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York, together with proof of service thereof, and served upon the parties listed below so as to be received no later than the Plan Objection Deadline of _____, 2024 at 4:00 p.m. (Eastern Time):

| Debtor: | Counsel to the Debtor: |
|---|---|
| 4452 Broadway Mazal LLC<br>345 Seventh Avenue<br>New York, New York 10001<br>Attn: Nir Amsel | Leech Tishman Robinson Brog, PLLC<br>875 Third Avenue, 9th Floor<br>New York, New York 10022<br>Tel: (212) 603-6300<br>Attn: Fred B. Ringel |

4874-7783-9260, v. 8

| Office of the United States Trustee | |
| :--- | :--- |
| Alexander Hamilton Custom House<br>One Bowling Green, Suite 534<br>New York, NY 10004<br>Attn: Tara Tiantian, Esq. | |

**UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

## C.   REQUIREMENTS FOR CONFIRMATION OF THE PLAN

1. Requirements of Section 1129(a) of the Bankruptcy Code.

### a. General Requirements

At the Confirmation Hearing, the Bankruptcy Court will determine whether the following confirmation requirements specified in section 1129 of the Bankruptcy Code have been satisfied:

(i)      The Plan complies with the applicable provisions of the Bankruptcy Code.

(ii)     The Debtor has complied with the applicable provisions of the Bankruptcy Code.

(iii)    The Plan has been proposed in good faith and not by any means proscribed by law.

(iv)    Any payment made or promised by the Debtor or by a person issuing securities or acquiring property under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved or is subject to the approval of the Bankruptcy Court as reasonable.

(v)     The Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a plan with the Debtor, or a successor to the Debtor under the Plan, and the appointment to, or continuance in, such office of such individual is with the interests of creditors and equity holders and with public policy.

(vi)    With respect to each Class of Claims or Interests, each holder of an

43

Impaired Claim or Impaired Interest either has accepted the Plan or will receive or retain under the Plan on account of such holder's Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtor was liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. See discussion of "Best Interests Test" below.

(vii)   Except to the extent the Plan meets the requirements of section 1129(b) of the Bankruptcy Code (discussed below), each class of Claims or Interests has either accepted the Plan or is not impaired under the Plan.

(viii)   Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides that administrative and priority claims will be paid in full on the Effective Date.

(ix)   At least one class of impaired claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a claim in such class.

(x)   Confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan unless such liquidation or reorganization is proposed in the Plan. See "Feasibility Analysis" below.

(xi)   All fees payable under section 1930 of title 28, as determined by the Bankruptcy Court at the hearing on confirmation of the Plan, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan.

b. **Best Interests Test.**

As noted above, the Bankruptcy Code requires that each holder of a Claim or Interest either (i) accepts the Plan or (ii) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. This requirement is referred to as the "best interests test."

The best interests test requires the Bankruptcy Court to determine what the holders of allowed claims and allowed equity interests in each impaired class would receive from a liquidation of the debtor's assets and properties in the context of a liquidation under chapter 7 of the Bankruptcy Code. To determine if a plan is in the

44

best interests of each impaired class, the value of the distributions from the proceeds of the liquidation of the Debtor's assets and properties (after subtracting the amounts attributable to the aforesaid claims) is then compared with the value offered to such classes of claims and equity interests under the plan.

The Debtor believes that under the Plan all holders of impaired Claims and Interests will receive property with a value not less than the value such holder would receive in a liquidation under chapter 7 of the Bankruptcy Code. The Debtor's belief is based primarily on (i) consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to holders of impaired Claims and Interests and (ii) the Liquidation Analysis prepared by the Debtor's professionals that is set forth in the Plan Supplement.

The Liquidation Analysis is a comparison of (i) the estimated recoveries for Creditors and Interest holders of the Debtor that may result from the Plan and (ii) an estimate of the recoveries that may result from a hypothetical chapter 7 liquidation. The Liquidation Analysis is based upon a number of significant assumptions which are described therein. The Liquidation Analysis is solely for the purpose of disclosing to holders of Claims and Interests the effects of a hypothetical chapter 7 liquidation of the Debtor, subject to the assumptions set forth therein. There can be no assurance as to values that would actually be realized in a chapter 7 liquidation nor can there be any assurance that the Bankruptcy Court will accept the Debtor's conclusions or concur with such assumptions in making its determinations under section 1129(a)(7) of the Bankruptcy Code.

