**KRISS & FEUERSTEIN LLP**
Jerold C. Feuerstein, Esq.
Daniel N. Zinman, Esq.
Stuart L. Kossar, Esq.
360 Lexington Avenue, Suite 1200
New York, NY 10017
(212) 661-2900 – telephone
(212) 661-9397 – facsimile
jfeuerstein@kandfllp.com
skossar@kandfllp.com
dzinman@kandfllp.com

*Attorneys for 4452 Broadway 1 LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re:                                             Chapter 11

    4452 Broadway Mazal LLC,             Case No. 23-11832-lgb

                  Debtor.          Hon. Lisa G. Beckerman
                          United States Bankruptcy Judge

-------------------------------------------------------------x

### 4452 BROADWAY 1 LLC'S REPLY TO OBJECTIONS OF BROADWAY CONSTRUCTION GROUP, LLC, AND AMR ELECTRICAL CORP.'S TO CONFIRMATION OF PLAN

       4452 Broadway 1 LLC (the "Secured Creditor"), a secured creditor and mortgagee of the Debtor, 4452 Broadway Mazal LLC (the "Debtor"), by and through its attorneys, Kriss & Feuerstein LLP, respectfully submits this Reply (the "Reply") to the Objections of Broadway Construction Group, LLC ("BCG") [ECF No. 97] (the "BCG Objection") and AMR Electrical Contracting Corp. ("AMR" and, together with BCG, the "Objectors") [ECF No. 98] (the "AMR Objection" and, together with the BCG Objection, the "Objections") to the Joint Plan of Liquidation Proposed by the Debtor and the Secured Creditor [ECF No. 76], and respectively states as follows:

### PRELIMINARY STATEMENT

    1.      The Objections are based on an alleged dispute over lien priority over the Returned

Funds (as defined below).  There should be no dispute.  As shown below, the Secured Creditor's

lien extends to the Returned Funds and such lien is currently valid and perfected.

2.      In their Objections, the Objectors have made two requests.  The first is to have the

Returned Funds (as defined below) held in escrow pending a resolution and/or determination by

this Court as to the lien priority over the Returned Funds.  The Debtor and the Secured Creditor

have no problem with that request, and it will be reflected in the proposed confirmation order.

3.      For their second request, the Objectors urge this Court to require the Secured

Creditor to close on the sale of the Property following confirmation of the Plan, before a resolution

is reached or a decision rendered on the lien priority issue.  This is unwarranted and inappropriate.

In effect, the Objectors are demanding they get their distributions on the Plan immediately, while

forcing the Secured Creditor to go out of pocket for hundreds of thousands of dollars, when the

Returned Funds should be sufficient to pay all or most of the required payments under the Plan

(*e.g.*, property taxes, administrative expense claims).  All this, even though the Secured Creditor

negotiated with the Debtor and agreed upon the Plan while unaware of the Returned Funds'

existence.  Had the Secured Creditor known, it would have insisted on using the Returned Funds

to pay the Debtors' obligations under the Plan.  Accordingly, for these reasons and for the reasons

discussed below, this Court should overrule the Objections and confirm the Plan.

## BACKGROUND

### The Loan

4.      On or about April 29, 2013, the Debtor acquired its real property, commonly known

as 4452 Broadway, New York 10040 (Block: 2170; Lots: 62 & 400) (the "Property"), from KIMSL

4452 Broadway, LLC, pursuant to a Bargain and Sale Deed (the "Deed") recorded in the City

Register of the City of New York, County of New York (the "Register's Office") on May 7, 2013

under City Register File Number (CRFN): 2013000183309.

5.      On January 23, 2019, the Debtor executed, acknowledged and delivered to the Secured Creditor an Amended and Restated Note (the "Land Loan Note"), bearing said date, wherein and whereby it was covenanted and agreed that it would repay the Secured Creditor, in the principal amount of $10,000,000.00, with interest thereon as set forth in the Note in connection with a commercial loan (the "Land Loan").