### c. Feasibility Analysis

The Bankruptcy Code requires that a debtor demonstrate that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization unless contemplated by the Plan. The Plan provides for the refinancing, a joint venture that generates sufficient proceeds necessary to pay creditors or sale of substantially all of the Debtor's assets and the distribution of the proceeds of such refinancing or sale. Accordingly, the Debtor believes that all Plan obligations will be satisfied without the need for further reorganization of the Debtor. To the extent the plan toggles to an auction sale, the plan itself contemplates a sale of all of its assets to the winning bidder at the auction.

2. Requirements of Section 1129(b) of the Bankruptcy Code.

The Bankruptcy Court may confirm the Plan over the rejection or deemed rejection of the Plan by a class of Claims or Interests if the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such class.

a. **No Unfair Discrimination.**

The "no unfair discrimination" test applies to classes of claims or equity interests that are of equal priority and are receiving different treatment under a plan. A chapter 11 plan of reorganization does not discriminate unfairly, within the meaning of the Bankruptcy Code, if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are substantially similar to those of the dissenting class and if no class of claims or equity interests receives more than it legally is entitled to receive for its claims or equity interests. This test does not require that the treatment be the same or equivalent, but that such treatment is "fair."

The Debtor believes that, under the Plan, all impaired classes of Claims and Interests are treated in a manner that is fair and consistent with the treatment of other classes of Claims and Interests having the same priority. Accordingly, the Debtor believes the Plan does not discriminate unfairly as to any impaired class of Claims or Interests.

b. **Fair and Equitable Test.**

The "fair and equitable" test applies to classes of different priority and status (e.g., secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the allowed amount of the claims in such class. The test sets forth different standards for what is fair and equitable, depending on the type of claims or interests in such class. In order to demonstrate that a plan is "fair and equitable," the plan proponent must demonstrate the following:

(i)      Secured Creditors. With respect to a class of impaired secured claims, a proposed plan must provide the following: (a) that the holders of secured claims retain their Liens securing such claims, whether the property subject to such Liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims, and receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the Plan, of at least the value of such holder's interest in the estates' interest in such property, or (b) for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the Liens securing such claims, free and clear of such Liens, with such Liens to attach to the proceeds of such sale, and the treatment of such Liens on proceeds under clause (a) or (c) of this paragraph, or (c) that the holders of secured claims receive the "indubitable equivalent" of their allowed secured claim. The only secured impaired class of claims are Class 2 containing the claim held by the Mortgage Lender and Class 3 Other Secured Claims. The Plan provides for the treatment of Secured Claims in accordance with 1129(b)(2)(A)(ii)(sale subject to section 363(k)) in the to the extent a

46

claim is secured by the Property, the Liens will attach to the proceeds of any sale or to the extent the holder of a Secured Claim credit bids their Secured Claim and takes possession of the Property, then such Liens will be satisfied.

(ii)    Unsecured Creditors. With respect to a class of impaired unsecured claims, a proposed plan must provide the following: either (a) each holder of an impaired unsecured claim receives or retains under the plan property of a value equal to the amount of its allowed claim or (b) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

The Plan provides that provides that Interests will only receive a distribution to the extent that senior Claims, including General Unsecured Creditors are paid in full.  Because Existing Equity Interests will only receive a distribution after General Unsecured Claims are paid in full,  the Plan satisfies the "fair and equitable" test with respect to all Impaired Unsecured Claims.

(iii)    Holders of Interests. With respect to a class of equity interests, a proposed plan must provide the following: (i) that each holder of an equity interest receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest or (ii) that the holder of any interest that is junior to the interests of the class of equity interests will not receive or retain under the Plan on account of such junior interest, any property.

Existing Equity Interests are not entitled to any fixed liquidation preference or redemption price and no junior interests are receiving or retaining any property under the Plan. Accordingly, the Plan meets the "fair and equitable" test with respect to all Interests.

c. **Application to the Plan.**

As to any Class that may reject the Plan, the Debtor believes the Plan will satisfy both the "no unfair discrimination" requirement and the "fair and equitable" requirements, because, as to any such dissenting Class, there is no Class of equal priority receiving more favorable treatment, and such Class will either be paid in full, or no Class that is junior to such a dissenting Class will receive or retain any property on account of the Claims or Interests in such Class.

3.  Alternative to Confirmation and Consummation of the Plan.

The Debtor has evaluated several alternatives to the Plan. After studying these alternatives, the Debtor has concluded that the Plan is the best option for the

Debtor and its estate and will maximize recoveries to parties-in-interest—assuming confirmation and consummation of the Plan. If the Plan is not confirmed and consummated, the alternatives to the Plan include a sale of the Property under section 363 of the Bankruptcy Code or a liquidation of the Debtor under chapter 7 of the Bankruptcy Code.