6.      On January 23, 2019, to secure repayment of the indebtedness evidenced by the Land Loan Note, the Debtor executed, acknowledged, and delivered to the Secured Creditor an Amended and Restated Mortgage and Security Agreement (the "Land Loan Mortgage" and, together with the Land Loan Note, and all other documents executed in connection with the Land Loan, collectively, the "Land Loan Documents)), encumbering the Property, which was recorded on January 30, 2019 in the Register's Office under CRFN: 2019000034948. A copy of the Land Loan Mortgage is annexed hereto as **Exhibit "A"**.

7.      On January 23, 2019, the Debtor executed, acknowledged and delivered to the Secured Creditor a Building Loan Note (the "Building Loan Note"), bearing said date, wherein and whereby it was covenanted and agreed that it would repay the Secured Creditor, in the principal amount of $35,000,000.00 with interest thereon as set forth in the Note in connection with a commercial loan (the "Building Loan").

8.      On January 23, 2019, to secure repayment of the indebtedness evidenced by the Building Loan Note, the Debtor executed, acknowledged, and delivered to the Secured Creditor a Building Mortgage and Security Agreement (the "Building Loan Mortgage"), encumbering the Property, which was recorded on January 30, 2019 in the Register's Office under CRFN: 2019000034951. A copy of the Building Loan Mortgage is annexed hereto as **Exhibit "B"**.

9.      On January 23, 2019, as further security for the Loan, the Debtor executed,

acknowledged, and delivered to Secured Creditor a Building Loan Agreement (the "Building Loan Agreement" and, together with the Building Loan Note, the Building Loan Mortgage, and all other documents executed in connection with the Building Loan, collectively, the "Building Loan Documents").

10.     On January 23, 2019, the Debtor executed, acknowledged and delivered to the Secured Creditor a Project Loan Note (the "Project Loan Note"), bearing said date, wherein and whereby it was covenanted and agreed that it would repay the Secured Creditor, in the principal amount of $3,000,000.00, with interest thereon as set forth in the Note in connection with a commercial loan (the "Project Loan" and together with the Land Loan, the Building Loan, collectively, the "Loans").

11.     On January 23, 2019, to secure repayment of the indebtedness evidenced by the Project Loan Note, the Debtor executed, acknowledged, and delivered to the Secured Creditor a Project Mortgage and Security Agreement (the "Project Loan Mortgage" and, together with the Land Loan Mortgage and the Building Mortgage, the "Mortgages" and, together with the Project Loan Note, and all other documents executed in connection with the Project Loan, collectively, the "Project Loan Documents")), encumbering the Property, which was recorded on January 30, 2019 in the Register's Office under CRFN: 2019000034954. A copy of the Project Loan Mortgage is annexed hereto as **Exhibit "C"**.

12.     To further secure the Loans, a UCC financing statement was filed with the Delaware Department of State, U.C.C. Filing Section on January 29, 2019, and bears the U.C.C. Initial Filing No. 2019 0652185, and a Service Request No. of 20190553999. (the "Del. UCC1"). The Debtor is a Delaware LLC.  The Del. UCC1 was continued with a filing with the Delaware Department of State, U.C.C. Filing Section on November 29, 2023 and bears the Amendment No.

2023 8061409, and a Service Request No. of 20234082057 (the "Del. UCC Contin."). A copy of the Del. UCC1 and the Del. UCC Contin. is attached hereto as **Exhibit "D"**.

13.     To further secure the Loans, a UCC financing statement was filed for each of the Loans, in the New York Department of Finance, Office of the City Register, on January 30, 2019 under CRFNs 019000034950, 019000034953, and 019000034956 (the "NY UCC1s"). The NY UCC1s were continued with filings with the New York Department of Finance, Office of the City Register on November 29, 2023 under CRFNs 2023000312370, 2023000312371, and 2023000312372 (the "NY UCC Contins."). A copy of the NY UCC1s and the NY UCC Contins. is attached hereto as **Exhibit "E"**.

14.     The filing of the Mortgages established the Secured Creditor's lien on the Property. Collectively, the Del UCC1, the Del. UCC Contin., the NY UCC1s and the NY UCC Contins. perfect the security interests in the Debtor's other property established in the Mortgages, which are the relevant security agreements for such UCC statements.

15.     On or about May 13, 2020, the Borrower Parties and Secured Creditor entered into a Loan Modification Agreement (the "First Loan Modification Agreement").