VIII.

<u>CONCLUSION</u>

The Debtor believes that confirmation and implementation of the Plan is in the best interests of all creditors and urges holders of impaired Claims to vote to accept the Plan and to evidence such acceptance by returning their ballots so that they will be received no later than the Voting Deadline, _____, 2024 at 4:00 p.m. (Eastern Time).

Dated:  January 17, 2024
          New York, New York

                                        4452 BROADWAY MAZAL LLC


                                        By:/s/ Nir Amsel_____
                                        Nir Amsel
                                        Manager

48

## <u>Exhibit A</u>

**Plan of Reorganization**
**(Filed Under Separate Cover as ECF 39)**

## Exhibit B

## Liquidation Analysis

50

## LIQUIDATION ANALYSIS

The liquidation values stated herein assume that the Property would be liquidated in the context of a chapter 7 case and utilize the estimated values of such liquidation as of January 1, 2024. The assumptions used in the analysis considered the estimated liquidation value of the Property and the estimated amount of Claims that would be allowed, together with an estimate of certain administrative costs and other expenses which would likely result during the Chapter 7 liquidation process. While the Debtor believes the assumptions underlying the Liquidation Analysis are reasonable, the validity of such assumptions may be affected by the occurrence of events, and the existence of conditions not now contemplated or beyond the control of the Bankruptcy Court, the Debtor, and any trustee appointed for the Debtor. The actual liquidation value of the Debtor may vary from that considered herein, and the variations may be material.

The Debtor submits that the Property would be sold within three months in a Chapter 7 liquidation. For this Liquidation Analysis, the Debtor assumes the Property's value of $45,000,000.[1] This analysis assumes that cash proceeds of liquidating the Property would total, assuming a 25% discount in the liquidation value accounting for the negative impact of the Chapter 7 process. The Debtor believes for this analysis that the sale proceeds would be distributed as follows:

| | |
|---|---|
| Available for Distribution | ~$33,750,000[2] |
| New York City and State Transfer Taxes (~3.0%) | $1,012,500 |
| Chapter 7 Administrative Claims: | |
| • Chapter 7 Trustee commissions (~3%) | $1,012,500 |
| • Chapter 7 Trustee Broker Commissions and expenses (~3%) | $1,012,500 |
| • Chapter 7 Trustee professionals (attorneys, appraisers, accountants, etc.) | $250,000 |
| Secured Tax Claim | $467,000 |

---

[1] The value the Debtor scheduled the Property at was based on an appraisal that is almost two years old. Market conditions have changed since the appraisal was performed. The Debtor now believes the Property to be valued conservatively at $45,000,000. Further the Debtor should the Debtor sell the Property at Auction, the Auction will determine the ultimate value of the Property. To the extent the Debtor enters into a Restructuring Transaction or Joint Venture Transaction, the Debtor will provide additional evidence to substantiate the value of the Property.

[2] The value of the Property as of the Closing Date will be established by the Refinancing or Joint Venture transaction. In the event of a Sale Transaction, the purchase price will establish the Property's value and the funds left to pay creditors under the Plan.

| | |
|---|---|
| Mortgage Claim | $30,525,748[3] |
| Remaining Funds (Deficit) | ($530,248) |
| Other Secured Claims | No Distribution |
| General Unsecured Creditors | No Distribution |
| Existing Equity Interests | No Distribution |

Using the estimated value of $33,750,000 in a chapter 7 liquidation, other Secured Claims, General Unsecured Creditors and Existing Equity Interests would receive no distribution. Under the Bid Procedures, the Debtor intends to market the Property for the highest and best price. While a sale will ultimately determine the Property's value, the sale under the Plan would yield a savings of $1,012,500 through the transfer tax exemption under section 1146(a) of the Bankruptcy Code. Additionally, the Mortgage Lender has agreed to reduce its claim to $25,500,000 which it would not agree to do under a chapter 7 liquidation.

The Debtor believes that a sale under the Plan provides for the liquidation of Property into cash but with the benefit of a transfer tax exemption and reduced Mortgage Claim without the additional fees incurred by a sale under the auspices of a chapter 7 trustee.

---

[3] The discount the Debtor negotiated would not apply in a chapter 7 liquidation.

4853-6889-2828, v. 3