16.     On or about August 25, 2020, the Borrower Parties and Secured Creditor entered into a Second Loan Modification Agreement (the "Second Loan Modification Agreement").

17.     On or about July 11, 2022, the Borrower Parties and Secured Creditor entered into a Forbearance Agreement (the "Forbearance Agreement", and together with the Land Loan Documents, the Building Loan Documents, the Project Loan Documents, the First Loan Modification Agreement, Second Loan Modification Agreement, and all other documents executed in connection with the Loans, collectively, the "Loan Documents"). To the extent Loan Documents are mentioned herein but not attached hereto, they can be found attached to the Secured

Creditor's Application in Support of the Entry of an Order Designating the Debtor as Single Asset Real Estate [ECF No. 11], and are incorporated herein by reference.

**The Default**

18.     The Debtor failed to comply with the terms and provisions of the Loan Documents by, among other things: (i) the failure to discharge and/or bond the following mechanic's liens: (a) lien in the amount of $52,643.00, filed by Hakeem Maintenance Services, (b) lien in the amount of $1,292,613.51, filed by Broadway Construction Group Inc., (c) lien in the amount of $31,595.00, filed by AMR Electrical Contracting Corp., and (d) lien in the amount of $32,982.44, filed by Able Equipment Rental Inc. against the Property (the "Mechanic's Lien Default") and (ii) the failure to pay the full indebtedness when it became due on the Extended Maturity Date of January 22, 2022 (the "Maturity Default")

19.     In addition, the Debtor defaulted under the terms of the Forbearance Agreement by failing to repay the Loan on or before the Termination Date (as defined in the Forbearance Agreement) (the "Forbearance Default", and together with the Maturity Default and the Mechanic's Lien Default, collectively, the "Defaults").

**The Bankruptcy Case**

20.     On November 16, 2023, the Debtor filed a Petition (the "Petition") for relief under Chapter 11 of the Bankruptcy Code before the United States Bankruptcy Court for the Southern District of New York (Case No. 23-11832) (the "Bankruptcy Case").

21.     On or about February 14, 2024, the Debtor filed the Plan and the Disclosure Statement for the Plan [ECF No. 77] (the "Disclosure Statement").

22.     On or about March 19, 2024, the Debtor filed a Supplement to the Disclosure Statement [ECF No. 94] (the "Disclosure Statement Supplement"), which discussed the

unexpected receipt by the Debtor of $1,002,966.98 in funds returned (the "Returned Funds").  As more fully described in the Disclosure Statement Supplement and in Debtor's Response to the Objection of BCG and AME to the Plan, filed concurrently herewith and incorporated herein by reference, the Returned Funds were obtained from the Debtor's Mezzanine Lender and were sent to a bonding company, Blakie Group, who held them in escrow to secure bonds that were used to discharge four mechanic's liens.  When those liens expired, the Returned Funds were sent back to the Debtor from the Blakie Group.

23.    On or about March 25, 2024, BCG and AMR filed the Objections.  In the Objections, BCG and AMR have two requests.  First, they request that the Returned Funds be held in escrow pending a determination as to who has a lien on and/or priority with respect to the distribution of the Returned Funds.  Second, they request, in effect, that the Secured Creditor front the funds necessary to make the Plan go effective immediately, while waiting an unknown period of time until there is a resolution of the alleged dispute over the Secured Creditor's lien on the Returned Funds.  As discussed below, the first request is granted, as the Debtor and the Secured Creditor will include in the proposed Confirmation Order a paragraph to that effect.  The second request is unreasonable, unwarranted, and improper and should be denied.

**REPLY**

24.    The Secured Creditor has a perfected lien on the Returned Funds.  Each of the Mortgages provides that the Secured Creditor's lien extends to, among other things, the following:

> (d) all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures . . . and other property of every kind and nature, whether tangible or intangible, whatsoever owned by [the Debtor] . . . including . . . any deposits existing at any time in connection with any of the foregoing . . .
>
> ***

> (h) . . . all accounts, escrows, documents, instruments, investment property, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the UCC . . .
>
> \*\*\*
>
> (j) all contracts, permits, development right, plans, specifications, blueprints, and tax abatements . . . related to the Mortgaged Property; and
>
> (k) all proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution, or replacement of any of the foregoing.

(Mortgages at 3-5).

25.     Thus, the liens extended to any deposits that exist with respect to machinery, furniture or other property (subsection (d)), all accounts, claims, deposits and general intangibles (subsection h)), all contracts related to the property (j), and all proceeds or products from the foregoing (subsection k).  The Returned Funds, having come from funds borrowed from the Debtor's mezzanine lender, and being used to bond liens filed by mechanics lienors, and returned to the Debtor, fall under one or more of those specified subsections and are clearly encompassed within the Secured Creditor's lien.  And, as shown in the NY UCC1s, the NY UCC Contins., the Del. UCC1 and the Del. Contin., the Secured Creditor's lien over the Returned Funds has been, is now and continues to be perfected.

26.     Accordingly, the Returned Funds constitute the Secured Creditor's cash collateral, should be paid to the Secured Creditor.  As previously stated to this Court, however, the Secured Creditor intends to use the Returned Funds to make the payments required under the Plan for the Plan to go effective at the closing of the sale of the Property, all of which are debts owed by the Debtor (*e.g.*, property taxes, administrative claims, and a partial distribution to the general unsecured creditors).

27.     In terms of procedure, the Secured Creditor and the Debtor agree that the question

of the lien priority over the Returned Funds should be decided by a separate order after briefing

by the relevant parties, although the foregoing demonstrates clearly that the Returned Funds are

subject to the Secured Creditor's lien.  This takes care of the first request by the Objections.

28.     As to the second request of the Objectors – that the Secured Creditor should be

required to close using its own funds to close on the sale of the Property prior to the resolution of

the lien priority issue – that is unreasonable, unwarranted, and improper and should be denied.

When the Secured Creditor reached an agreement with the Debtor over the terms of the Plan and

when the Debtor wrote, negotiated and filed the Plan and the Disclosure Statement, the Secured

Creditor did not know about the Returned Funds.  No disclosure of such funds was made on or

prior to the date this Court approved the Disclosure Statement.  In such circumstances, it is

unreasonable and improper to require the Secured Creditor to close using its own funds,

particularly where it has now demonstrated its lien over the Returned Funds, which could pay all

or nearly all of the necessary expenditures for the Plan to go effective.   If the Secured Creditor

had known about the Returned Funds when it was negotiating the Plan with the Debtor, the

Secured Creditor would have insisted on using the funds in that fashion.

29.     Indeed, even if this Court were to rule that no one has a lien on the Returned

Funds, then it is reasonable for the Debtor to use its own funds to pay the necessary payments

under the Plan, such as property taxes, administrative expense claims, priority claims and the

partial distribution to general unsecured creditors and the Secured Creditor would have insisted

on that, if it had known of the Returned Funds.  That is, in effect, exactly what the Secured

Creditor and the Debtor seek here.

30.     By trying to force the Secured Creditor to go out of pocket and close before a

resolution of the lien priority issue, the Objectors are trying, in effect, to get paid their distributions under the Plan now, while simultaneously holding up the Returned Funds in escrow for an unknown period of time, all while requiring the Secured to go out of pocket by hundreds of thousands of dollars.  That is grossly imbalanced, tilting the status quo far in the Objectors' direction.  If this Court insists on requiring the Secured Creditor to close on the sale of the Property before a resolution in reached as to the lien priority issue, the Secured Creditor and the Debtor will request an adjournment of the Confirmation Hearing until on or after the date such a resolution is reached and/or this Court renders a decision on the lien priority issue.

WHEREFORE, the Secured Creditor respectfully requests that this Court enter an order denying the Objections, confirming the Plan, and granting the Secured Creditor such other and further relief as is just and proper.

Dated: New York, New York
      March 26, 2024

KRISS & FEUERSTEIN LLP

By:    */s/ Jerold C. Feuerstein*
        Jerold C. Feuerstein, Esq.
        Daniel N. Zinman, Esq.
        Stuart L. Kossar, Esq.
        360 Lexington Avenue, 12th Floor
        New York, New York 10017
        (212) 661-2900

        *Attorneys for 4452 Broadway 1 LLC*